**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JAMES STOKES, | : | |
| | : | C.A. No.   1:19-cv-02014 LPS |
| PLAINTIFF, | : | |
| | : | |
| v. | : | TRIAL BY JURY OF TWELVE |
| | : | DEMANDED |
| MARKEL AMERICAN INSURANCE | : | |
| COMPANY, a foreign corporation, | : | |
| | : | |
| DEFENDANT. | : | |

**DEFENDANT MARKEL AMERICAN INSURANCE COMPANY'S**
**OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**WHITE AND WILLIAMS LLP**

*/s/ Timothy S. Martin*
**TIMOTHY S. MARTIN (#4578)**
**DARYLL HAWTHORNE-SEARIGHT (#6520)**
Courthouse Square
600 N. King Street, Suite 800
Wilmington, DE 19801
(302) 467- 4520
Martint@whiteandwilliams.com
Counsel for Defendant,
*Markel American Insurance Company*

Dated: July 30, 2021

## <u>TABLE OF CONTENTS</u>

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.   SUMMARY OF ARGUMENTS................................................................................2

III.  STATEMENT OF FACTS ......................................................................................3

IV.  ARGUMENT ........................................................................................................4

      A.    STANDARD OF REVIEW APPLICABLE TO MOTIONS FOR
           SUMMARY JUDGMENT ...............................................................................4

      B.    STANDARD OF REVIEW APPLICABLE TO INTERPRETATION OF
           THE INSURANCE POLICY ............................................................................4

      C.    ALL OF PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW
           BECAUSE MAIC DID NOT BREACH THE POLICY .........................................5

           1.    MAIC did not Breach the Policy, and therefore Plaintiff is not
                Entitled to Any Relief .................................................................................5

           2.    MAIC is Entitled to Summary Judgment on all of Plaintiff's
                Claims because the Loss was not Fortuitous or Accidental.......................6

                a.    Rainfall is not enough to show that the Vessel's sinking was
                    fortuitous .........................................................................................6

                b.    Design defects, not rainfall, were the efficient proximate
                    cause of the loss ...............................................................................8

           3.    Even if Plaintiff met his burden of proving that the loss was
                 accidental or fortuitous, plaintiff's loss would be excluded from
                 coverage because design defects were the efficient proximate cause
                 of the loss ...................................................................................................10

           4.    MAIC is Entitled to Summary Judgment on All of Plaintiff's
                 Claims Because the Vessel was Unseaworthy, in Violation of the
                 Policy's Express Warranty of Seaworthiness, thereby Voiding the
                 Policy ........................................................................................................11

           5.    MAIC Has Not Breached Any Duty to "Adjust" Plaintiff's Claim...........17

      D.    PLAINTIFF'S TORT CLAIMS AND ESTOPPEL CLAIMS FAIL AS A
           MATTER OF LAW......................................................................................18

            1.    MAIC is Entitled to Summary Judgment on Plaintiff's Tort Claims
                because District of Columbia Law does not Allow Plaintiffs to
                 Concurrently Plead Tort Claims with a Breach of Contract Claim ...........18

           2.    Plaintiff Has Not Met His Burden of Proof as to Any of His Claims
                Lying in Fraud or Estoppel .......................................................................18

           3.    Plaintiff's Claims Would Still Fail Under Maryland or Delaware
                Law ..........................................................................................................20

E.     PLAINTIFF'S CLAIMS PLED PURSUANT TO FLORIDA LAW FAIL AS A MATTER OF LAW BECAUSE FLORIDA LAW DOES NOT GOVERN ANY ASPECT OF THIS MATTER .................................................. 20

V.     CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AGCS Marine Ins. Co. v. World Fuel Servs.*,
  187 F. Supp. 3d 428 (S.D.N.Y. 2016)......................................................................11

*Aguirre v. Citizens Cas. Co.*,
  441 F.2d 141 (5th Cir. 1971) ...............................................................................12

*Axis Reinsurance Co. v. Henley*,
  2009 U.S. Dist. LEXIS 98718 (N.D. Fla. Oct. 22, 2009) ...........................13, 14, 16

*Blaine Richards & Co., Inc. v. Marine Indemn. Ins. Co. of Am.*,
  635 F.2d 1051 (2d Cir. 1980)..................................................................................8

*Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*,
  135 F.3d 750 (11th Cir. 1998) ...............................................................................1

*Boudoin v. Lykes Bros. S.S. Co.*,
  348 U.S. 336 (1955)..............................................................................................12

*Carr v. PMS Fishing Corp.*,
  191 F.3d 1 (1st Cir. 1999).....................................................................................12

*Cashman Equip. Corp.*,
2007 U.S. Dist. LEXIS 21921 (E.D. La. Mar. 26, 2007)...........................................5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................................................4

*Chartis Prop. Cas. Co. v. Inganamourt*,
  2019 U.S. Dist. LEXIS 45806 (D.N.J. Mar. 20, 2019)........................................6, 7

*Class Action of S. Fla. v. Nat'l Union Fire Ins. Co.*,
  2013 U.S. Dist. LEXIS 130696 (S.D. Fla. May 30, 2013) ......................................8

*Cont'l Ins. Co. v. Lone Eagle Shipping (Liber.)*,
  952 F. Supp. 1046 (S.D.N.Y. 1997)....................................................................8, 9

*Crowley P.R. Servs. v. Cervezas Del Sur, Inc.*,
  2014 U.S. Dist. LEXIS 165724 (M.D. Fla. Oct. 22, 2014) .....................................5

*Derby Co. v. A. L. Mechling Barge Lines, Inc.*,
  258 F. Supp. 206 (E.D. La. 1966).........................................................................13

27535197v.1

*Emp'rs Ins. v. Occidental Petroleum Corp.*,
    978 F.2d 1422 (5th Cir. 1992) ...................................................................12

*F.W.F. Inc. v. Detroit Diesel Corp.*,
    494 F. Supp. 2d 1342 (S.D. Fla. 2007) .........................................................5

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990)........................................................................................1

*Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*,
    944 A.2d 1055 (D.C. 2008) ..........................................................................19

*Gibbs v. Carnival Cruise Lines*,
    314 F.3d 125 (3d Cir. 2002)....................................................................18, 19

*Great Lakes Ins. Se v. Wave Cruiser Llc*,
    2020 U.S. Dist. LEXIS 207827 (S.D. Fla. Nov. 5, 2020)...........................6, 11

*Great Lakes Reinsurance PLC v. Soveral*,
    2007 U.S. Dist. LEXIS 13261 (U.S. S.D. Fla. 2007) ...................................13

*Hirsch v. CSX Transp., Inc.*,
    656 F.3d 359 (6th Cir. 2011) .........................................................................4

*In re Estate of McKenney*,
    953 A.2d 336 (D.C. 2008) ............................................................................19

*In re Sea Star Line, LLC*,
    2016 U.S. Dist. LEXIS 178293 (M.D. Fla. Sep. 23, 2016) ..........................13

*Ingersoll Milling Mach. Co. v. M/V Bodena*,
    829 F.2d 293 (2d. Cir. 1987)..........................................................................6

*Ins. Co. of North America v. Lanasa Shrimp Co.*,
    726 F.2d 688 (11th Cir. 1984) ......................................................................13

*Kuehne & Nagel v. Geosource, Inc.*,
    874 F.2d 283 (5th Cir. 1989) .........................................................................4

*Lamadrid v. Nat'l Union Fire Ins. Co.*,
    567 F. App'x 695 (11th Cir. 2014).............................................................6, 11

*Lanasa Fruit Steamship & Importing, Co. v. Univ. Ins. Co.*,
    58 S. Ct. 371 (1938).......................................................................................8

*Leonard v. Stemtech Health Scis., Inc.*,
    2011 U.S. Dist. LEXIS 139221 (D. Del. Dec. 5, 2011)..................................4

iv

*Lexington Ins. Co. v. Cooke's Seafood*,
   835 F.2d 1364 (11th Cir. 1988) ..................................................................12

*Lexington Ins. Co. v. Paddock Swimming Pool Co.*,
   2021 U.S. Dist. LEXIS 63259 (D.D.C. Apr. 1, 2021) ...........................................17

*Ludwig & Robinson, PLLC v. BiotechPharma, LLC*,
   186 A.3d 105 (D.C. 2018) ...............................................................5, 18

*Marine Overseas Services, Inc. v. Crossocean Shipping, Co. Inc.*,
   791 F.2d 1227 (5th Cir.1986) ..................................................................5

*Markel Am. Ins. Co. v. Pajam Fishing Corp.*,
   691 F. Supp. 2d 260 (D. Mass. 2010) ...........................................................6

*Moore v. Deutsche Bank Nat'l Tr. Co.*,
   124 A.3d 605 (D.C. 2015) ....................................................................19

*N.H. Ins. Co. v. Krilich*,
   387 F. App'x 940 (11th Cir. 2010)............................................................8, 9

*One Call Prop. Servs. v. Sec. First Ins. Co.*,
   165 So. 3d 749 (Fla. Dist. Ct. App. 2015) ...................................................17

*Park v. Sandwich Chef, Inc.*,
   651 A.2d 798 (D.C. 1994) ....................................................................19

*Redmond v. State Farm Ins. Co.*,
   728 A.2d 1202 (D.C. 1999) ...................................................................19

*Saucier v. Countrywide Home Loans*,
   64 A.3d 428 (D.C. 2013) .....................................................................19

*Sea Byte, Inc. v. Hudson Marine Mgmt. Servs.*,
   565 F.3d 1293 (11th Cir. 2009) ..............................................................18

*St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp.*,
   26 F.3d 1195 (1st Cir. 1994)..................................................................6

*Standard Oil Co. v. United States*,
   71 S.Ct. 135 (1950)...........................................................................8

*State Nat'l Ins. Co. v. Anzhela Explorer,L.L.C.*,
   812 F. Supp. 2d 1326 (S.D. Fla. 2011) .......................................................12

*Stokes v. Markel Am. Ins. Co.*,
   2019 U.S. Dist. LEXIS 108685 (S.D. Fla. June 28, 2019) .............................1, 3, 9, 15, 16, 19

27535197v.1

*Tillery v. Hull & Co.*,
    876 F.2d 1517 (11th Cir. 1989) ..........................................................................8

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters,LLC*,
396 F. Supp. 3d 1170 (S.D. Fla. 2019) ...............................................................12

*United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc.*,
    910 F.2d 775 (11th Cir. 1990) ............................................................................5

*United States Fire Ins. Co. v. Cavanaugh*,
    732 F.2d 832 (11th Cir. 1984) ............................................................................8

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ...........................................................................................1

*Walker v. Travelers Indem. Co.*,
    289 So. 2d 864 (La. Ct. App. 1974) ..................................................................13

*Waterman S.S. Corp. v. Luria Bros. & Co.*,
    1978 U.S. Dist. LEXIS 20130 (S.D.N.Y. Jan. 16, 1978) ...................................13

**STATUTES**

28 U.S.C. §1404(a) ........................................................................................................1

Florida Statutes § 624.155 .............................................................................................2

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) ......................................................................17

Fed. R. Civ. P. 56(c) .......................................................................................................4

Fed. R. Civ. P. 81(c)(1) ..................................................................................................4

## I.    **NATURE AND STAGE OF THE PROCEEDINGS**

This is an insurance coverage action, including both breach of contract and tort claims against Defendant, Markel American Insurance Company ("MAIC"). This lawsuit was originally filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and MAIC removed the case to the United States District Court for the Southern District of Florida. After the case was removed to federal court, MAIC filed a Motion to Dismiss for Improper Venue or in the alternative Motion to Transfer the Venue Based Upon *Forum Non Conveniens*. MAIC's Motion to Transfer the Venue was granted on June 28, 2019.[1] Judge Altonaga ordered that the case be transferred to this court pursuant to 28 U.S.C. §1404(a), and that Florida's choice-of-law rules would apply to determine the law applicable to adjudicating Plaintiff's claims.[2] Consistent with this decision, MAIC filed a Motion for Choice of Law, which is currently pending.[3]

This litigation is now at the dispositive motions stage of the proceedings, and MAIC now respectfully requests that this honorable Court dismiss all of Plaintiff's claims.

---

[1] *Stokes v. Markel Am. Ins. Co.*, 2019 U.S. Dist. LEXIS 108685 (S.D. Fla. June 28, 2019)(granting MAIC's Motion to Dismiss for Improper Venue)("Order").

[2] *Id.* at 12-13 ("'Federal courts sitting in diversity apply the forum state's choice-of-law rules.' *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) (footnote call number omitted). When a case is transferred from one forum to another, the transferor court's choice-of-law rules apply to the transferred case. *See id.* Accordingly, Florida's choice-of-law rules will apply to the action regardless of the final forum.'"); *see Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)("We conclude, therefore, that in cases such as the present, where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404 (a) generally should be, with respect to state law, but a change of courtrooms."); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990)("In *Van Dusen v. Barrack*, 376 U.S. 612 (1964), we held that, following a transfer under § 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court. We now decide that, when a plaintiff moves for the transfer, the same rule applies.").

[3] *See generally* MAIC's Opening Brief in Support of its Motion for Choice of Law (D.I. 87).

## II.    <u>**SUMMARY OF ARGUMENTS**</u>

1.    MAIC is entitled to summary judgment on all of Plaintiff's claims because MAIC did not breach the Policy as a matter of law.

      a.    The loss was not fortuitous or accidental.

      b.    A design defect was the efficient proximate cause of the loss.

      c.    The Vessel was unseaworthy, in violation of the Policy's express warranty of seaworthiness, thereby voiding the Policy.

2.    District of Columbia law does not allow claims for tort and breach of contract to be pleaded concurrently, and therefore, Plaintiff's claims for negligent misrepresentation and fraud (Counts IV and VII) should be dismissed.

3.    Plaintiff has not met his burden of proof as to any of his claims lying in fraud or estoppel, and therefore Plaintiff's claims for Fraudulent Inducement and Estoppel (Counts V and VI) should be dismissed.

4.    As Florida law does not govern the procedural or substantive law of this matter, Plaintiff's claim for willful tortious breach of Florida Statutes § 624.155 and Petition for Mediation (Counts III and VIII) should be dismissed.

## III.    **STATEMENT OF FACTS**

Plaintiff's 39-foot Midnight Express boat ("the Vessel") was insured by MAIC under Policy No. MHP00000361698 ("the Policy").[4] On October 11, 2018, the Vessel sank during a rain event while moored at her berth in Ocean View, Delaware.[5] Plaintiff filed a claim under the MAIC policy, which was assigned Claim No. 18C4603.[6] Following initial survey of the vessel by surveyor Jonathan Klopman, MAIC issued a reservation of rights letter on November 12, 2018, stating, *inter alia*, that 1) the Vessel may be unseaworthy, and 2) any claim coverage may be subject to policy exclusions.[7] On December 28, 2018, before additional inspection by MAIC could be completed, Plaintiff proceeded to file the instant matter in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.[8] On January 30, 2019, MAIC removed the matter to the United States District Court for the Southern District of Florida.[9] On June 28, 2019, the matter was transferred to this Court.[10]

---

[4] Ex. 1 - Complaint, ¶¶ 2 and 6; *see* Ex. 2- MAIC Prod., at MARKEL 000307 (MAIC Underwriting File- Declarations Page).

[5] Ex. 1- Complaint at ¶ 7; *see* Ex. 3 - MAIC Prod., at MARKEL 000087-107 (Klopman Damage Survey).

[6] Ex. 1- Complaint at ¶ 9.

[7] Ex. 4 - MAIC Prod., at MARKEL 000073-76 (Reservation of Rights letter); Ex. 3- MAIC Prod., at MARKEL 000087-107 (Klopman Damage Survey).

[8] Ex. 1 - Complaint.

[9] Ex. 5 - MAIC Prod., at MARKEL 000113-119 (Defendant's Notice of Removal).

[10] *See Stokes*, 2019 U.S. Dist. LEXIS 108685.

## IV.    ARGUMENT[11]

### A.    STANDARD OF REVIEW APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT[12]

Summary judgment is granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[13] Where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial…. [t]here can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[14] The moving party bears the initial burden to show "an absence of evidence to support the non-moving party's case."[15] Further, Plaintiff cannot survive summary judgment with "an expert's bare opinion on the ultimate issue[s]."[16]

### B.    STANDARD OF REVIEW APPLICABLE TO INTERPRETATION OF THE INSURANCE POLICY

The Policy is governed by federal admiralty law pursuant to the choice-of-law provision in the Policy.[17] Further, it is established law that maritime insurance policies are governed by admiralty law.[18] Federal admiralty law "has adopted the general rules of contract interpretation

---

[11] MAIC's Choice of Law motion analyzed Plaintiff's claims pursuant to Florida's choice-of-law rules and requested that this court enforce the choice of law provision in the Policy by applying federal admiralty law and District of Columbia law. The analysis in this brief was completed under the assumption that federal admiralty and District of Columbia law govern this matter. MAIC reserves the right to move for further briefing should the Court decide that different law governs.

[12] Fed. R. Civ. P. 81(c)(1).

[13] Fed. R. Civ. P. 56(c).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-3 (1986).

[15] *Id*., at 325.

[16] *Leonard v. Stemtech Health Scis., Inc.*, 2011 U.S. Dist. LEXIS 139221, at *79 (D. Del. Dec. 5, 2011)(quoting *Hirsch v. CSX Transp., Inc*., 656 F.3d 359, 363 (6th Cir. 2011)).

[17] Ex. 6 - Certified Copy of MAIC Policy ("Policy"), at page 3 (emphasis added).

[18] *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 290 (5th Cir. 1989).

4

and construction."[19] In the absence of evidence to the contrary, words in a maritime contract are given their "plain, ordinary and everyday meaning as understood by a reasonable person."[20] "'Each provision of a contract must be read in light of others so as to give the meaning reflected by the contract as a whole.'"[21]

### C. ALL OF PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW BECAUSE MAIC DID NOT BREACH THE POLICY

#### 1. MAIC did not Breach the Policy, and therefore Plaintiff is not Entitled to Any Relief

To prove breach of contract under federal admiralty law, Plaintiff must prove that 1) he and MAIC executed a valid contract, 2) MAIC materially breached a contractual duty, and 3) he was damaged by this material breach. [22] As discussed below, the Policy does not provide coverage for the loss at issue because the loss was not fortuitous or accidental, the Vessel had a material design defect and/or was unseaworthy. Therefore, MAIC has no contractual duty under the Policy to, as Plaintiff contends, "fully cover and pay for" any or all of Plaintiff's loss, replacements, or repairs, or otherwise indemnify him. Consequently, Plaintiff is not entitled to breach of contract damages or declaratory judgment related to any of his claims. Because MAIC did not breach the Policy, all of Plaintiff's additional claims necessarily must fail.[23]

---

[19] *F.W.F. Inc. v. Detroit Diesel Corp.,* 494 F. Supp. 2d 1342, 1356 (S.D. Fla. 2007); *see, e.g., United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc*., 910 F.2d 775, 779 (11th Cir. 1990); *Marine Overseas Services, Inc. v. Crossocean Shipping, Co. Inc.*, 791 F.2d 1227 (5th Cir.1986).
[20] *F.W.F. Inc.,* 494 F. 6upp. 2d at 1356.
[21] *Cashman Equip. Corp.,* 2007 U.S. Dist. LEXIS 21921, at *6 (E.D. La. Mar. 26, 2007) (citing *Southwestern Engineering Co. V. Cajun Elec. Power Co-op., Inc*., 915 F.2d 972 (5th Cir. 1990)).
[22] *Crowley P.R. Servs. v. Cervezas Del Sur, Inc.*, 2014 U.S. Dist. LEXIS 165724, at *6-7 (M.D. Fla. Oct. 22, 2014)(internal citations omitted)).
[23] *See, e.g., Ludwig & Robinson, PLLC v. BiotechPharma, LLC*, 186 A.3d 105, 109-10 (D.C. 2018)("'a cause of action that could be considered a tort independent of contract performance is a viable claim' if the tort 'exist[s] in its own right independent of the contract[] and any duty upon which the tort is based . . . flow[s] from considerations other than the contractual relationship.'")(internal citations omitted).

### 2.    MAIC is Entitled to Summary Judgment on all of Plaintiff's Claims because the Loss was not Fortuitous or Accidental

The Policy includes the following clause: "**We will cover sudden accidental direct physical loss or damage to the insured watercraft.**"[24] The term "'[A]ccidental' is synonymous with 'fortuitous.'"[25] A loss is fortuitous when it was "unforeseen, unexpected, unintended, unavoidable, or caused by the insured's own negligence."[26] A loss is not accidental or fortuitous when it results from "'an inherent defect, ordinary wear and tear, or intentional misconduct of the insured.'"[27] In admiralty law, *the insured has the burden of proving that the loss was accidental or fortuitous.*[28]

### a.    Rainfall is not enough to show that the Vessel's sinking was fortuitous

Plaintiff claims rainfall alone caused the Vessel to sink, but rainfall is not enough to show that a sinking was fortuitous.[29] "[W]hether the rainfall indicated in the data is 'extraordinary' for purposes of this motion is a legal question."[30] Here, MAIC anticipates that Plaintiff may attempt to rely upon the opinions of Mr. Charles Stephens that the loss was

---

[24] Ex. 6 - Policy, at page 5 (emphasis added).

[25] *Markel Am. Ins. Co. v. Pajam Fishing Corp.*, 691 F. Supp. 2d 260, 265 (D. Mass. 2010); *see Great Lakes Ins. Se v. Wave Cruiser Llc*, 2020 U.S. Dist. LEXIS 207827, at *13 (S.D. Fla. Nov. 5, 2020); *St. Paul Fire & Marine Ins. Co. v. Warwick Dyeing Corp.*, 26 F.3d 1195, 1202 (1st Cir. 1994).

[26] *Great Lakes*, 2020 U.S. Dist. LEXIS 207827, at *14.

[27] *Pajam*, 691 F. Supp. 2d 260, 265 (D. Mass. 2010)(quoting *Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293, 307 (2d. Cir. 1987)).

[28] *See Great Lakes*, 2020 U.S. Dist. LEXIS 207827, at *14 ("To recover under an all-risk marine insurance policy, the insured must show (1) a fortuitous loss, and (2) proof that the loss occurred during the policy period."); *Lamadrid v. Nat'l Union Fire Ins. Co.*, 567 F. App'x 695, 701-02 (11th Cir. 2014)("… to recover under an all-risk policy such as the one presently at issue, the insured must necessarily demonstrate that the damage or loss was fortuitous.").

[29] *Chartis Prop. Cas. Co. v. Inganamourt*, 2019 U.S. Dist. LEXIS 45806, at *13-14 (D.N.J. Mar. 20, 2019).

[30] *Id.*, at *12.

6

fortuitous.[31] Notably, Plaintiff relies on the same expert in this case that the defendant-insureds retained in *Chartis Prop. Cas. Co. v. Inganamourt* to give similar opinions to the ones he offers here—that the sinking was not the result of a defect, but rather heavy rainfall caused the vessel to sink.[32] In *Chartis Prop.,* the Court held that the defendant-insured did not present sufficient evidence to prove that the amount of rainfall was fortuitous.[33] In so holding, the Court relied, in part, on the plaintiff-insurer's expert opinion that "even if there was rain, [the defendant-insureds could not] meet their burden of showing a rainfall that was of a fortuitous nature," because "'[r]ainfall alone is no cause for the boat to partially submerge. The boat is intended to prevent rain water falling on the deck from entering the bilges.'"[34] The court concluded that "even if there was rain, [the defendant-insureds] cannot meet their burden of showing a rainfall that was of a fortuitous nature."[35]

Furthermore, in the instant matter, like in *Chartis Prop.*, no other vessel in the same marina sank due to the rainfall. Here, the Vessel sank because of design defects that resulted in the Vessel's inability to stay afloat during rainfall. Mr. Stephens' opinion is an impermissible legal conclusion, and his report fails to establish sufficient facts, data, or opinions from which the Court could conclude that the rainfall was extraordinary enough to trigger a fortuitous loss.

Here, Plaintiff cannot meet his burden, and summary judgment must be granted. As the *Chartis* court noted, rainfall alone should not cause a sinking.

---

[31] Ex. 7 - Pl. Expert Report, Charles Stephens ("Stephens Report), at page 3.
[32] *Chartis Prop.*, 2019 U.S. Dist. LEXIS 45806, at *15.
[33] *Id*., at *14-15.
[34] *Id*., at *13-14.
[35] *Id.*

### b.  Design defects, not rainfall, were the efficient proximate cause of the loss

Here, the Vessel sank because of design defects in the Vessel that resulted in the Vessel's inability to stay afloat during rainfall. MAIC's Naval Architecture and Marine Engineering Expert, Robert Taylor, determined that the "proximate cause" of the loss was:

> a combination of (a) an un-gasketed bilge hatch located in the aft portion of the cockpit; (b) placement of the cockpit drainage scuppers directly adjacent to the aforementioned un-gasketed bilge hatch; and (c) the high static waterline relative to the elevation of the cockpit scuppers (the static waterline was essentially the same level as the scupper drains)."[36]

MAIC posits that these design defects existed prior to the Policy's effective date, and throughout the policy period to the date of loss. Design defects are not a fortuitous or accidental cause of loss.[37]

Proximate cause is applied more strictly in matters involving maritime insurance coverage.[38] It is not a "but for" causation standard.[39] "Under federal maritime law 'the proximate cause is the efficient cause and not a merely incidental cause which may be nearer in time to the result.'"[40] In other words, it is the "predominant" or "determining" cause of the loss,[41] and not

---

[36] Ex. 8 - Robert Taylor Report ("Taylor Report"), at ¶ 10(b).

[37] *Class Action of S. Fla. v. Nat'l Union Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 130696, at *12 (S.D. Fla. May 30, 2013)(" Losses are not fortuitous, however, where they result from an inherent defect in the object damaged . . .").

[38] *Cont'l Ins. Co. v. Lone Eagle Shipping (Liber.),* 952 F. Supp. 1046, 1061-62 (S.D.N.Y. 1997)(citing *Blaine Richards & Co., Inc. v. Marine Indemn. Ins. Co. of Am.,* 635 F.2d 1051, 1054 (2d Cir. 1980); *Lanasa Fruit Steamship & Importing, Co. v. Univ. Ins. Co.*, 58 S. Ct. 371 (1938).

[39] *Id*.

[40] *N.H. Ins. Co. v. Krilich*, 387 F. App'x 940, 942 (11th Cir. 2010)(citing *Lanasa*, 58 S.Ct. 371, 374; *see also Standard Oil Co. v. United States*, 340 U.S. 54, 58, 71 S.Ct. 135, 137, 95 L. Ed. 68 (1950) (stating that proximate cause is the "cause which is most nearly and essentially connected with the loss as its efficient cause"); *Tillery v. Hull & Co*., 876 F.2d 1517, 1519 (11th Cir. 1989) ("[C]ourts seeking to determine the cause of a vessel's damage assign greater weight to the ultimate, efficient cause than to the temporally remote causes."); *United States Fire Ins. Co. v. Cavanaugh*, 732 F.2d 832, 835 (11th Cir. 1984)("In admiralty cases the cause which is truly proximate is that which is proximate in efficiency.").

[41] *Lone Eagle Shipping*, 952 F. Supp. at 1061-62 (citations omitted).

8

27535197v.1

simply the cause nearest to the time of loss.[42] If there appears to be more than one cause, the court looks for the cause which "rendered the loss inevitable," in order to distinguish between the proximate cause and the remote cause.[43]

Mr. Taylor, opined that the Vessel had a number of design defects and was "not designed or built to meet or exceed the industry consensus minimum performance requirements and therefore was not capable of staying afloat in heavy rain, as would be reasonably expected[.]"[44] At deposition, Mr. Taylor testified that the Vessel was not built in compliance with the guidelines set forth by the American Boat and Yacht Council ("ABYC") or International Organization for Standardization ("ISO"), and Midnight Express (the Vessel's manufacturer) was not certified by the National Marine Manufacturers Association ("NMMA").[45] Although not a requirement, these organizations represent that a manufacturer has had "an extra quality control, double-check on our engineering and construction and design."[46] More specifically, Mr. Taylor testified that the Vessel's drainage system did not meet the ABYC H-4 standard performance requirements to qualify as an assisted bailing system.[47] In fact, Mr. Taylor opined that "[the] Midnight Express fails to meet the criteria laid out within the [ABYC H-4] standard for any of the six listed drainage system options."[48]

---

[42] *Id.*

[43] *Id.* (citing 2 Thomas J. Schoenbaum, Admiralty & Maritime Law, § 19-10, at 434 (2d ed. 1994)(finding that "heavy weather" was not the efficient proximate cause of damage to a vessel, but rather the corroded condition of the frames allowed a breach of the integrity of the vessel before the heavy weather affected the vessel); *Krilich*, 387 F. App'x 941-42 (affirming that insured's failure to maintain the watertight hatches was the efficient proximate cause of loss, instead of a fracture in the keel, because "all of the experts agreed that the vessel 'would not have sunk as quickly or in the manner that it did if the sea chests had been secured watertight.'").

[44] Ex. 8 - Taylor Report, at ¶ 10(a).

[45] Ex. 9 – Deposition of Robert Taylor ("Taylor Dep."), at 17:15-21.3.

[46] Ex. 9 - Taylor Dep., at 20:16-21:3.

[47] Ex. 9 - Taylor Dep., at 100:25-111:7.

[48] Ex. 9 - Taylor Dep., at 202:9-203:5; Ex. 8 – Taylor Report, at pages 13-14.

9

Mr. Taylor also testified that in his opinion "it's a poor design when the boat can backflood and downflood with very little – very little weight in it or in the condition of full load of which we don't even have full load on this boat."[49] He specifically pointed out that the Vessel's drainage system was not properly designed to passively keep water out, instead relying on the active system.[50] He ultimately testified that "were it not for those factors, this rain wouldn't have killed this boat."[51] He described Midnight Express's design as "teetering on the edge."[52] Indeed, after his 30 to 45 minute float test on a slightly windy day, he found that the Vessel had already taken on water that came in through the deck drains and overfilled the non-gasketed hatch.[53]

Mr. Stephens' report agrees with Mr. Taylor's "description and statements [in his report] as to the amount of rain…,"[54] and does not dispute, or even address, Mr. Taylor's opinions that 1) the Vessel was not built to ABYC or ISO guidelines, and the manufacturer was not NMMA certified,[55] and 2) had the boat design met minimum industry performance requirements for cockpit drainage, it would not have sunk and the bilge pumps would have been able to handle the "minimal seepage of water into the bilge."[56] Therefore, the undisputed material facts show that the efficient proximate cause of the loss was the various design defects existing in the Vessel.

### 3. Even if Plaintiff met his burden of proving that the loss was accidental or fortuitous, plaintiff's loss would be excluded from coverage because design defects were the efficient proximate cause of the loss

Even if Plaintiff meets his burden of proving that the damages to the Vessel were accidental or fortuitous (and that the Policy's coverage otherwise applies), the Policy's exclusion for

---

[49] Ex. 9 - Taylor Dep., at 101:25-102:9.
[50] Ex. 9 - Taylor Dep., at 102:13-104:3
[51] Ex. 9 - Taylor Dep., at 103:23-104:3.
[52] Ex. 9 - Taylor Dep., at 104:5-8.
[53] Ex. 9 - Taylor Dep., at 142:22-149:7.
[54] Ex. 7 Stephens Report, at page 2.
[55] Ex. 8 – Taylor Report, at ¶¶ 7 and 9; *see generally* Ex. 7 - Stephens Report.
[56] Ex. 8– Taylor Report, at ¶¶ 7 and 9.

10

manufacturer's defects or design defects eliminates coverage. MAIC bears the burden of proving

that a Policy exclusion applies.[57] To negate coverage pursuant to a policy exclusion, MAIC must

"establish that the exclusion is stated in clear and unmistakable language, is subject to no other

reasonable interpretation, and applies in the particular case and that its interpretation of the

exclusion is the only construction that could fairly be placed thereon."[58] The Policy provides: "We

will not pay for loss, damage or expense caused by or resulting from: 9) **manufacturer's defects**

or **design defects**."[59] As defined in the Policy, a design defect is "a flaw in the structural plan of

the **insured watercraft's** hull or machinery, or any of its components."[60]

As set forth in detail above, the undisputed material facts establish that various design

defects (as defined by the Policy) were the efficient proximate cause of the loss. Accordingly, even

if Plaintiff meets his burden of proving that the loss was accidental or fortuitous (and that the

Policy's coverage otherwise applies), this exclusion applies to bar coverage for the loss.

### 4. MAIC is Entitled to Summary Judgment on All of Plaintiff's Claims Because the Vessel was Unseaworthy, in Violation of the Policy's Express Warranty of Seaworthiness, thereby Voiding the Policy

Because the Vessel was unseaworthy, the Policy is void. On this separate and additional

basis, because there is no insurance contract in effect to potentially breach, MAIC is entitled to

summary judgment on all of Plaintiff's claims.

The Policy includes the following express warranty: "It is warranted that the **insured**

**watercraft** is seaworthy at the inception of this insuring agreement. Violation of this warranty

---

[57] *See Lamadrid*, 567 F. App'x at 702 ("Because we find that Appellants have met their burden of demonstrating an accidental and fortuitous loss under the Policy, the burden on remand shifts to National Union to establish the applicability of one or more of the Policy's exclusions.").

[58] *Great Lakes*, 2020 U.S. Dist. LEXIS 207827, at *20 (internal citations omitted)(citing *AGCS Marine Ins. Co. v. World Fuel Servs.*, 187 F. Supp. 3d 428, 438 (S.D.N.Y. 2016)).

[59] Ex. 6 - Policy, at page 6 (emphasis in original).

[60] Ex. 6 - Policy, at page 1 (emphasis in original).

voids this insuring agreement from its inception."[61] "[F]ederal admiralty law requires strict construction of express warranties in maritime insurance contracts."[62] An express warranty of seaworthiness indicates that the Vessel is "reasonably fit for the intended purpose."[63] Courts have repeatedly held that, under federal admiralty law, where an insured breaches an express warranty of seaworthiness the entire contract is void *ab initio*.[64] Further, if an insured breached an express warranty it is irrelevant whether the vessel's unseaworthiness proximately caused or contributed to the claim at issue.[65]

The Policy's express warranty of seaworthiness is identical to the implied warranty of seaworthiness that attaches at the inception of every time hull insurance policy.[66] A time hull policy, like the Policy, is "[o]ne in which coverage attaches from the effective date and the risks

---

[61] Ex. 6 - Policy, at page 1.

[62] *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters*, LLC, 396 F. Supp. 3d 1170, 1174 (S.D. Fla. 2019)("federal admiralty law requires strict construction of express warranties in maritime insurance contracts.").

[63] *See, e.g., Carr v. PMS Fishing Corp.*, 191 F.3d 1, 3 (1st Cir. 1999); *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 (11th Cir. 1988)(holding that where an insured breaches an express warranty, the insurance company is released from liability "even if compliance with the warranty would not have avoided the loss"); *Aguirre v. Citizens Cas. Co.*, 441 F.2d 141, 144 (5th Cir. 1971); *see also Boudoin v. Lykes Bros. S.S. Co.*, 348 U.S. 336 (1955).

[64] *State Nat'l Ins. Co. v. Anzhela Explorer*, L.L.C., 812 F. Supp. 2d 1326, 1366 (S.D. Fla. 2011)("The parties can also be bound by express warranties of seaworthiness in the policy itself, a violation of which also voids the policy in its entirety."); *Aguirre*, 441 F.2d at 145 ("Consequently the owners' breach of their express warranty of seaworthiness suspended coverage under the insurance policy. The insurer cannot be liable for damages suffered while coverage was suspended.").

[65] *Aguirre*, 441 F.2d at 143 ("If breach of the express warranty automatically suspended coverage under the policy, the question whether unseaworthiness proximately caused or contributed to the grounding becomes irrelevant.").

[66] *See Emp'rs Ins. v. Occidental Petroleum Corp.,* 978 F.2d 1422, 1431-32 (5th Cir. 1992)(holding Federal maritime law implies two warranties of seaworthiness: (1) the implied warranty of seaworthiness at the inception of the policy--is absolute in nature; and (2) after the policy attaches, a modified, negative warranty, under which the insured promises not to knowingly send a vessel to sea in an unseaworthy condition").

are not limited to a given voyage, but to a certain fixed term or period of time."[67] A warranty of seaworthiness at inception is "absolute in nature," and "[t]he insured breaches [this] warranty if the vessel is *in fact* unseaworthy when the policy becomes effective."[68] Notably, the insurer is not required to prove that the insured had knowledge of the vessel's unseaworthy condition.[69]

There is a rebuttable presumption of unseaworthiness where a vessel sinks while moored in calm waters, or where the vessel's equipment breaks under normal use.[70] Courts have found vessels to be unseaworthy where, *inter alia*, bilge pumps have failed and/or deficient hatch covers or gaskets undermine the vessel's watertight integrity.[71]

Here, it should be undisputed that the Vessel was unseaworthy as a matter of law, because its equipment failed under normal use *while* it was berthed in calm waters. The Vessel was docked in a slip at the time it sank, it was not out to sea in the middle of rough or choppy waters.[72]

---

[67] *Id.*; *Walker v. Travelers Indem. Co.,* 289 So. 2d 864, 874 n.1 (La. Ct. App. 1974)).

[68] *Id*.

[69] *Id*.

[70] *See, e.g. In re Sea Star Line, LLC*, 2016 U.S. Dist. LEXIS 178293, at *30 (M.D. Fla. Sep. 23, 2016)("However, a rebuttable presumption of unseaworthiness arises where a showing is made that the 'vessel sank in calm weather and seas.' *Kilpatrick Marine Piling v. Fireman's Fund Ins.* Co., 795 F.2d 940, 944 (11th Cir. 1986); *Derby Co. v. A. L. Mechling Barge Lines, Inc*., 258 F. Supp. 206, 211 (E.D. La. 1966), *aff'd*, 399 F.2d 304 (5th Cir. 1968) (unseaworthiness presumed where vessel sinks under normal conditions); *see also Florida Marine Transporters, Inc. v. Sanford*, 255 F. App'x 885, 890 (5th Cir. 2007) (presumption applies where ship's equipment breaks in the ordinary course of business))"; *Axis Reinsurance Co. v. Henley*, 2009 U.S. Dist. LEXIS 98718, at *44 (N.D. Fla. Oct. 22, 2009); *Ins. Co. of North America v. Lanasa Shrimp Co*., 726 F.2d 688, 690 (11th Cir. 1984)).

[71] *See, e.g. Henley*, 2009 U.S. Dist. LEXIS 98718, at *44 (N.D. Fla. Oct. 22, 2009)(holding that a vessel was unseaworthy where the bilge pumps were not operating properly, causing the vessel to capsize in the rain); *Great Lakes Reinsurance PLC v. Soveral*, 2007 U.S. Dist. LEXIS 13261 (U.S. S.D. Fla. 2007); *Waterman S.S. Corp. v. Luria Bros. & Co.,* 1978 U.S. Dist. LEXIS 20130, at *26 (S.D.N.Y. Jan. 16, 1978); *Derby Co. v. A. L. Mechling Barge Lines, Inc*., 258 F. Supp. 206, 210 (E.D. La. 1966)("…the fact that the hatch covers and manhole covers were not watertight would have created an unseaworthy condition for which Mechling Barge Lines would be liable.").

[72] Ex. 10 - Dep. of James Stokes, at 43:12-20, 44:20-24, 45:14-46:24; Exhs. 5 and 6 to same.

13

Expert testimony also directly supports the unseaworthiness of the Vessel. Jonathan Klopman, a Marine Surveyor, testified that wave action did not contribute to the Plaintiff's loss.[73] Instead, he opined that the Vessel was in "a fairly well protected area," and while "you would expect that wave would be – would mound up due to wind activity," there would have been "no [wave or sea action that is exacerbated by driven wind] because of the direction of the wind and the orientation of the marina."[74] Mr. Taylor testified that the wind wasn't an "actor" in the loss based on the fact that the Vessel rolled to port into the wind, rather than starboard.[75] He supported this conclusion by noting that the winds were approximately only 20 mph, and the area was shielded by the condos in the area.[76] Therefore,"[t]he water did not enter the vessel by waves over the sides",[77] but rather Vessel sank because it was "not capable of staying afloat in heavy rain, as would be reasonably expected."[78]

Further, there is no evidence on the record that any other vessels moored at the marina sank that evening. Plaintiff's Vessel appears to be the only one that suffered such an extreme degree of damage in the marina where the Vessel was docked. To this point, Mr. Klopman testified that "if you have one boat that—that mysteriously sinks and – and no one else sank, usually it's not an act of God."[79] Mr. Klopman concluded that the Vessel "cannot be considered seaworthy precisely because it cannot be left unattended afloat for extended periods of time."[80] Mr. Klopman testified

---

[73] Ex. 11- Deposition of Jonathon K. Klopman ("Klopman Dep.") at 68:22-69:1.
[74] Ex. 11- Klopman Dep., at 69:2-16.
[75] Ex. 9 - Taylor Dep., at 89:3-92:12.
[76] Ex. 9 - Taylor Dep., at 92:13-22.
[77] *Henley*, 2009 U.S. Dist. LEXIS 98718, at *40.
[78] Ex. 8 - Taylor Report, at ¶ 10(a).
[79] Ex. 11 – Klopman Dep., at 128:25-129:2.
[80] Ex. 3 - Klopman Damage Survey, at page 9 (MARKEL 000095).

at his deposition that the Vessel's scuppers and un-gasketed hatch became overloaded, allowing water to flow into the cockpit hatch and bilge.[81]

Mr. Taylor testified:

the boat doesn't have much resistance to holding water… In fact, the scuppers are literally right kind of at the waterline. . . and if that water accumulates fast enough or collects in the boat to the extent that some of it, a large portion of it, went into the bilge, that also caused the boat to lean. And once it starts leaning and downflooding, then it's a race for the bilge pumps to try to keep up with that rate.[82]

"Downflooding" is what occurred when outside water got into the Vessel and spilled into the bilge, which Mr. Taylor attributed to the hatch and flaps around the drains not being watertight and allowing water leakage.[83] This combination of the Vessel's "low sole" with scuppers at the waterline that were too small, as well as un-gasketed hatches led to Mr. Taylor's conclusion that the Vessel is unseaworthy.[84] Once that water drained into the bilge, the Vessel could only be dewatered for as long as her bilge pumps were running.[85] In order to run efficiently, the bilge pumps required a continuous source of power.[86] In the absence of an electrical shore-tie connection, that power necessarily would have to come from the Vessel's own batteries.[87] The battery switches must also be in the "on" position for the bilge pumps to function, and Mr. Taylor found that the port bilge battery switch was in the "off tripped position."[88]

Mr. Klopman noted that the Vessel was "not able to self bail without the use of a constant life support system (an assurance that bilge pumps and batteries are always operational)."[89] Just as

---

[81] Ex. 11 - Klopman Dep., at 173:2-15.
[82] Ex. 9 – Taylor Dep., at 44:4-15.
[83] Ex. 9 - Taylor Dep., at 95:17-97:1
[84] Ex. 9 - Taylor Dep., at 194:18-195:12.
[85] Ex. 11 - Klopman Dep., at 173:15-23.
[86] Ex. 11 - Klopman Dep., at 173:15-25.
[87] Ex. 11 - Klopman Dep., at 173:15-25.
[88] Ex. 9 - Taylor Dep., at 49:13-20.
[89] Ex. 3 - Klopman Damage Survey, at page 8 (MARKEL 000094).

15

in *Axis Reinsurance Co. v. Henley*, "[h]ad the bilge pumps been operating properly, the water would have been automatically pumped out. A rain would not have capsized the vessel. [Plaintiff] permitted the vessel to remain in the water in an unseaworthy condition. . . .[The] warranty of seaworthiness was breached, and [MAIC] is not responsible for the loss."[90]

Plaintiff has disclosed two expert witnesses to support his claims—Charles Stephens and Drew Hains. However, only Charles Stephens' report was timely served. In the case scheduling order, the Court ordered that initial disclosures from the party who has the initial burden of proof were due on or before March 15, 2021, supplemental disclosures to rebut evidence were due on or before May 15, 2021, and reply expert reports from the party with the initial burden of proof were due on or before June 15, 2021.[91]

MAIC respectfully asks that the Court take notice that Plaintiff untimely served Drew Hains' report on MAIC on June 15, 2021, a mere 15 days before the dispositive motion deadline and did not offer a date for his deposition as required by the rules.[92] Not only did Plaintiff wait to disclose a completely new expert until *after* MAIC's expert was deposed, but he served a conclusory report drafted by an expert who appears to have never physically inspected the Vessel. This is nothing more than an attempt to circumvent the court's case scheduling order. As such, only Mr. Stephens' expert opinion should be considered by this court.

Mr. Stephens offers bare opinions on the case's ultimate issues. His report does not even address, let alone dispute, whether the bilge pumps were properly operating, and flatly denies the existence of a hatch, calling the un-gasketed hatch issues "'red hearings *[sic]*'" that

---

[90] *See* 2009 U.S. Dist. LEXIS 98718, at *47.
[91] Ex. 12 - Court Approved Case Scheduling Order (D.I. 69).
[92] Ex. 13 – Plaintiff's Supplemental Expert Report-Drew Hains.

"have nothing to do with the sinking or seaworthiness of the boat."[93] The closest he comes to addressing the failure of the bilge pumps is when he opines that the batteries and electrical systems "appear[ed] to be fully operational shortly before the loss and [he] determined that the vessel was connected to shore power when she sank," but he does not discuss how he reached any of his conclusions.[94]

Mr. Stephens' bare bones conclusions fail to dispute the unseaworthy condition of the Vessel's bilge pumps or address the un-gasketed hatch, and does not adequately rebut the presumption of unseaworthiness. Due to the foregoing circumstances, MAIC respectfully requests that this court find that the express and implied warranties of seaworthiness were violated by the condition of the Vessel, thereby voiding the Policy and negating any rights to coverage under the Policy or any damages arising from any alleged breach of the Policy terms.

### 5.    MAIC Has Not Breached Any Duty to "Adjust" Plaintiff's Claim

Assuming the Policy applies to the loss in the first instance, which it does not, MAIC has not breached any duty to "adjust" Plaintiff's claim. "To 'adjust' means '[t]o determine the amount that an insurer will pay an insured to cover a loss.'"[95] Here, MAIC has engaged in activities that meet the common and plain meaning of "adjust". A good faith dispute over the existence of coverage is not a "failure to adjust" the claim as asserted by Plaintiff.

---

[93] Ex. 9 - Stephens Report, at page 3.
[94] Ex. 9 - Stephens Report, at page 2.
[95] *One Call Prop. Servs. v. Sec. First Ins. Co.,* 165 So. 3d 749, 755 (Fla. Dist. Ct. App. 2015)(quoting Black's Law Dictionary); *see Lexington Ins. Co. v. Paddock Swimming Pool Co.,* 2021 U.S. Dist. LEXIS 63259, at *27 (D.D.C. Apr. 1, 2021)("*See Adjust*, Black's Law Dictionary (11th ed. 2019)("To determine the amount that an insurer will pay an insured to cover a loss.").

### D.    PLAINTIFF'S TORT CLAIMS AND ESTOPPEL CLAIMS FAIL AS A MATTER OF LAW

#### 1.    MAIC is Entitled to Summary Judgment on Plaintiff's Tort Claims because District of Columbia Law does not Allow Plaintiffs to Concurrently Plead Tort Claims with a Breach of Contract Claim

Under the applicable District of Columbia ("D.C.") law, a tort claim may only be sustained concurrently with breach of contract if the claim is independent of contractual duties, i.e. fraudulent inducement.[96] Because Plaintiff's tort claims for negligent misrepresentation and fraud flow from his contractual relationship with MAIC, they must be dismissed.[97] Further, even if Plaintiff were permitted to concurrently plead tort claims, they must be dismissed because MAIC did not breach the Policy.[98]

#### 2.    Plaintiff Has Not Met His Burden of Proof as to Any of His Claims Lying in Fraud or Estoppel

Even if D.C. law permitted concurrent pleading, all of Plaintiff's claims lying in fraud and estoppel must be dismissed because Plaintiff has failed to satisfy his burden and meet the elements of his claims. All of Plaintiff's tort claims lie in fraud, which requires proof that MAIC knowingly made some material misrepresentation or omission regarding a material issue, which Plaintiff relied on to his detriment. Plaintiff's estoppel claim, although not a tort claim requires essentially the same showing.[99]

---

[96] *See, e.g., Ludwig & Robinson, PLLC v. BiotechPharma, LLC*, 186 A.3d 105, 109-10 (D.C. 2018)("'a cause of action that could be considered a tort independent of contract performance is a viable claim' if the tort 'exist[s] in its own right independent of the contract[] and any duty upon which the tort is based . . . flow[s] from considerations other than the contractual relationship.'")(internal citations omitted).

[97] *Id.*

[98] *See Id.*

[99] *See generally* MAIC's Opening Brief in Support of its Motion for Choice of Law [D.I. 87]; *see, e.g. Sea Byte, Inc. v. Hudson Marine Mgmt. Servs.*, 565 F.3d 1293, 1304 (11th Cir. 2009)("The concept of equitable estoppel does exist in federal admiralty law."); *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 128 (3d Cir. 2002).

27535197v.1

To sustain a claim for negligent misrepresentation under D.C. law, a Plaintiff must prove that 1) the insurer or their agent made "made a false statement or omitted a fact that [they] had a duty to disclose," 2) "that it involved a material issue," and 3) that plaintiff "reasonably relied upon the false statement or omission to his detriment for the period of time at issue in this case."[100] To sustain a claim for fraud or fraudulent inducement under D.C. law, Plaintiff must prove that "1) MAIC made a false representation, 2) in reference to a material fact, 3) MAIC made the representation with knowledge of its falsity, 4) with the intent to deceive, and (5) Plaintiff took action in reliance upon the representation."[101] "In order to sustain a claim of estoppel under federal admiralty law, a party must show that it relied in good faith on a misrepresentation of another party, and that this reliance caused it to change its position for the worse."[102] A claim for estoppel requires a showing of "detrimental reliance or prejudice," or it cannot be sustained.[103]

The record is void of any evidence regarding fraud, material misrepresentations, or material omissions on behalf of MAIC, or that Plaintiff relied on any such material misrepresentation or omission. Plaintiff has not disclosed an insurance coverage expert who has opined that the Policy contained misrepresentations or omissions, or that the Policy is somehow illusory. To the contrary, the record shows that Plaintiff negotiated his own policy with an insurance agent, reviewed and signed the application, executed the Policy documents, and renewed the Policy three times without

---

[100] *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999)(citations omitted).
[101] *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013)(citing *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1074 n.22 (D.C. 2008); *see Moore v. Deutsche Bank Nat'l Tr. Co.*, 124 A.3d 605, 610 n.9 (D.C. 2015); *In re Estate of McKenney*, 953 A.2d 336, 342 (D.C. 2008); *Park v. Sandwich Chef, Inc.*, 651 A.2d 798, 801 (D.C. 1994).
[102] *Gibbs*, 314 F.3d at 128.
[103] *Gibbs*, 314 F.3d at 128.

any allegations of fraud.[104] Because Plaintiff has failed to satisfy the aforementioned elements, these claims fail as a matter of law, and MAIC is entitled to summary judgment.

### 3. Plaintiff's Claims Would Still Fail Under Maryland or Delaware Law

Plaintiff's claims for negligent misrepresentation, fraud, fraudulent inducement, and estoppel would still fail under the laws of Maryland or Delaware, because the application of either state substantive law of would result in the same outcome.[105] All require evidence of a false representation, which Plaintiff has failed to allege, as discussed in Section D.2.

### E. PLAINTIFF'S CLAIMS PLED PURSUANT TO FLORIDA LAW FAIL AS A MATTER OF LAW BECAUSE FLORIDA LAW DOES NOT GOVERN ANY ASPECT OF THIS MATTER

As discussed in Section 3 of MAIC's Opening Brief in Support of its Motion for Choice of Law, Florida law does not apply to the procedural or substantive aspects of this matter, and therefore all claims pled pursuant to Florida law should be dismissed. Further, the Petition for Mediation is moot as the parties unsuccessfully participated in mediation on November 23, 2020.

## V. CONCLUSION

For the foregoing reasons, MAIC respectfully requests that this Court 1) find that Plaintiff's breach of contract and declaratory judgment claims fail as a matter of law because Plaintiff's loss was not fortuitous, design defects were the efficient proximate cause of the loss, and/or the Vessel was unseaworthy, in violation of the Policy's express warranty of seaworthiness, thereby voiding the Policy, 2) dismiss Plaintiff's claims for negligent misrepresentation and fraud, 3) dismiss Plaintiff's claims for fraudulent inducement and estoppel, and 4) dismiss all of Plaintiff's claims pleaded pursuant to Florida law, because Florida law does not govern this matter.

---

[104] Ex. 2 - MAIC Underwriting file (MARKEL 000251-336).
[105] *See* MAIC's Opening Brief in Support of its Motion for Choice of Law, at § II.B [D.I. 87].