## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

JAMES STOKES,

        Plaintiff,                        CASE NO.: 1:19-cv-02014 LPS

vs.

MARKEL AMERICAN INSURANCE COMPANY,

        Defendant.

_____

## PLAINTIFF JAMES STOKES' OPENING BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Date: July 30, 2021

PALMER BIEZUP & HENDERSON LLP
Michael B. McCauley (ID 2416)
1223 Foulk Road
Wilmington, DE 19803
(302) 594-0895
mccauley@pbh.com
Attorneys for Plaintiff

Of counsel:
David Avellar Neblett
James M. Mahaffey III
PERRY & NEBLETT, P.A.
2550 South Bayshore Drive Suite 211
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile: (305) 967-8182
david@perryneblett.com
jmahaffey@perryneblett.com

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS…………………………………………………1

SUMMARY OF THE ARGUMENTS……………………………………………………………2

STATEMENT OF FACTS……………………………………………………………………...2

ARGUMENT…………………………………………………………………………………...7

I.      STANDARD OF REVIEW…………………………………………………………..7

      A.      Motion for Summary Judgment…………………………………………………7

II.      SUMMARY JUDGMENT SHOULD BE ENTERED IN PLAINTIFF'S FAVOR AS DEFENDANT BREACHED THE POLICY OF INSURANCE BY FAILING TO PAY FOR A FORTUITOUS LOSS THAT OCCURRED DURING THE POLICY PERIOD……………..…………………………………………………………………9

      A.      A Fortuitous Loss Occurred During the Active Policy Period……………...............9

      B.      Defendant Breached the Contract by Refusing to Indemnify Plaintiff for his Fortuitous Hurricane Loss………………………………………………………..11

III.      DEFENDANT CANNOT MEET ITS BURDEN TO ESTABLISH THAT ALL OF PLAINTIFF'S DAMAGES ARE EXCLUDED…………………………………………13

      A.      The Policy's Lack of "Anti-Concurrent Cause" Language Means that Defendant Cannot Rely on any Asserted Exclusions………………………………………...13

      B.      No Policy Exclusions Apply, Warranting a Summary Judgment in Plaintiff's Favor and Preclusion of Defendant's Unsupported Affirmative Defenses……………………………………………………………………14

IV.      DEFENDANT'S CARE, CUSTODY, AND CONTROL OVER PLAINTIFF'S VESSEL AND PAYMENTS FURTHER CONFIRM COVERAGE …...…………………………16

      A.      Defendant Still Retains Care, Custody, and Control of Plaintiff's Damaged Vessel.....................................................................................................................16

      B.      Defendant's Payments Pursuant to the Policy are Admissions of Coverage and Function to Confess Judgment Against Defendant………………...…………….17

CONCLUSION………………………………………………………………………..20

## <u>TABLE OF CITATIONS</u>

<u>**Cases**</u>                                                                                                                    <u>**Page**</u>

*Alstrin v. St. Paul Mercury Ins. Co.*,
    179 F. Supp.2d 376, 388 (D. Del. 2002)…………………………………………............8

*Am. Legacy Found. v. Nat'l Union Fire Ins. Co.*,
    640 F. Supp.2d 524, 535 526 (D. Del. 2009)…………………………………………......9

*Archer Daniels Midland Co. v. Aon Risk Servs.*,
    No. CIV.97-2185, 2002 U.S. Dist. LEXIS 19314, 2002 WL 31185884, at *8 (D. Minn. Sept.
    27, 2002), aff'd, 356 F.3d 850 (8th Cir. 2004)…………………………………………..10

*Arvat Corporation v. Scottsdale Insurance Company*,
    No. 14-22774-CIV, 2015 WL 6504587, at *2 (S.D. Fla. October 28, 2015)……………..18, 19

*Baggs v. City of Pasadena*,
    958 F. Supp. 586, 588 (M.D. Fla. 1997)……………………………………………………19

*Banco Nacional de Nicaragua v. Argonaut Ins. Co.*,
    681 F.2d 1337, 1340 (11th Cir. 1982)…………………………………………………...9, 12

*Brookins v. Goodson*,
    640 So. 2d 110, 112-13 (Fla. 4th DCA 1994), *overruled on other grounds by State Farm Mut.
    Auto. Ins. Co. v. Laforet*, 658 So. 2d 55 (Fla. 1995)…………………………………………..19

*Carey Canada, Inc. v. California Union Ins. Co.*,
    748 F. Supp. 8, 15 (D.D.C. 1990)……………………………………………………………10

*Celotex Corp. v. Catrett*,
    477 317, 323 (1986)…………………………………………………………………...7, 8

*Colella v. State Farm Fire & Cas. Co.*,
    407 F. App'x 616, 622 (3d Cir. 2011)…………………………………………............13

*Crowley Liner Servs., Inc. v. Transtainer Corp.*,
    No. 06-21995, 2007 WL 433352, at *3 (S.D. Fla. 2007)…………………………..................8

*Empire Indem. Ins. Co. v. Winsett*,
    325 F. App'x 849, 851 (11th Cir. 2009)……………………………………………......13

*Glaser v. Geovera Specialty Ins. Co.*,
    420 F. Supp. 3d 1287, 1293 (M.D. Fla. 2019)…………………………………………............13

*Group Hospitalization, Inc. v. Foley*,
    255 A.2d 499, 501 (D.C. 1969)……..…………………………………………..…..9

*Hudson v. Prudential and Cas. Ins. Co.*
    450 So.2d 565 (Fla. 2d DCA 1984)………………………………………...........12

*In re Placid Oil Co.*,
    932 F.2d 394, 397 (5th Cir. 1991)……………………………………………….8

*Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*,
    866 F.2d 71, 76 (3d Cir. 1989)…………………………………………………9, 10, 12

*John M. Floyd & Associates, Inc. v. First Florida Credit Union*,
    443 F. App'x 396, 398 (11th Cir. 2011)………………………………………….8

*Jones v. Federated Nat'l Ins. Co.*,
    235 So. 3d 936, 941-42 (Fla. 4th DCA 2018)………………………………...9, 12

*Martinez v. Hartford Cas. Ins. Co.*,
    429 F. Supp. 2d 52, 60-61 (D.D.C. 2006)…………………………………………18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 587 (1986)……………………………………....................................8

*Neilson v. Mut. Life Ins. Co.*,
    1998 U.S. Dist. LEXIS 11331, at *14 (D. Del. July 6, 1998)…………………………12

*New Castle County v. Hartford Accident and Indemn. Co.*,
    933 F.2d 1162, 1181 (3d Cir. 1991)…………………………………………...9

*New Castle County Del. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*,
    174 F.3d 338, 344 (3d Cir. 1999)…………………….....................................................9

*Nunez v. Superior Oil Co.*,
    572 F.2d 1119, 1124 (5th Cir. 1978)………………………………………......8

*Phillip Marraccini Jr. et al. v. Clarendon National Ins. Co.*,
    2003 WL 22668842, at *3 (S.D. Fla. 2003)…………………………………………19

*Plante v. USF&G Specialty Ins. Co.*,
    2004 WL 741382 (S.D. Fla. 2004)…………………………………………………19

*Plante v. USF & G Specialty Insurance Co.*,
    No. 03-23157-CIV, 2004 WL 1429932, at *2 n.1 (S.D. Fla. 2004)……………………..18

*Regan v. Starcraft Marine*,
    418 F. App'x 310, 312 (5th Cir. 2011)……………………………………….......8

*Schainberg v. Urological Consultants of S. Fla., P.A.*,
    2013 U.S. Dist. LEXIS 208128, at *4 (S.D. Fla. Mar. 18, 2013)…………………………14, 16

*Sebo v American Home Assurance Company, Inc.*,
    208 So. 3d 694, 700 (Fla. 2016)……………………………………………………12, 13

*State Farm Fire and Cas. Co. v. Hackendorn*,
    605 A.2d 3, 7 (Del. Super. 1991)………………………………….............................10

*State Farm Mut. Auto. Ins. Co. v. Menendez*,
    70 So.3d 566, 569-70 (Fla. 2011)……………………………………………….....12

*State Farm Fire & Cas. Co. v. Licea*,
    685 So. 2d 1285, 1287-88 (Fla. 1996)………………………………………….…18

*Swire Pac. Holdings v. Zurich Ins. Co.*,
    845 So.2d 161, 166 (Fla. 2003)…………………………………….........................12

*Travelers Indemn. Co. of Illinois v. United Food & Commercial Workers Intern'l Union*,
    770 A.2d 978, 985 (D.C. 2001)……………………………….................................8

*Trexler Lumber Co. v. Allemannia Fire Ins. Co. of Pittsburgh*,
    289 Pa. 13, 136 A. 856, 858 (Pa. 1927)……………………………………….....13

*Tristar Lodging, Inc. v. Arch Speciality Ins. Co.*,
    434 F. Supp. 2d 1286, 1302 (M.D. Fla. 2006), *aff'd sub nom*; *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 215 F. App'x 879 (11th Cir. 2007)………………………………….18

*Tropical Paradise Resorts, LLC v. Clarendon American Ins. Co.*,
    2008 WL 3889577, at *2 (S.D. Fla. Aug. 20, 2008)…………………………………19

*U.S. v. Four Parcels of Real Property*,
    941 F.2d 1428, 1437 (11th Cir. 1991)………………………….............................7

*Washington Sports and Entm't, Inc. v. Untied Costal Ins. Co.*,
    7 F. Supp. 2d 1, 7 (D.D.C. 1998)…………………………………………………10

*Waters Edge Living, LLC v. RSUI Indem. Co.*,
    2008 WL 1816418, (N.D. Fla. Apr. 22, 2008)………………………………………18

**Statutes**

DEL. CODE ANN. tit. 18, § 902-1.2.1.5, 6, 7 & 8…………………………………………........14

Fla. Stat. § 627.70131(5)(a) (2019)…………………………………………………………...14

Fla. Stat. § 627.7142 (2019)………………………………......................................................14

**Other Authorities**

Fed. R. Civ. P. 56(a)……………….…………………………………………………………...7

Brian Lada, *Live updates: Michael shifts over Virginia, Delmarva Peninsula with windswept rain; Flash flood emergencies issued*, YAHOO (Oct. 11, 2018), https://www.yahoo.com/news/live-updates-6-dead-over-230919161.html    (last    visited    Jul.    28, 2021)…………………………………………………………………………………………...10

## NATURE AND STAGE OF THE PROCEEDINGS

This case is a dispute between Plaintiff, JAMES STOKES ("Mr. Stokes") and his insurer, Defendant, MARKEL AMERICAN INSURANCE COMPANY ("MARKEL"), stemming from MARKEL's refusal to indemnify Mr. Stokes for the sudden, accidental, and indisputably fortuitous loss of his fully-insured 2017 Midnight Express 39' Open with three Seven Marine 627s engines ("the Vessel") during the torrential rains of Hurricane Michael. Not only has MARKEL failed to indemnify Mr. Stokes for his loss, but worse, MARKEL now claims—over 1,000 days since the Vessel sank during Hurricane Michael—that it has not even issued a formal coverage decision or position. Deposition of Def.'s 30(b)(6) Corporate Representative ("Corporate Representative Depo"), pp. 160:24-25; 187:18-25, is attached as **Exhibit "A."** Although it initially treated the sinking as covered,[1] Defendant failed to indemnify Mr. Stokes for his loss. The undisputed facts on record unequivocally confirm that MARKEL breached the subject insurance policy.

Recently, the parties fully briefed choice-of-law issues. *See* D.I. 87, 95, 100. This Court has yet to issue an Order confirming the law to be applied. Plaintiff believes that Florida substantive law applies and has maintained this position since the initiation of this suit in Florida. *See* Pl.'s Compl., D.I. 1-1. Regardless of the state law applied, the Court should grant summary judgment, confirming coverage for Plaintiff's loss and confirming Defendant's breach of contract.

## SUMMARY OF THE ARGUMENTS

1.   The undisputed facts on record confirm that Defendant breached the insurance policy by Defendant's continued refusal to afford coverage for Plaintiff's fortuitous hurricane loss that

---

[1] There is no genuine dispute that a fortuitous hurricane loss occurred during the policy period, necessitating coverage. Plaintiff has moved to preclude the testimony of Defendant's hired "experts" due to the unreliable methodologies and tests employed. *See* D.I. 98, 99, 103. Plaintiff's *Daubert* challenge remains pending.

occurred during the policy period.

2.    The unambiguous language in the policy of insurance does not contain any "anti-concurrent cause" language, rendering Defendant's purported exclusions or "excuses" inapplicable.

3.    Defendant cannot possibility meet its burden to show that all of Plaintiff's sustained damages are excluded under the policy. Thus, Defendant's unfounded and vague affirmative defenses lack any merit, and summary judgment should be entered for Plaintiff.

4.    Defendant's actions following the Vessel loss confirm that the policy affords coverage for the loss, as Defendant made payments (prior any purported "reservation of rights") and otherwise treated the loss as covered. Defendant cannot now be heard to contend otherwise.

## **STATEMENT OF FACTS**

1.    It is undisputed that this action arises out of Defendant's refusal to indemnify its longtime-insured, Mr. Stokes, for his sudden, accidental, and fortuitous Vessel loss that occurred on or about October 11, 2018, when Mr. Stokes' 2017 Midnight Express 39' with three (3) Seven Marine 627s engines sank in her slip in Bethany Beach, Delaware, upon the torrential rains of Hurricane Michael.[2]

2.    It is undisputed that Mr. Stokes' Vessel was fully insured by Defendant via an "all-risk," agreed $680,000 policy for the period commencing from October 20, 2017, to October 20, 2018, bearing policy number MHP361698, effective and endorsed June 1, 2018.[3] The Subject Policy is attached as **Exhibit "B."**

---

[2] Ironically, the Vessel was in Delaware in compliance with the policy's hurricane season location requirement. *See* Decl. Stokes, ¶ 18, D.I. 36-1.

[3] On or about June 1, 2018, Plaintiff's Endorsed Policy was bargained for, paid for, and accepted by Mr. Stokes in Florida, confirming, *inter alia*, the application of Florida substantive law to the instant dispute. *See* Decl. Stokes, D.I. 36-1; *see also* Pl.'s Answer Brief, D.I. 95 (full choice of law application and analysis).

3.      It is undisputed that on or about October 12, 2018, the day immediately following Mr. Stokes' Hurricane Michael loss, Mr. Stokes timely provided notice of his loss. The Notice of Loss is attached as **Exhibit "C."**

4.      It is undisputed that the hurricane loss occurred during the active policy period. Deposition of Defendant's Claims Adjuster, Justin Evenson ("Evenson Depo"), p. 38:2-4, is attached as **Exhibit "D."**

5.      It is undisputed that Defendant assigned the loss claim number "18C40603" and does not dispute the date of loss, October 11, 2018. *See id.* at p. 32:1-2.

6.      It is undisputed that Defendant determined that Mr. Stokes did not make any misrepresentations when applying for insurance to protect the Vessel.

7.      It is undisputed that there are no issues regarding the "navigational limits" of the Vessel at the time of the loss. Corporate Representative Depo, p. 54:11-17; *id.* p. 24:15-19.

8.      It is undisputed that Defendant and Defendant's inspector confirmed the "extreme" and torrential rains that led to the loss. Defendant's surveyor, Jonathan Klopman, reported that "[a] thunderstorm passed through the marina between 11:00PM and midnight. The total rainfall for this time period was 7.29 inches. ***This is an extreme amount of rainfall by any measure***."[4] See Klopman Report, p. 4 of 21, attached as **Exhibit "E"** (emphasis added).

9.      It is undisputed that Mr. Kevin R. Brinson, PhD(c), the director of the Delaware Environmental Observing System ("DEOS") and a Delaware Associate State Climatologist at the Office of the Delaware State Climatologist, confirmed the extensive and historic rainfall associated

---

[4] Despite the findings of Defendant's own inspector, Defendant's "reservation of rights" letter attempts to downplay the "extreme" rainfall associated with Hurricane Michael as "a simple accumulation of rainwater." See Defendant's correspondence (reservation of rights) dated November 12, 2018, p. 2, attached as **Exhibit "F."**

with Hurricane Michael. Mr. Brinson provided compiled datasets confirming extreme rain within a short period of time. See Delaware Rainfall Datasets, attached as **Exhibit "G."**

10.    It is undisputed that the subject "all-risks" insurance policy does not feature any "anti-concurrent cause" language, rendering any of Defendant's purported "exclusions" or defenses futile. *See* Subject Policy, **Ex. "B."**

11.    On November 12, 2018, after acceptance and payment of several invoices confirming coverage, Defendant sent a "reservation of rights" letter, indicating novel reasons that Defendant might try to use to reach its goal of denying coverage. *See* Correspondence, **Ex. "F."**

12.    It is undisputed that Defendant made numerous payments on Plaintiff's loss affirmatively confirming and affording coverage—including payments prior to the issuance of any purported reservation letter. *See infr*a, **Composite Ex. "H."**

13.    Defendant's letter attempting to "reserve rights" vaguely claims that "the Policy contains several general conditions as well as several specific exclusions that make your claim ineligible for coverage." *Id.* at p. 1. Defendant points to policy provisions it *may* rely upon to attempt to avoid payment. Later in letter, Defendant claims, "[a]t this stage in our investigation we cannot yet determine whether coverage exists for this loss." *Id.* at p. 3.

14.    Mr. Evenson, the drafter of Defendant's "reservation" letter, conceded that he "did not have any evidence that it [the Vessel] would not be seaworthy." Evenson Depo, p. 95:9-10.

### Undisputed Facts Surrounding Defendant's Care Custody, and Control of the Vessel and Prior Payments

15.    It is undisputed that Defendant previously confirmed and afforded coverage on Mr. Stokes' loss, despite Defendant's current contention—now over two years after the loss—that it has not issued a coverage determination. Corporate Representative Depo, pp. 160:24-25, 187:18-25.

16.    It is undisputed that Defendant ordered the Vessel raised and towed from the site of the loss (Mr. Stokes' slip) to the marina of Defendant's choice, Indian River Marina, located in Delaware Seashore State Park, where, upon information and belief, the Vessel remains to this day.

17.    It is undisputed that significant raising and salvage costs, totaling over five-figures, were incurred due to Defendant's actions and upon Defendant's requests and agreement. *See* Klopman Report, **Ex. "E,"** p. 2 of 21 (regarding salvage efforts).

18.    It is undisputed that Defendant MARKEL has paid coverage amounts and expenses in excess of the $15,199.00 for raising, salvage, and tow costs, including but not limited to *at least* the following amounts:

- Indian River Marina Invoice No. 12756, dated October 12, 2018, totaling $1,320.50 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.
- Indian River Marina Invoice No. 12853, dated November 27, 2018, totaling $663.00 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.
- Indian River Marina Invoice No. 13495, dated June 6, 2019, totaling $1,600.00 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.
- Indian River Marina Invoice No. 13617, dated July 1, 2019, totaling $360.75 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.
- Indian River Marina Invoice No. 13722, dated July 19, 2019, totaling $575.25 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.
- Indian River Marina Invoice No. 14168, dated October 24, 2019, totaling $360.75 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.
- Johnny Shine Invoice No. 501, dated July 29, 2019, totaling $400.00 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.
- Further expenses incurred as a result of the Vessel loss, including additional invoices from Indian River Marina paid by Defendant. Upon information and belief, Plaintiff's Vessel remains located at Indian River Marina to this day.

Please see the above Invoices, attached as **Composite Exhibit "H."**

19.     It is undisputed that on October 31, 2018, Defendant did make an indemnity payment to Indian River Marina pertaining to the storage fees, costs, and service fees incurred by Mr. Stokes after the subject loss, and at the direction of Defendant. *See* email Correspondence Between Mr. Stokes and Mr. Evenson – Def.'s Claims Examiner, dated October 31, 2018, attached as **Exhibit "I."**

20.     It is further undisputed that Defendant has made a number of additional indemnity payments on behalf of Mr. Stokes, including but not limited to additional indemnity payments issued on invoices from Indian River Marina, continuing to this day. Please see Email Correspondence Between Ms. DeFelice of Indian River Marina and Mr. Varnell – Def.'s Claims Manager, dated January 28, 2019, attached as **Exhibit "J."** *See* Correspondence from Defendant's Counsel, Ms. Rivera, dated November 18, 2019, attached as **Exhibit "K".**

21.     It is undisputed that Defendant refused to allow Mr. Stokes to transport his Vessel out of the Indian River Marina to a location more suitable to Mr. Stokes, proving that Defendant assumed ownership, care, custody, and control over the damaged Vessel. *See* Correspondence from Defendant's counsel, dated July 1, 2019, p. 2, attached as **Exhibit "L."**

22.     It is undisputed that Defendant had previously confirmed coverage but now argues, over 33 months after the loss, that it still has not formulated any official "coverage position." Corporate Representative Depo, pp. 160:24-25, 187:18-25.

23.     It is undisputed that the subject policy provides for $750 in "Emergency Towing and Assist" coverage, and that Defendant's payments greatly exceeded this figure. Defendant issued payments totaling at least $5,280.25 for invoices and at least $15,199.00 for raising, salvage, and towing. Defendant thereby treated the subject loss as a covered loss.

24.     It is undisputed that Defendant issued payment for invoices related to the post-loss work and storage of the Vessel, which Defendant is only required to do in the event of a "covered loss." Subject Policy, p. 8, **Ex. "B."**

## ARGUMENT

Mr. Stokes suffered a textbook fortuitous, hurricane loss during the active policy period, and Defendant has no legitimate coverage defense. Plaintiff's burden is met, and Defendant cannot possibly meet its "shifted" burden of proving that all of Plaintiff's damage is excluded. Further, the subject policy does not contain "anti-concurrent cause" language, rendering any purported coverage defense meritless.

Plaintiff's loss was initially confirmed as covered, as evidenced by Defendant's own actions, including its coverage payments made prior to the issuance of any attempted "reservation of rights." Based upon the undisputed facts of record, summary judgment should be entered in favor of Plaintiff.

## I.     STANDARD OF REVIEW

### A.     Motion for Summary Judgment

The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). "The moving party bears 'the initial responsibility of informing the ... [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 317, 323

(1986)). Once the initial burden is met, the non-moving party must go beyond the pleadings and come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Despite presumptions in favor of the non-moving party, the Court should be mindful of the purpose of Rule 56, which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. *Celotex*, 477 U.S. at 322-323. Consequently, the non-moving party cannot merely rest upon bare assertions, conclusory allegations, surmises or conjectures. *Id*. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. *See Crowley Liner Servs., Inc. v. Transtainer Corp.*, No. 06-21995, 2007 WL 433352, at *3 (S.D. Fla. 2007).

Further, a district court deciding a summary judgment motion prior to a trial, such as here, "has somewhat greater discretion to consider what weight it will accord the evidence." *See Regan v. Starcraft Marine,* 418 F. App'x 310, 312 (5th Cir. 2011) (quoting *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991)). Therefore, the district court may properly draw inferences without resorting to a trial, so long as those inferences do not involve witness credibility or disputed material facts. *Starcraft Marine*, 418 F. App'x at 312 (*citing Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).

Interpretation of an unambiguous contract is a question of law which can be resolved on a summary judgment. *See Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376, 388 (D. Del. 2002); *Travelers Indemn. Co. of Illinois v. United Food & Commercial Workers Intern'l Union*, 770 A.2d 978, 985 (D.C. 2001); *see also John M. Floyd & Associates, Inc. v. First Florida Credit Union*, 443 F. App'x 396, 398 (11th Cir. 2011). However, "[w]here ambiguity exists, the court should construe the language of the contract in favor of coverage and against the insurance

company which has drafted it." *New Castle County Del. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 174 F.3d 338, 344 (3d Cir. 1999).

**II.      SUMMARY JUDGMENT SHOULD BE ENTERED IN PLAINTIFF'S FAVOR AS DEFENDANT BREACHED THE POLICY OF INSURANCE BY FAILING TO PAY FOR A FORTUITOUS LOSS THAT OCCURRED DURING THE POLICY PERIOD**

Regardless of the substantive law applied, it is undisputed that Plaintiff suffered a fortuitous loss during the policy period. *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 941-42 (Fla. 4th DCA 2018). Defendant must now meet its "shifted" burden to establish that all of Plaintiff's damages are excluded from coverage—a burden that cannot be met. *See id.* Any purported exclusions or excuses presented by Defendant, to attempt to avoid indemnity payment to Mr. Stokes, are unsupported by fact and insufficient to create any reasonable dispute of fact. Summary judgment should be entered in Plaintiff's favor as to Defendant's liability, confirming Defendant's breach of contract.

**A.      A Fortuitous Loss Occurred During the Active Policy Period**

It is undisputed that the subject policy for insurance is an "all-risk" insurance contract. *See* Subject Policy, **Ex. "B**.**"** When a dispute as to coverage arises, "the insured bears the initial burden of providing that the claim is covered by the insurance policy." *Am. Legacy Found. v. Nat'l Union Fire Ins. Co.*, 640 F. Supp. 2d 524, 535 (D. Del. 2009) (citing *New Castle County v. Hartford Accident and Indemn. Co.*, 933 F.2d 1162, 1181 (3d Cir. 1991); *Group Hospitalization, Inc. v. Foley*, 255 A.2d 499, 501 (D.C. 1969)). Numerous federal courts have held that plaintiff bears the simple burden of showing that the loss was "fortuitous" or occurred by chance. *Banco Nacional de Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982); *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 76 (3d Cir. 1989). Upon meeting this "simple" burden, the burden shifts back to the insurer to prove that the claims fall under an applicable policy exclusion.

*See, e.g.*, *State Farm Fire and Cas. Co. v. Hackendorn*, 605 A.2d 3, 7 (Del. Super. 1991); *Washington Sports and Entm't, Inc. v. Untied Costal Ins. Co.*, 7 F. Supp. 2d 1, 7 (D.D.C. 1998) (citing *Carey Canada, Inc. v. California Union Ins. Co.*, 748 F. Supp. 8, 15 (D.D.C. 1990)).

Here, there is no dispute that the loss occurred during the active policy period and was not due to any fault of Mr. Stokes. There can be no dispute that the subject loss occurred "fortuitously" (by chance) due to torrential and "extreme" rains associated with Hurricane Michael. Hurricane Michael was an extremely devastating and powerful storm that affected Delaware and resulted in "[f]lash flood warnings cover[ing] nearly the entire state of Delaware, as well as southern New Jersey and eastern Maryland."[5] Defendant's post-loss inspector, Mr. Klopman, confirmed that a severe "thunderstorm passed through the marina between 11:00PM and midnight. The total rainfall for this time period was 7.29 inches. ***This is an extreme amount of rainfall by any measure***." *See* Klopman Report, **Ex. "B,"** pp. 4-5 (emphasis added). Defendant testified under oath that it agreed with Mr. Klopman as to the "extreme" amount of rainfall. Corporate Representative Depo, p. 146:5-25, Defendant's claims adjuster confirmed that he "would not say that's a normal amount of rain." Evenson Depo, p. 51:3-13, 51:15 (Mr. Evenson: "That's an excessive amount of rain").

It cannot be reasonably disputed that "excessive amount[s] of rain," *id.*, and the weather from Hurricane Michael caused Plaintiff's Vessel to sink. *See Intermetal Mexicana, S.A. v. Ins. Co. of N Am.*, 866 F.2d 71, 77 (3d Cir. 1989) (The "burden of demonstrating fortuity is not a particularly onerous one."). "[C]ourts have held that heavy rainfall is a fortuitous event for purposes of recovery under an all-risk policy." *Archer Daniels Midland Co. v. Aon Risk Servs.*, No. CIV.97-2185, 2002 U.S. Dist. LEXIS 19314, 2002 WL 31185884, at *8 (D. Minn. Sept. 27,

---

[5] Brian Lada, *Live updates: Michael shifts over Virginia, Delmarva Peninsula with windswept rain; Flash flood emergencies issued*, Yahoo (Oct. 11, 2018), https://www.yahoo.com/news/live-updates-6-dead-over-230919161.html (last visited Jul. 28, 2021).

2002), *aff'd*, 356 F.3d 850 (8th Cir. 2004). The record is replete with evidence of extreme weather and heavy rainfall, including evidence proffered from both parties and evidence publicly available to all. As detailed in the Klopman Report:



The weather details in Fig. 3 below show details of the rainfall at the time of loss. A thunderstorm passed through the marina between 11:00PM and midnight. The total rainfall for this time period was 7.29 inches. This is an extreme amount of rainfall by any measure.



| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| https://www.weathersforyou.com/reports/index.php?forecast=pass&pass=archivenws&zipcode=19930&pands=19930&place=bethany+beach&state=de&icao=KOXB&country=us&month=10&day=11&year=2018&dosubmit=Go | | | | | | | | | |
| 10:59PM | Nearby Thunderstorms | 76°F | 74°F | 94% | 29.35 | E 21 MPH | 0.2 in. | 1.75mi. |
| 11:05PM | Heavy Thunderstorms | 76°F | 75°F | 97% | 29.35 | E 25 MPH | 0.55 in | 0.75mi. |
| 11:12PM | Heavy Thunderstorms | 76°F | 75°F | 97% | 29.32 | E 20 MPH | 0.76 in | 0.75mi. |
| 11:18PM | Heavy Thunderstorms | 76°F | 75°F | 97% | 29.32 | E 18 MPH | 0.83 in | 1.25mi. |
| 11:30PM | Heavy Thunderstorms | 76°F | 75°F | 97% | 29.29 | E 21 MPH | 0.95 in | 1.75mi. |
| 11:34PM | Thunderstorms | 76°F | 75°F | 97% | 29.29 | E 23 MPH | 0.96 in | 2mi. |
| 11:37PM | Rain | | 75°F | 100% | 29.29 | E 24 MPH | 0.96 in | 2mi. |
| 11:40PM | Nearby Thunderstorms | 76°F | 75°F | 97% | 29.29 | E 20 MPH | 0.98 in | 2.5mi. |
| 11:53PM | Nearby Thunderstorms | 75°F | 75°F | 100% | 29.26 | E 23 MPH | 1.09 in | 1.75mi. |
| 11:55PM | Rain | 76°F | 75°F | 97% | 29.26 | E 22 MPH | 0.01 in | 2mi. |

*Figure 3 Weather conditions at the time of loss.*

Klopman Report, **Ex. "E,"** pp. 4-5 (showing significant rainfall within a matter of minutes). Plaintiff also procured an expert meteorologist, Mr. Kevin R Brinson, PhD(c), the director of the Delaware Environmental Observing System ("DEOS") and a Delaware Associate State Climatologist with the Office of the Delaware State Climatologist, who confirmed the extensive and historic rainfall associated with Hurricane Michael, and provided local weather station rain collection datasets, confirming "extreme" rainfall in a short period of time. *See* Delaware Rain Datasets, **Ex. "G"** (rain measurements in 5-inch increments).

**B.     Defendant Breached the Contract by Refusing to Indemnify Plaintiff for his Fortuitous Hurricane Loss**

Where the language in an insurance contract is plain and unambiguous, a court must

interpret the policy in accordance with the plain meaning so as to give effect to the policy as written. *See State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So.3d 566, 569-70 (Fla. 2011). In construing insurance contracts, "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *See Neilson v. Mut. Life Ins. Co.*, 1998 U.S. Dist. LEXIS 11331, at *14 (D. Del. July 6, 1998); *see also Swire Pac. Holdings v. Zurich Ins. Co.*, 845 So.2d 161, 166 (Fla. 2003). By refusing to afford coverage for Plaintiff's loss, Defendant breached the subject policy, *to wit*, the following provisions:

---

**PHYSICAL   DAMAGE**

1.  Coverage
    a.   Watercraft and Equipment
        i.   Coverage
            We will cover sudden accidental direct physical loss or damage to the **insured   watercraft.**

---

iii.  What We Pay
    1)  In the event of a total loss or **constructive   total  loss** at our option we will:
        a)   pay the limit on the Declarations Page for 'Watercraft and Equipment', less the applicable deductible; or
        b)   replace the lost property with property of like kind and quality, less the applicable deductible.

---

Subject Policy, p. 5, **Ex. "B."** This Court must find Defendant in breach of contract.


## III.    DEFENDANT CANNOT MEET ITS BURDEN TO ESTABLISH THAT ALL OF PLAINTIFF'S DAMAGES ARE EXCLUDED

Because Plaintiff has met his burden of showing a fortuitous loss, the burden is now upon Defendant to prove that all of Plaintiff's claimed damages are excluded under the all-risks policy of insurance. *Banco Nacional de Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982); *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 76 (3d Cir. 1989); *Hudson v. Prudential and Cas. Ins. Co.*, 450 So.2d 565 (Fla. 2d DCA 1984); *Sebo v American Home*

*Assurance Company, Inc.*, 208 So. 3d 694, 700 (Fla. 2016); *Jones v. Federated Nat'l Ins. Co.*, 43 Fla. L. Weekly D164 (Fla. 4th DCA Jan. 17, 2018). Defendant cannot meet its burden.

### A.    Policy's Lack of "Anti-Concurrent Cause" Language Means that Defendant Cannot Rely on any Asserted Exclusions

Because the subject policy does not include any "anti-concurrent cause" (sometimes referred to as "efficient proximate cause") language or provisions, Defendant's reliance on any asserted "exclusions" is futile. *Empire Indem. Ins. Co. v. Winsett*, 325 F. App'x 849, 851 (11th Cir. 2009) (explaining efficient proximate cause doctrine as follows: "The efficient proximate cause is 'the one that sets others in motion.' If the efficient proximate cause is covered, then the claim for damages will be covered even if the other causes are not covered."); *Glaser v. Geovera Specialty Ins. Co.*, 420 F. Supp. 3d 1287, 1293 (M.D. Fla. 2019). The "concurrent causation" or "efficient proximate cause" doctrine, which holds that "when there are two . . . or more causes of loss, the policyholder's claim is covered as long as the immediate or proximate cause of loss is covered by the policy." *Colella v. State Farm Fire & Cas. Co.*, 407 F. App'x 616, 622 (3d Cir. 2011) (citing *Trexler Lumber Co. v. Allemannia Fire Ins. Co. of Pittsburgh*, 289 Pa. 13, 136 A. 856, 858 (Pa. 1927)); *Sebo v American Home Assurance Company, Inc.*, 208 So. 3d 694, 700 (Fla. 2016) (determined that hurricane rain and construction defects acted in concert to create the destruction of plaintiff's home, but because the policy did not contract around the concurrent-cause doctrine, "the plain language of the policy does not preclude recovery.")

It is undisputed that Plaintiff has identified extreme weather from Hurricane Michael as a fortuitous and immediate cause of loss. Defendant's adjuster confirmed that the vessel would not have sunk without the extreme rain. Evenson Depo, p. 118:9-15. *Arguendo*, even if Defendant contends that some novel or attenuated "excluded" cause of loss might apply, without any "anti-concurrent cause" language in the policy, Plaintiff's loss is still covered.

**B.    No Policy Exclusions Apply, Warranting Summary Judgment in Plaintiff's Favor and Preclusion of Defendant's Unsupported Affirmative Defenses**

Defendant's vague defenses are unsupported by the facts and should be summarily rejected. "The burden of establishing an affirmative defense lies with the defendant, not on the plaintiff." *Schainberg v. Urological Consultants of S. Fla., P.A.*, 2013 U.S. Dist. LEXIS 208128, at *4 (S.D. Fla. Mar. 18, 2013) (citations omitted). Defendant treated the loss as covered but is now attempting to backtrack and claim it never made a coverage decision.[6] Corporate Representative Depo, pp. 160:24-25, 187:18-25. Defendant has not specifically identified its coverage defenses in is affirmative defenses, but instead asserts only vague generalities. Summary judgment is thus warranted in Plaintiff's favor.

All twelve of Defendant's affirmative defenses, see Def.'s Answer, D.I. 61, pp. 13-14, are simply bare-bones, conclusory allegations that are either factually unsupported or directly contradicted by the undisputed facts of record. Defendant's First (failure to state a claim), Third (amounts uninsurable or against public policy), and Twelfth (Florida substantive law) affirmative defenses are simply legal conclusions. Defendant's Second and Fourth affirmative defenses are duplicative and assert that Plaintiff did not suffer a loss. As discussed in Section II(A), *supra*, it cannot be seriously disputed that Plaintiff suffered a fortuitous hurricane loss. *See Schainberg*, 2013 U.S. Dist. LEXIS 208128, at *4-*5.

Defendant's Fifth affirmative defense speaks to an unsupported claim that Plaintiff "failed to mitigate or avoid any of its alleged losses or damages." Aside from the improper and conclusory nature of this vague statement, an allegation that Plaintiff "fail[ed] to mitigate" is baseless, as

---

[6] Under Florida law, an insurer has ninety days to issue a coverage determination. *See* Fla. Stat. § 627.70131(5)(a) (2019); *see also* Fla. Stat. § 627.7142 (2019); DEL. CODE ANN. tit. 18, § 902-1.2.1.5, 6, 7 & 8. Defendant alleges it has yet to issue a coverage determination—over 1,000 days since the loss.

Defendant itself assumed the care, custody, and control of the Vessel immediately after the loss, as explained above. Defendant's Ninth affirmative defense, regarding "impaired subrogation rights," is not based in fact, as subrogation is simply not at issue in this lawsuit.[7]

Defendant's Sixth affirmative defense (failure to disclose facts to induce issuance of policy) is vague and completely baseless. There are no facts or evidence to substantiate any issues with procurement of the subject policy. Defendant's Seventh affirmative defense (failure to cooperate) is completely unsupported, as Defendant itself has retained Plaintiff's damaged Vessel and prevented Plaintiff from transporting same from Defendant's marina of choice. Defendant cannot point to any facts to substantiate the vague, false claim that Plaintiff "has failed to cooperate with answering Defendant." *See* Def.'s Answer, D.I. 61, p. 14.

Defendant's Eighth (not fully complied with all terms and conditions), Tenth (an attempt to invoke or reserve right to invoke "any and all" policy defenses), and Eleventh (barred by "terms, exclusions, conditions and limitations") affirmative defenses are all duplicative and attempt to assert unsubstantiated policy-based defenses to Plaintiff's causes of action. *See* Def.'s Answer, D.I. 61, p. 14. Defendant's attempts to ambiguously assert "any and all" defenses are not specific enough to place Plaintiff on notice or allow Plaintiff a response, and only further evidence Defendant's undeniable breach of contract.

Summary judgment should be granted in favor of Plaintiff on Defendant's twelve affirmative defenses, in light of the lack of any supporting evidence and/or the affirmative evidence refuting same as proffered by Plaintiff. *See Schainberg*, 2013 U.S. Dist. LEXIS 208128, at *4-*5.

---

[7] It is Plaintiff's understanding that Defendant contacted the Vessel's manufacturer and determined no subrogation action is viable as there is no plausible manufacturing or design defect. Regardless, any decision Defendant might make to initiate a subrogation action has no bearing on the coverage actually afforded by the policy.

## IV. DEFENDANT'S CARE, CUSTODY, AND CONTROL OVER PLAINTIFF'S VESSEL AND PAYMENTS FURTHER CONFIRM COVERAGE

### A. Defendant Still Retains Care, Custody, and Control of Plaintiff's Damaged Vessel

It is undisputed that Defendant made payments pursuant to a "covered loss" under the policy and took possession of Plaintiff's Vessel, thereby further confirming that coverage for the loss exists. Defendant's actions show that it did confirm coverage, despite Defendant now claiming that no coverage decision was ever issued. Corporate Representative Depo, pp. 160:24-25, 187:18-25. Clearly, Defendant has acted within the terms of the policy relating to a "covered loss."

> e. Protect and Recover
> In the event of a covered loss to the **insured watercraft**, you must protect the **insured watercraft** from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under 'Watercraft and Equipment' coverage, but not to exceed the limit for 'Watercraft and Equipment' on the Declarations Page. We will not cover any further loss incurred due to your failure to protect the **insured watercraft**.

*See* Subject Policy, p. 8, **Ex. "B**." Defendant testified under oath that payment was made in accordance with a "covered loss," and there is no policy provision that would allow a covered loss payment "without prejudice." Corporate Representative Depo, pp. 193:24-194:24, 101:22-105:13. Under the plain and unambiguous language of the policy, the need to "protect" the damaged Vessel only arises "in the event of a covered loss." *See* Subject Policy, p. 8, **Ex. "B."**

Immediately after the subject loss, on or about October 12, 2018, Defendant took custody of Plaintiff's Vessel. Defendant ordered the raising and salvage of the sunken Vessel, and ordered transportation of the damaged Vessel to a marina of Defendant's choosing. Defendant authorized work on the Vessel, including but not limited to, the pickling of the engines, the cleaning of the bottom of the Vessel, the shrink-wrapping and winterization of the Vessel, etc.

The subject policy provides for $750 in "Emergency Towing and Assist" coverage, and Defendant's payments greatly exceeded this figure. It is undisputed that Defendant paid multiple

invoices totaling *at least* $5,280.25 in indemnity payments and *at least* $15,199.00 in raising, salvage, and tow costs, well in excess of the $750 Emergency Towing and Assist coverage. *See* Invoices, **Composite Ex. "H"**; Subject Policy, **Ex. "B,"** at "Watercraft Declarations Page." It is thus undisputed that Defendant by way of its own actions treated this loss as covered. Defendant's actions do not sound in a denial of coverage, and when asked at deposition, Defendant could not identify a viable excuse or policy provision supporting same. Corporate Representative Depo, pp. 193:24-194:24, 101:22-105:13.

Defendant's continuous and systematic objections to Mr. Stokes transporting his damaged Vessel out of the Indian River Marina[8] to a location more suitable to Mr. Stokes, show that Defendant assumed ownership, care, custody, and control over the damaged Vessel. Defendant treated the loss as "salvage ownership" of the Vessel, according to the terms of the policy. Defendant's own actions[9] thus confirm coverage under the policy.

### B. Defendant's Payments Pursuant to Policy are Admissions of Coverage and Function to Confess Judgment Against Defendant

Defendant cannot dispute that it paid *at least* $5,280.25 in indemnity payments on invoices and *at least* $15,199.00 in raising, salvage, and tow costs, well in excess of the $750 Emergency Towing and Assist coverage. Defendant paid invoices before "reserving rights," including Indian River Marina Invoice number 12756, paying $1,320.50 for storage and for repair work associated with Mr. Stokes' Vessel. It is undisputed that Defendant ordered, incurred, and paid for various service and salvage invoices; costs associated with the removal and transport the Vessel; costs

---

[8] The Indian River Marina is not a marina designated for long-term storage. Still, Defendant has situated the damaged Vessel at the Indian River Marina for over two full years.

[9] Notably, Defendant took care, custody, and control of the damaged Vessel well before Defendant's "reservation of rights" correspondence.

associated with prolonged storage costs; etc. The act of remitting payment on this claim (in line

with Defendant's initial determination that there was coverage) plainly admits coverage pursuant

to the subject policy and acts as a confession of judgment.

> If a premium is shown on the Declarations Page for 'Watercraft and Equipment', we will also cover the reasonable expenses incurred to raise, remove or dispose of the wreck of the **insured watercraft** if you are legally obligated to do so. This is not additional insurance, but is included in the limit of 'Watercraft Liability' coverage.
>
> Wreck means the **insured watercraft** has been damaged to such an extent as to render the **insured watercraft** not navigable and we determine the **insured watercraft** to be a total or **constructive total loss**.

*See* Subject Policy, p. 9, **Ex. "B"**; *see also Martinez v. Hartford Cas. Ins. Co.*, 429 F. Supp. 2d 52,

60-61 (D.D.C. 2006) (wherein the defendant conceded liability via payment of damages and lost

wages); *Arvat Corporation v. Scottsdale Insurance Company*, No. 14-22774-CIV, 2015 WL

6504587, at *2 (S.D. Fla. October 28, 2015) (admission of coverage occurs when an insurer pays

for necessary repairs of covered damages); *Plante v. USF & G Specialty Insurance Co.*, No. 03-

23157-CIV, 2004 WL 1429932, at *2 n.1 (S.D. Fla. 2004) (common law doctrines of waiver and

estoppel bar an insurance company from raising coverage defenses when it already paid money on

a plaintiff's claim); *Waters Edge Living, LLC v. RSUI Indem. Co.*, 2008 WL 1816418, (N.D. Fla.

Apr. 22, 2008).

Once an insurer finds coverage of any type, coverage exists, and any further dispute is to

the amount of coverage, not whether coverage actually exists. *E.g. State Farm Fire & Cas. Co. v.*

*Licea*, 685 So. 2d 1285, 1287-88 (Fla. 1996) (Stating when coverage exists, the insurance company

is liable and the amount owed is determined at appraisal); *see also State Farm Florida Ins. Co. v.*

*Hernandez*, 172 So. 3d 473, 476 (Fla. 3d DCA 2015) (same). Additionally, "post-suit payment(s)

of insurance benefits are presumed as a confession of judgment." *Tristar Lodging, Inc. v. Arch*

*Speciality Ins. Co.*, 434 F. Supp. 2d 1286, 1302 (M.D. Fla. 2006), *aff'd sub nom*; *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 215 F. App'x 879 (11th Cir. 2007).

It is well settled that when an insurance company makes any payment on a claim, it admits coverage. *Plante v. USF&G Specialty Ins. Co.,* 2004 WL 741382 (S.D. Fla. 2004) at *3 (finding that a payment signifies admission of coverage and ripens a bad-faith claim); *Tropical Paradise Resorts, LLC v. Clarendon American Ins. Co.*, 2008 WL 3889577, at *2 (S.D. Fla. Aug. 20, 2008) (same); *see also Phillip Marraccini Jr. et al. v. Clarendon National Ins. Co.*, 2003 WL 22668842, at *3 (S.D. Fla. 2003) (same); *Brookins v. Goodson*, 640 So. 2d 110, 112-13 (Fla. 4th DCA 1994) (same), *overruled on other grounds by State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55 (Fla. 1995). If the Court determines that the amount of damages is genuinely in dispute, then the Court should grant summary judgment as to coverage, and the only issue ripe for trial is the scope and amount of damages. *See Baggs v. City of Pasadena*, 958 F. Supp. 586, 588 (M.D. Fla. 1997) (courts may grant summary judgment on separate counts and claims).

Defendant's payments unquestionably demonstrate coverage, as Defendant acted under the requirements of the policy applicable only to an "insured vessel," and paid for the wreck removal, storage, and other expenses occurring as a result. Defendant's actions are inconsistent with its after-the-fact attempts to avoid or "rope back in" coverage. Importantly, and by way of one poignant example, Defendant undoubtedly made payment under the policy prior to any reservation of rights. In doing so, Defendant admitted that salvage of the Vessel was a necessary expense required under the policy. *See Arvat Corporation*, 2015 WL 6504587, at *2 (finding that a defendant that pays for expenses such as ordinary and necessary expenses admits coverage).

## CONCLUSION

The undisputed facts are straightforward. Defendant entered into a contract to insure Plaintiff's vessel. The policy was active at the time the Vessel suffered a fortuitous loss during extreme rains from Hurricane Michael. The loss fell within the terms of the all-risk coverage, and Defendant acted accordingly, by immediately taking charge of Mr. Stokes' damaged Vessel. Only later did Defendant try to reverse course on coverage—albeit without ever articulating an actual coverage position. Defendant also unilaterally arranged for the transport and storage of Mr. Stokes' damaged Vessel, without the input of Mr. Stokes. Defendant then issued various payments on the loss, including at least $15,199.00 for raising, salvage, and tow costs, and at least $5,280.25 on various invoices. The policy's terms and Defendant's own actions lead to the same result: Mr. Stokes is entitled to summary judgment on his coverage claim.

Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

Date: July 30, 2021

By: ___/s/ Michael B. McCauley (ID 2416)___
　　　　1223 Foulk Road
　　　　Wilmington, DE 19803
　　　　(302) 594-0895
　　　　mccauley@pbh.com
　　　　Attorneys for Plaintiff

Of counsel:
David Avellar Neblett
James M. Mahaffey III
PERRY & NEBLETT, P.A.
2550 South Bayshore Drive Suite 211
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile: (305) 967-8182
david@perryneblett.com
jmahaffey@perryneblett.com