# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES STOKES, | : | |
| | : | C.A. No.    1:19-cv-02014 LPS |
| PLAINTIFF, | : | |
| | : | |
| v. | : | TRIAL BY JURY OF TWELVE |
| | : | DEMANDED |
| MARKEL AMERICAN INSURANCE | : | |
| COMPANY, a foreign corporation, | : | |
| | : | |
| DEFENDANT. | : | |

**DEFENDANT MARKEL AMERICAN INSURANCE COMPANY'S
ANSWERING BRIEF
<u>IN OPPOSITION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

**WHITE AND WILLIAMS LLP**

<u>/s/ Timothy S. Martin</u>
**TIMOTHY S. MARTIN (#4578)**
**DARYLL HAWTHORNE-SEARIGHT (#6520)**
Courthouse Square
600 N. King Street, Suite 800
Wilmington, DE 19801
(302) 467- 4520
Martint@whiteandwilliams.com
Counsel for Defendant,
*Markel American Insurance Company*

Dated: September 13, 2021

## <u>TABLE OF CONTENTS</u>

I.      NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.     SUMMARY OF ARGUMENTS...................................................................................2

III.    STATEMENT OF FACTS, .......................................................................................3

IV.     ARGUMENT ...........................................................................................................4

        A.      STANDARD OF REVIEW APPLICABLE TO MOTIONS FOR
                SUMMARY JUDGMENT ..............................................................................4

        B.      STANDARD OF REVIEW APPLICABLE TO INTERPRETATION OF
                THE INSURANCE POLICY .........................................................................5

        C.      EFFICIENT PROXIMATE CAUSE IS THE STANDARD FOR
                DETERMINING CAUSATION IN ADMIRALTY ACTIONS ............................5

        D.      PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT
                BECAUSE MAIC DID NOT BREACH THE POLICY .......................................8

                1.      Plaintiff has Failed to Meet His Burden of Showing that a
                        Fortuitous Loss Occurred During the Active Policy Period ......................8

                2.      Design Defects, Not Rainfall were the Efficient Proximate Cause
                        of the Loss ...............................................................................10

        E.      MAIC HAS ALSO MET ITS BURDEN OF ESTABLISHING THAT A
                POLICY EXCLUSION PRECLUDES COVERAGE FOR THE
                PLAINTIFF'S LOSS ..................................................................................13

        F.      MAIC'S AFFIRMATIVE DEFENSES ARE NOT PRECLUDED. ....................13

        G.      NEITHER MAIC'S WORDS NOR ACTIONS HAVE RENDERED
                PLAINTIFF'S LOSS A COVERED LOSS......................................................15

                1.      MAIC has Never Stated or Testified that Plaintiff's Loss is a
                        Covered Loss .............................................................................15

                2.      MAIC Did Not Treat the Loss as "Salvage Ownership" ..........................17

                3.      MAIC's Payments are Neither an Admission of Coverage, Nor Do
                        They Function to Confess Judgment...............................................17

V.      CONCLUSION.......................................................................................................20

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Archer Daniels Midland Co. v. Aon Risk Servs.*,
  2002 U.S. Dist. LEXIS 19314 (D. Minn. Sep. 27, 2002) ........................................................10

*Arvat Corp. v. Scottsdale Ins. Co.*,
  2015 U.S. Dist. LEXIS 146092 (S.D. Fla. Oct. 28, 2015)........................................................18

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  2011 U.S. Dist. LEXIS 149636 (D. Del. Dec. 30, 2011)..........................................................14

*Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*,
  135 F.3d 750 (11th Cir. 1998) ...............................................................................................1

*Brookins v. Goodson*,
  640 So. 2d 110 (Fla. Dist. Ct. App. 1994) ............................................................................19

*Cashman Equip. Corp.*,
  2007 U.S. Dist. LEXIS 21921, at *6 (E.D. La. Mar. 26, 2007)................................................5

*Chartis Prop. Cas. Co. v. Inganamourt*,
  2019 U.S. Dist. LEXIS 45806 (D.N.J. Mar. 20, 2019)................................................9, 10, 11

*Class Action of S. Fla. v. Nat'l Union Fire Ins. Co.*,
  2013 U.S. Dist. LEXIS 130696 (S.D. Fla. May 30, 2013) .....................................................11

*Colella v. State Farm Fire & Cas. Co.*,
  407 F. App'x 616 (3d Cir. 2011) ............................................................................................7

*Commerce Pointe v. Glencoe Ins.*,
  2006 U.S. Dist Dist. LEXIS 111085 (S.D. Fla. July 14, 2006) ........................................19, 20

*Cont'l Ins. Co. v. Lone Eagle Shipping (Liber.)*,
  952 F. Supp. 1046 (S.D.N.Y. 1997)................................................................................5, 6, 10

*Davis v. Tillman*,
  370 So. 2d 1323 (La. Ct. App. 1979)....................................................................................10

*Empire Indem. Ins. Co. v. Winsett*,
  325 F. App'x 849 (11th Cir. 2009)...........................................................................................7

*Exxon Co., U.S.A., et al. v. SOFEC, Inc., et al.*,
  517 U.S. 830 (1996)................................................................................................................7

ii

*F.W.F. Inc. v. Detroit Diesel Corp.*,
  494 F. Supp. 2d 1342 (S.D. Fla. 2007) .................................................................5

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990).............................................................................................1

*Gibbs v. Carnival Cruise Lines*,
  314 F.3d 125 (3d Cir. 2002)................................................................................15

*Glaser v. Geovera Specialty Ins. Co.*,
  420 F. Supp. 3d 1287 (M.D. Fla. 2019) ...............................................................7

*Issa v. Del. State Univ.*,
  2019 U.S. Dist. LEXIS 68845 (D. Del. Apr. 23, 2019) .........................................14

*Kuehne & Nagel v. Geosource, Inc.*,
  874 F.2d 283 (5th Cir. 1989) ...............................................................................5

*Lanasa Fruit Steamship & Importing, Co. v. Univ. Ins. Co.*,
  58 S. Ct. 371 (1938)...................................................................................5, 6, 7

*Leonard v. Stemtech Health Scis., Inc.*,
  2011 U.S. Dist. LEXIS 139221 (D. Del. Dec. 5, 2011)..........................................4

*Marine Overseas Services, Inc. v. Crossocean Shipping, Co. Inc.*,
  791 F.2d 1227 (5th Cir.1986) ...............................................................................5

*Martinez v. Hartford Cas. Ins. Co.*,
  429 F. Supp. 2d 52 (D.D.C. 2006) .................................................................17, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 ........................................................................................................4

*N.H. Ins. Co. v. Krilich*,
  387 F. App'x 940 (11th Cir. 2010) ........................................................................6

*Plante v. USF&G Specialty Ins. Co.*,
  17 Fla. L. Weekly Fed. D 686 (U.S. S.D. Fla. 2004).......................................18, 19

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000)..............................................................................................4

*Schainberg v. Urological Consultants of S. Fla., P.A.*,
  2013 U.S. Dist. LEXIS 208128 (S.D. Fla. Mar. 18, 2013)....................................14

*Sebo v. Am. Home Assurance Co.*,
  208 So. 3d 694 (Fla. 2016)................................................................................7, 8

27743043v.1

*Southwestern Engineering Co. V. Cajun Elec. Power Co-op., Inc.*,
    915 F.2d 972 (5th Cir. 1990) ................................................................5

*St. Paul Fire & Marine Ins. Co. v. Lago Canyon*,
    2008 U.S. Dist. LEXIS 142202 (S.D. Fla. Mar. 6, 2008)..............................5, 6, 7, 8

*Standard Oil Co. v. U.S.*,
    340 U.S. 54 (1950)................................................................6, 7

*State Farm Fire & Cas. Co. v. Licea*,
    685 So. 2d 1285 (Fla. 1996)................................................................19

*State Farm Fla. Ins. Co. v. Hernandez*,
    172 So. 3d 473 (Fla. Dist. Ct. App. 2015) ..............................................19

*Stokes v. Markel Am. Ins. Co.*,
    2019 U.S. Dist. LEXIS 108685 (S.D. Fla. June 28, 2019) ....................................1

*Tillery v. Hull & Co.*,
    876 F.2d 1517 (11th Cir. 1989) ................................................................6, 7

*Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*,
    434 F. Supp. 2d 1286 (M.D. Fla. 2006) ..........................................19

*Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.*,
    2008 U.S. Dist. LEXIS 66496 (S.D. Fla. Aug. 20, 2008)..............................19

*U.S. Fire Ins. Co. v. Cavanaugh*,
    732 F.2d 832 (11th Cir. 1984) ................................................................6

*United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc.*,
    910 F.2d 775 (11th Cir. 1990) ................................................................5

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964)................................................................1

*Walker v. American Ice. Co.*,
    254 F.Supp. 736 (D.D.C. 1966) ................................................................15

*Waters Edge Living, Ltd. Liab. Co. v. RSUI Indem. Co.*,
    2008 U.S. Dist. LEXIS 33049 (N.D. Fla. Apr. 22, 2008)..............................19

## STATUTES

28 U.S.C. §1404(a) ................................................................1

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) ................................................................4

Fed. R. Civ. P. 81(c)(1)................................................................................................4

Fed. R. Civ. P. 8........................................................................................................14

Thomas J. Schoenbaum, Admiralty & Maritime Law, § 19-10.......................................6

## I.     NATURE AND STAGE OF THE PROCEEDINGS

This is an insurance coverage action, including both breach of contract and tort claims against Defendant, Markel American Insurance Company ("MAIC"). This lawsuit was originally filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and MAIC removed the case to the United States District Court for the Southern District of Florida. After the case was removed to federal court, MAIC filed a Motion to Dismiss for Improper Venue or in the alternative Motion to Transfer the Venue Based Upon *Forum Non Conveniens*. MAIC's Motion to Transfer the Venue was granted on June 28, 2019.[1] Judge Altonaga ordered that the case be transferred to this court pursuant to 28 U.S.C. §1404(a), and that Florida's choice-of-law rules would apply to determine the law applicable to adjudicating Plaintiff's claims.[2] Consistent with this decision, MAIC filed a Motion for Choice of Law, which is currently pending.[3]

This litigation is now at the dispositive motions stage of the proceedings, and MAIC now respectfully requests that this honorable Court deny Plaintiff's Motion for Summary Judgment. The Court has set oral argument for all pending motions to take place on November 5, 2021.[4]

---

[1] *Stokes v. Markel Am. Ins. Co.*, 2019 U.S. Dist. LEXIS 108685 (S.D. Fla. June 28, 2019)(granting MAIC's Motion to Dismiss for Improper Venue)("Order").

[2] *Id.* at 12-13 ("'Federal courts sitting in diversity apply the forum state's choice-of-law rules.' *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co*., 135 F.3d 750, 752 (11th Cir. 1998) (footnote call number omitted). When a case is transferred from one forum to another, the transferor court's choice-of-law rules apply to the transferred case. *See id*. Accordingly, Florida's choice-of-law rules will apply to the action regardless of the final forum.'"); *see Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)("We conclude, therefore, that in cases such as the present, where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404 (a) generally should be, with respect to state law, but a change of courtrooms."); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990)("In *Van Dusen v. Barrack*, 376 U.S. 612 (1964), we held that, following a transfer under § 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court. We now decide that, when a plaintiff moves for the transfer, the same rule applies.").

[3] *See generally* MAIC's Opening Brief in Support of its Motion for Choice of Law [D.I. 87].

[4] D.I. 110

1

## II.    <u>SUMMARY OF ARGUMENTS</u>

A.    IT IS WELL ESTABLISHED LAW THAT THE EFFICIENT PROXIMATE CAUSE DOCTRINE APPLIES TO MARITIME POLICIES, AND THEREFORE MAIC WAS NOT REQUIRED TO DRAFT "ANTI-CONCURRENT CAUSE" LANGUAGE INTO THE POLICY.

B.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE MAIC DID NOT BREACH THE POLICY.

C.    PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF SHOWING THAT A FORTUITOUS LOSS OCCURRED DURING THE ACTIVE POLICY PERIOD, BECAUSE DESIGN DEFECTS, NOT RAINFALL WERE THE EFFICIENT PROXIMATE CAUSE OF THE LOSS.

D.    MAIC HAS ALSO MET ITS BURDEN OF ESTABLISHING THAT A POLICY EXCLUSION PRECLUDES COVERAGE FOR PLAINTIFF'S LOSS.

E.    MAIC'S AFFIRMATIVE DEFENSES ARE NOT PRECLUDED.

F.    NEITHER MAIC'S WORDS NOR ACTIONS HAVE RENDERED PLAINTIFF'S LOSS A COVERED LOSS.

2

## III.    <u>STATEMENT OF FACTS</u>[5,6]

Plaintiff's 39-foot Midnight Express boat ("the Vessel") was insured by MAIC under Policy No. MHP00000361698 ("the Policy").[7] On October 11, 2018, the Vessel sank during a rain event while moored at her berth in Ocean View, Delaware.[8] Plaintiff filed a claim under the MAIC policy, which was assigned Claim No. 18C4603.[9] Following initial survey of the vessel by surveyor Jonathan Klopman, MAIC issued a reservation of rights letter on November 12, 2018, stating, *inter alia*, that 1) the Vessel may be unseaworthy, and 2) any claim coverage may be subject to policy exclusions.[10] On December 28, 2018, before additional inspection by MAIC could be completed, Plaintiff proceeded to file the instant matter in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.[11] On January 30, 2019, MAIC removed the matter to the United States District Court for the Southern District of Florida.[12] On June 28, 2019, the matter was transferred to this Court.[13]

---

[5] In addition to the below, please see MAIC's separate responses to Plaintiff's Statement of Facts.
[6] All exhibits referenced are those submitted in support of MAIC's MSJ, unless expressly stated.
[7] Ex. 1 - Complaint, ¶¶ 2 and 6; *see* Ex. 2- MAIC Prod., at MARKEL 000307 (Declarations Page).
[8] Ex. 1- Complaint at ¶ 7; *see* Ex. 3 - MAIC Prod., at MARKEL 000087-107 (Klopman Damage Survey).
[9] Ex. 1- Complaint at ¶ 9.
[10] Ex. 4 - MAIC Prod., at MARKEL 000073-76 (Reservation of Rights letter); Ex. 3- MAIC Prod., at MARKEL 000087-107 (Klopman Damage Survey).
[11] Ex. 1 - Complaint.
[12] Ex. 5 - MAIC Prod., at MARKEL 000113-119 (Defendant's Notice of Removal).
[13] *See Stokes*, 2019 U.S. Dist. LEXIS 108685.

## IV.    ARGUMENT[14]

Plaintiff argues that he suffered a "textbook fortuitous, hurricane loss during the active policy period, and [MAIC] has no legitimate coverage defense."[15] MAIC disagrees. Plaintiff has failed to meet his burdens of showing that the subject loss was accidental or fortuitous and that MAIC breached the Policy.[16]

### A.    STANDARD OF REVIEW APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT[17]

Summary judgment is granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[18] The moving party bears the initial burden of showing "an absence of evidence to support the non-moving party's case."[19] In reviewing the record, the court must "'draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'"[20] A plaintiff cannot succeed on summary judgment where the non-moving party "'come[s] forward with specific facts showing that there is a genuine issue for trial.'"[21]

---

[14] MAIC's Choice of Law motion analyzed Plaintiff's claims pursuant to Florida's choice-of-law rules and requested that this court enforce the choice of law provision in the Policy by applying federal admiralty law and District of Columbia law. The analysis in this brief was completed under the assumption that federal admiralty and District of Columbia law govern this matter. MAIC reserves the right to move for further briefing should the Court decide that different law governs.

[15] Pl.'s Opening Brief, at pg. 7.

[16] MAIC's Opening Brief [D.I. 105 and 106].

[17] Fed. R. Civ. P. 81(c)(1).

[18] Fed. R. Civ. P. 56(c).

[19] *Id.*, at 325.

[20] *Leonard v. Stemtech Health Scis., Inc.*, 2011 U.S. Dist. LEXIS 139221, at *14 (D. Del. Dec. 5, 2011)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[21] *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986)).

4

### B.   STANDARD OF REVIEW APPLICABLE TO INTERPRETATION OF THE INSURANCE POLICY

It is well entrenched that policies of marine insurance are governed by admiralty law. Further, the Policy here specifically incorporates a choice-of-law provision in the Policy that applies the "principles and precedents of federal admiralty law of the United States of America…"[22] Federal admiralty law "has adopted the general rules of contract interpretation and construction."[23] In the absence of evidence to the contrary, words in a maritime contract are given their "plain, ordinary and everyday meaning as understood by a reasonable person."[24] "'Each provision of a contract must be read in light of others so as to give the meaning reflected by the contract as a whole.'"[25]

### C.   EFFICIENT PROXIMATE CAUSE IS THE STANDARD FOR DETERMINING CAUSATION IN ADMIRALTY ACTIONS

It is well-established law that "the theory of proximate cause is the appropriate standard to be applied to determine whether a loss is covered under a marine insurance policy and this application is consistent with general admiralty law."[26] In fact, proximate cause is applied more strictly in matters involving maritime insurance coverage.[27] Federal maritime law does not utilize a "but for" causation standard,[28] but instead "'the proximate cause is the efficient cause and not a

---

[22] *Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 290 (5th Cir. 1989); Ex. 6 - Certified Copy of MAIC Policy ("Policy"), at page 3 (emphasis added).

[23] *F.W.F. Inc. v. Detroit Diesel Corp.,* 494 F. Supp. 2d 1342, 1356 (S.D. Fla. 2007); *see, e.g., United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc.*, 910 F.2d 775, 779 (11th Cir. 1990); *Marine Overseas Services, Inc. v. Crossocean Shipping, Co. Inc.*, 791 F.2d 1227 (5th Cir.1986).

[24] *F.W.F. Inc.,* 494 F. 6upp. 2d at 1356.

[25] *Cashman Equip. Corp.,* 2007 U.S. Dist. LEXIS 21921, at *6 (E.D. La. Mar. 26, 2007)(citing *Southwestern Engineering Co. V. Cajun Elec. Power Co-op., Inc*., 915 F.2d 972 (5th Cir. 1990)).

[26] *St. Paul Fire & Marine Ins. Co. v. Lago Canyon*, 2008 U.S. Dist. LEXIS 142202, at *17-19 (S.D. Fla. Mar. 6, 2008).

[27] *Cont'l Ins. Co. v. Lone Eagle Shipping (Liber.),* 952 F. Supp. 1046, 1061-62 (S.D.N.Y. 1997)(citation omitted); *Lanasa Fruit Steamship & Importing, Co. v. Univ. Ins. Co*., 58 S. Ct. 371 (1938).

[28] *Id.*

merely incidental cause which may be nearer in time to the result.'"[29] In other words, it is the "predominant" or "determining" cause of the loss, and not simply the cause nearest to the time of loss.[30] If there could be more than one cause, the court must determine which cause "rendered the loss inevitable," in order to distinguish between the proximate cause and the remote cause.[31] This standard applies regardless of whether the Policy includes "Anti-Concurrent Cause" language.

In *Lago Canyon*, a vessel insured under a maritime policy suffered damage when it sank while moored.[32] The plaintiff-insurer filed a declaratory action against the defendant-insured seeking a declaration that 1) the loss was not covered by the policy, because it was not fortuitous and caused by an excluded condition, and 2) any damage to the Vessel was caused by a breach of the implied warranty of seaworthiness under general maritime law.[33] Initially, the Court analyzed choice-of-law, and held "if there is an established federal admiralty rule and there is no conflict with state law, then the federal admiralty rule will be applied."[34] Next, the Court determined the legal standard for causation in maritime insurance cases.[35] The defendant-insured argued, without

---

[29] *N.H. Ins. Co. v. Krilich*, 387 F. App'x 940, 942 (11th Cir. 2010)(citing *Lanasa*, 58 S.Ct. 371, 374); *see also Standard Oil Co. v. U.S.*, 340 U.S. 54, 58 (1950) (stating that proximate cause is the "cause which is most nearly and essentially connected with the loss as its efficient cause"); *Tillery v. Hull & Co.*, 876 F.2d 1517, 1519 (11th Cir. 1989) ("[C]ourts seeking to determine the cause of a vessel's damage assign greater weight to the ultimate, efficient cause than to the temporally remote causes."); *U.S. Fire Ins. Co. v. Cavanaugh*, 732 F.2d 832, 835 (11th Cir. 1984).

[30] *Lone Eagle Shipping*, 952 F. Supp. at 1061-62 (citations omitted).

[31] *Id.* (citing 2 Thomas J. Schoenbaum, Admiralty & Maritime Law, § 19-10, at 434 (2d ed. 1994)(finding that "heavy weather" was not the efficient proximate cause of damage to a vessel, but rather the corroded condition of the frames allowed a breach of the integrity of the vessel before the heavy weather affected the vessel); *Krilich*, 387 F. App'x 941-42 (affirming that insured's failure to maintain the watertight hatches was the efficient proximate cause of loss, instead of a fracture in the keel, because "all of the experts agreed that the vessel 'would not have sunk as quickly or in the manner that it did if the sea chests had been secured watertight.'").

[32] *Lago Canyon*, 2008 U.S. Dist. LEXIS 142202, at *5.

[33] *Id.*, at *3.

[34] *Id.*, at *11.

[35] *Id.*, at *13-23.

6

legal analysis or support, that efficient proximate cause did not apply and "the concurrent cause doctrine requires a finding of coverage even if one or more of the concurrent causes is an excluded risk."[36] The plaintiff-insurer provided extensive support for its position that "the doctrine of efficient proximate cause is a longstanding and uniformly accepted general maritime law that should be applied to [the] action."[37] The Court agreed, and noted that the concurrent cause doctrine is applied in "non-marine settings . . . 'when multiple causes are independent. The efficient proximate cause doctrine applies [in non-marine settings] when the perils are dependent.'"[38]

Plaintiff seeks to confuse and conflate in his discussion of the efficient proximate cause doctrine, and appears to argue that the "concurrent cause doctrine" should apply. However, all of the cases Plaintiff cites to are distinguishable, because none of them involve the analysis of maritime insurance policies or admiralty law.[39]

Plaintiff also cites to *Sebo v. Am. Home Assurance Co*., in which the Southern District of Florida analyzed an all-risk policy on a home that flooded during a rainstorm.[40] In *Sebo*, because

---

[36] *Id*., at \*15-16.
[37] *Id*., at \*16, 20 ("…the Court finds that even if Florida law governed, state law also counsels the application of the proximate efficient cause doctrine."); *see Tillery*, 876 F.2d at 1519 ("Courts analyzing problems of marine insurance causation have, as a rule, applied strictly the doctrine of *causa proxima non remota spectatur* … That is to say, courts seeking to determine the cause of a vessel's damage assign greater weight to the ultimate, efficient causes than to the temporally remote causes."); *Standard Oil*, 340 U.S. at 57-58 (applying efficient proximate cause to determine whether a marine insurance contract provided coverage for a loss resulting from a collision between a steam tanker and a minesweeper); *Lanasa*, 302 U.S. at 562 (strictly applying efficient proximate cause and defining it as "the efficient cause and not merely incidental cause which may be nearer in time to the result."); *see also Exxon Co., U.S.A., et al. v. SOFEC, Inc., et al.,* 517 U.S. 830 (1996)(holding that the requirement of legal or proximate causation applies in admiralty).
[38] *Lago Canyon*, 2008 U.S. Dist. LEXIS 142202, at \*17, 21-22 (internal citations omitted).
[39] *See* Pl.'s Opening Brief, at 13; *Colella v. State Farm Fire & Cas. Co*., 407 F. App'x 616 (3d Cir. 2011)(analyzing a homeowner's insurance policy); *Empire Indem. Ins. Co. v. Winsett*, 325 F. App'x 849 (11th Cir. 2009)(same); *Glaser v. Geovera Specialty Ins. Co*., 420 F. Supp. 3d 1287 (M.D. Fla. 2019)(analyzing coverage and causation with regard to Homeowner's Policy); *Sebo v. Am. Home Assurance Co*., 208 So. 3d 694 (Fla. 2016)(same).
[40] *Sebo*, 208 So. 3d 694.

it was not a maritime action, the Court had the task of determining whether the Efficient Proximate Cause or the Concurrent Cause Doctrines applied.[41]  Plaintiff's reliance on *Sebo* is misplaced.

Here, the Policy is maritime in nature, and the case law is clear that the Efficient Proximate Cause doctrine indisputably applies to maritime insurance policies. Therefore, MAIC did not need to "contract around the concurrent-cause doctrine" as Plaintiff contends. Further, like the defendant-insured in *Lago Canyon*, Plaintiff has provided "no substantive analysis of the purported different causes, nor any legal analysis or binding precedent, that would establish why the concurrent cause doctrine should apply in place of the proximate cause theory" in a maritime insurance policy matter.[42] Thus, the efficient proximate cause determines whether the loss was fortuitous and whether the cause of loss is excluded by the Policy terms.[43]

### D.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE MAIC DID NOT BREACH THE POLICY

#### 1.    Plaintiff has Failed to Meet His Burden of Showing that a Fortuitous Loss Occurred During the Active Policy Period

Plaintiff now concedes that the Policy is plain and unambiguous.[44] He points to the following language in the Policy to support his argument that MAIC breached a contractual duty to indemnify him:

> We will cover sudden accidental direct physical loss or damage to the **insured watercraft**. . .In the event of a total loss or constructive total loss at our option we will: a) pay the limit on the Declarations Page for 'Watercraft and Equipment,' less the applicable deductible; or b) replace the lost property with property of like kind and quality, less the applicable deductible.[45]

---

[41] *Id*.

[42] *Lago Canyon*, 2008 U.S. Dist. LEXIS 142202, at *16.

[43] *See id.*

[44] *See* Pl.'s Opening Brief, at 11-12; *Compare with* Complaint at para. 49 (Defendant utilized ambiguous terms, provisions, conditions and endorsements…).

[45] Pl.'s Opening Brief, at 11-12; Ex. 6 - Policy, at page 5 (emphasis in original).

8

Plaintiff claims rainfall alone caused the Vessel to sink, but rainfall is not enough to show that a sinking was accidental or fortuitous.[46] "[W]hether the rainfall indicated in the data is 'extraordinary' [or 'extreme'] for purposes of this motion is a legal question."[47] Plaintiff's Opposition relies upon Jonathon Klopman's post-loss damage survey to jump to the impermissible legal conclusion that any testimony or agreement that the rainfall was "extreme" automatically means that the loss was fortuitous.[48] This is not the law. Plaintiff ignores all relevant context. None of MAIC's experts, representatives, or claim adjusters have testified that the rainfall was so "extreme" that it *resulted in the sinking of the Vessel*. Indeed, although Mr. Jonathan Klopman's report states that the rain was "extreme," he testified that "if you have one boat that—that mysteriously sinks and – and no one else sank, usually it's not an act of God."[49]

Most noteworthy is Plaintiff's glaring failure to even once rely on his own expert, Charles Stephens, to support his arguments. This is likely because Mr. Stephens is the same expert that the defendant-insureds unsuccessfully relied upon in *Chartis Prop. Cas. Co. v. Inganamourt* to give similar opinions to the ones he offers here—that the sinking was not the result of a defect, but rather heavy rainfall caused the vessel to sink.[50] In *Chartis Prop.,* the Court held that the defendant-insured did not present sufficient evidence to prove that the amount of rainfall was fortuitous.[51] The Court relied, in part, on the plaintiff-insurer's expert opinion that "even if there was rain, [the defendant-insureds could not] meet their burden of

---

[46] *Chartis Prop. Cas. Co. v. Inganamourt*, 2019 U.S. Dist. LEXIS 45806, at *13-14 (D.N.J. Mar. 20, 2019).
[47] *Id.*, at *12.
[48] Pl.'s Opening Brief, at 9-11.
[49] Ex. 11 – Klopman Dep., at 128:25-129:2.
[50] Ex. 7 - Pl. Expert Report, Charles Stephens ("Stephens Report), at page 3; *Chartis Prop.*, 2019 U.S. Dist. LEXIS 45806, at *15.
[51] *Id.*, at *14-15.

9

showing a rainfall that was of a fortuitous nature," because "'[r]ainfall alone is no cause for the boat to partially submerge. The boat is intended to prevent rain water falling on the deck from entering the bilges.'"[52,53] The court concluded that "even if there was rain, [the defendant-insureds] cannot meet their burden of showing a rainfall that was of a fortuitous nature."[54]

Further, Plaintiff's Opening Brief, as in *Chartis Prop.*, fails to identify any other vessel in the same marina which sank due to the rainfall. Here, the Vessel sank because of design defects that resulted in the Vessel's inability to stay afloat during rainfall. Mr. Stephens' opposing opinion is merely an impermissible legal conclusion, and his report fails to establish sufficient facts, data, or opinions from which the Court could conclude that the rainfall was extraordinary enough to trigger a fortuitous loss. It is also undisputed that Plaintiff's Vessel was the only one that suffered such an extreme degree of damage in the marina where the Vessel was docked. Therefore, MAIC "reasonably dispute[s] that [an] 'excessive amount of rain'" was the proximate cause of the loss.[55] Plaintiff cannot meet his burden of proof, and his motion for summary judgment must be denied.

### 2.    Design Defects, Not Rainfall were the Efficient Proximate Cause of the Loss

As set forth in MAIC's Opening Brief, MAIC could not have breached the Policy where there was no duty to indemnify Plaintiff for the Vessel's sinking. The evidence shows that, because design defects were the "predominant" or "determining" cause of the loss,[56] that "rendered the loss

---

[52] *Id.*, at *13-14.
[53] Plaintiff cites to *Archer Daniels Midland Co. v. Aon Risk Servs.*, 2002 U.S. Dist. LEXIS 19314, at *24 (D. Minn. Sep. 27, 2002) to support the assertion that heavy rainfall is a fortuitous event. However, that case does not involve maritime law or the sinking of a boat, and the decision is 17 years older than *Chartis*. Further, *Archer* cites to *Davis v. Tillman*, 370 So. 2d 1323, 1325 (La. Ct. App. 1979), which involved a rainfall of "'excessive rain to the extent of 21 inches above normal[.]'" Here, the rainfall does not nearly reach that level of excess.
[54] *Id.*
[55] Pl.'s Opening Brief, at 10.
[56] *Lone Eagle Shipping*, 952 F. Supp. at 1061-62 (citations omitted).

10

inevitable," the proximate cause of the Vessel's sinking was various design defects existing in the Vessel prior to the Policy's effective date, and throughout the policy period to the date of loss. Contrary to Plaintiff's representation, MAIC wholly disputes that Plaintiff's loss was fortuitous or accidental, because design defects are not a fortuitous or accidental cause of loss.[57] Further, the only expert opinions before the court support the fact the Vessel was defectively designed.

MAIC's Naval Architecture and Marine Engineering Expert, Robert Taylor, discussed that although not a requirement, compliance with or certification by the American Boat and Yacht Council ("ABYC"), International Organization for Standardization ("ISO"), and National Marine Manufacturers Association ("NMMA") represents that a manufacturer has met "a baseline" of what its industry peer group deems "an acceptable design" and has had "an extra quality control, double-check on our engineering and construction and design."[58] Upon investigation and inspection of the Vessel, Mr. Taylor determined that Midnight Express was not certified by the NMMA,[59] and the Vessel was "not designed or built to meet or exceed the industry consensus minimum performance requirements [detailed in the ABYC and/or ISO guidelines] and therefore was not capable of staying afloat in heavy rain, as would be reasonably expected[.]"[60] Specifically, Mr. Taylor testified that the Vessel's drainage system did not meet the ABYC H-4 standard performance requirements to qualify as an assisted bailing system.[61] Mr. Taylor further opined that

---

[57] *Chartis Prop.*, 2019 U.S. Dist. LEXIS 45806, at *13-14; *Class Action of S. Fla. v. Nat'l Union Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 130696, at *12 (S.D. Fla. May 30, 2013)("Losses are not fortuitous, however, where they result from an inherent defect in the object damaged . . .").
[58] Ex. 9 - Deposition of Robert Taylor ("Taylor Dep."), at 18:5-19:13, 20:16-21:3.
[59] Ex. 9 - Taylor Dep., at 17:15-21.3.
[60] Ex. 8 - Robert Taylor Report ("Taylor Report"), at ¶ 10(a).
[61] Ex. 9 - Taylor Dep., at 100:25-111:7.

"[the] Midnight Express fails to meet the criteria laid out within the [ABYC H-4] standard for *any* of the six listed drainage system options."[62]

Mr. Taylor determined that the Vessel was unable to stay afloat during the rainfall due to:

> a combination of (a) an un-gasketed bilge hatch located in the aft portion of the cockpit; (b) placement of the cockpit drainage scuppers directly adjacent to the aforementioned un-gasketed bilge hatch; and (c) the high static waterline relative to the elevation of the cockpit scuppers (the static waterline was essentially the same level as the scupper drains)."[63]

He opined that the Vessel is poorly designed because it can "backflood and downflood with very little – very little weight in it or in the condition of full load . . ."[64] He specifically pointed out that the Vessel's drainage system was not properly designed to passively keep water out, instead relying on the active system.[65] Mr. Taylor described Midnight Express's design as "teetering on the edge."[66] "[W]ere it not for those factors, this rain wouldn't have killed this boat."[67] Indeed, after his 30 to 45 minute float test on a slightly windy day, he found that the Vessel had already taken on water that came in through the deck drains and overfilled the non-gasketed hatch.[68]

Plaintiff has not provided any expert opinion or testimony disputing Mr. Taylor's opinions that 1) the Vessel was not built to meet ABYC or ISO guidelines,[69] 2) the manufacturer was not NMMA certified,[70] and 3) the Vessel would not have sunk, and the bilge pumps would have been able to handle the "minimal seepage of water into the bilge[,]" had the boat design met minimum

---

[62] Ex. 9 - Taylor Dep., at 202:9-203:5 (emphasis added); Ex. 8 – Taylor Report, at pages 13-14.
[63] Ex. 8 - Taylor Report, at ¶ 10(b).
[64] Ex. 9 - Taylor Dep., at 101:25-102:9.
[65] Ex. 9 - Taylor Dep., at 102:13-104:3
[66] Ex. 9 - Taylor Dep., at 104:5-8.
[67] Ex. 9 - Taylor Dep., at 103:23-104:3.
[68] Ex. 9 - Taylor Dep., at 142:22-149:7.
[69] Ex. 8 - Taylor Report, at ¶¶ 7 and 9; *see generally* Ex. 7 - Stephens Report.
[70] Ex. 8 - Taylor Report, at ¶¶ 7 and 9; *see generally* Ex. 7 - Stephens Report.

industry performance requirements for cockpit drainage.[71] Therefore, the undisputed material facts show that the efficient proximate cause of the loss was the various design defects existing in the Vessel, not the rainfall as Plaintiff asserts.

###### E.    MAIC HAS ALSO MET ITS BURDEN OF ESTABLISHING THAT A POLICY EXCLUSION PRECLUDES COVERAGE FOR THE PLAINTIFF'S LOSS

Even if Plaintiff could meet his burden of proving that the loss was accidental or fortuitous (and that the Policy's coverage otherwise applies), MAIC has met its burden of showing that the "design defect" exclusion applies to bar coverage for the loss. As discussed above, the efficient proximate cause of Plaintiff's loss is the various design defects. First and foremost, design defects are <u>not</u> a fortuitous or accidental cause of loss.[72] Further, the plain, unambiguous language of the Policy states that MAIC "will not pay for loss, damage or expense caused by or resulting from: 9) **manufacturer's defects** or **design defects**."[73]

As Plaintiff so adeptly stated, "In construing insurance contracts, 'courts should read each policy as a whole, endeavoring to give each provision its full meaning and operative effect.'"[74] As such, the Policy exclusions should be given their full meaning and operative effect, and the Court should find that MAIC did not breach any duties to indemnify Plaintiff under the Policy.

###### F.    MAIC'S AFFIRMATIVE DEFENSES ARE NOT PRECLUDED.

Plaintiff also seeks summary judgment on MAIC's affirmative defenses. However, striking an affirmative defense is "generally disfavored and, historically, [is] only granted in limited circumstances . . . Those circumstances include[] insufficiency: when the moving party could demonstrate **<u>both</u>** that the defense was insufficient as a matter of law or fact **<u>and</u>** that maintenance

---

[71] Ex. 8 - Taylor Report, at ¶¶ 7 and 9.
[72] *Supra*, fn. 57.
[73] Ex. 6 - Policy, at page 6 (emphasis in original).
[74] *See* Pl.'s Opening Brief, at 12 (citations omitted).

13

of the defense would prejudice the movant."[75] The District of Delaware has rejected the notion that affirmative defenses are subject to an enhanced pleading standard.[76] MAIC was only required to provide "fair notice under the liberal pleading standards of [FRCP 8]."[77]

MAIC listed twelve affirmative defenses in its Answer, all of which Plaintiff now argues are unsupported.[78] Plaintiff also argues that MAIC "has not specifically identified its coverage defenses in [its] affirmative defenses, but instead asserts only vague generalities."[79] It is true that "[t]he burden of establishing an affirmative defense lies with the defendant."[80] However, MAIC has supported each and every one of its affirmative defenses with evidence identified to Plaintiff throughout discovery.[81] Further, Plaintiff does not cite to any legal authority that supports the assertion that MAIC's affirmative defenses should or must be precluded. Instead he provides his opinion that the affirmative defenses are either "vague" or "conclusory," while simultaneously failing to provide any analysis of the evidentiary record or any relevant law.

Every affirmative defense in MAIC's Answer was sufficient enough under FRCP 8 to put Plaintiff on fair notice of its coverage-based defenses.[82] Further, as detailed above and in MAIC's Opening Brief to its Motion for Summary Judgment, MAIC has provided expert reports and

---

[75] *Bayer CropScience AG v. Dow AgroSciences LLC*, 2011 U.S. Dist. LEXIS 149636, at *2 (D. Del. Dec. 30, 2011)(internal citations omitted and emphasis added).
[76] *Id*., at *11.
[77] *Id*., at *12.
[78] MAIC's Answer to the Complaint [D.I. 61]; Pl.'s Opening Brief, at 14.
[79] Pl.'s Opening Brief, at 14.
[80] *Schainberg v. Urological Consultants of S. Fla., P.A.*, 2013 U.S. Dist. LEXIS 208128, at *5 (S.D. Fla. Mar. 18, 2013).
[81] *See Issa v. Del. State Univ.,* 2019 U.S. Dist. LEXIS 68845, at *17 (D. Del. Apr. 23, 2019)(striking Defendants' affirmative defenses where they failed to disclose "which affirmative defense on which they were proceeding and the evidentiary basis for it.").
[82] *See Bayer*, 2011 U.S. Dist. LEXIS 149636, at *12.

copious data and analysis to support its coverage defenses. As such, MAIC's affirmative defenses should not be precluded.

### G. NEITHER MAIC'S WORDS NOR ACTIONS HAVE RENDERED PLAINTIFF'S LOSS A COVERED LOSS

Plaintiff argues that MAIC is estopped from denying coverage, but cites to no supporting case law. "In order to sustain a claim of estoppel under federal admiralty law, a party must show that it relied in good faith on a misrepresentation of another party, and that this reliance caused it to change its position for the worse."[83] However, Plaintiff cannot create coverage by estoppel.[84] MAIC has never represented that Plaintiff's loss was a covered loss.

#### 1. MAIC has Never Stated or Testified that Plaintiff's Loss is a Covered Loss

Plaintiff argues that MAIC "treated the loss as covered but is now attempting to backtrack and claim it never made a coverage decision."[85] Plaintiff then misstates MAIC's unequivocal testimony that Plaintiff's loss is *not* a covered loss.[86] MAIC's 30(b)(6) Representative, Ms. Katherine Christodoulatos, testified that " . . . the loss has not been covered because there's no coverage that was triggered under the [P]olicy . . . It's not a covered loss. . . . there's no information that we've obtained that shows that this is a covered loss."[87] She also confirmed that no payments had been issued directly to Plaintiff,[88] and that Plaintiff's claim was still open.[89] MAIC issued a Reservation of Rights letter before Plaintiff filed his Complaint.[90]

---

[83] *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 128 (3d Cir. 2002).
[84] *Walker v. American Ice. Co.,* 254 F.Supp. 736, 741 (D.D.C. 1966)(holding "There is a well established doctrine that waiver and/or estoppel cannot be used to extend the coverage or the scope of the policy…").
[85] Pl.'s Opening Brief, at 14.
[86] Pl.'s Opening Brief, at 16.
[87] Ex. A to Pl's MSJ - Dep. of Katherine Christodoulatos ("Christodoulatos Dep."), at 160:10-23.
[88] Ex. A to Pl's MSJ - Christodoulatos Dep., at 161:2-6.
[89] Ex. A to Pl's MSJ - Christodoulatos Dep., at 160:24-25, 187:18-25.
[90] Ex. A to Pl's MSJ - Christodoulatos Dep., at 160:24-25, 187:18-25.

15

Contrary to Plaintiff's interpretation, Ms. Christodoulatos did not "testif[y] under oath that payment was made in accordance with a 'covered loss . . .'"[91] Rather, Ms. Christodoulatos testified that "the payments were made without prejudice and . . .[i]t's not unusual while the claim is still being investigated that [MAIC] may cover sue and labor, storage expenses while the claim is being investigated and again, that is without prejudice."[92] Plaintiff points out that there is no policy provision regarding payments "without prejudice," but likewise there is no provision stating that any payment by MAIC is "with prejudice" or impacts any of MAIC's rights as an insurer. MAIC preserved all of its right to investigate and handle Plaintiff's claim without prejudice in the Reservation of Rights letter it issued to Plaintiff on November 12, 2018. The letter states, inter alia, that:

> 1.  No action taken or information received, before or after the date of this Letter will change in any way the liability or requirements of the insurance policy. ***This action will not prejudice or affect the rights of either party regarding the loss, damage or injury, at the time of loss*** . . .
>
> 3.  MAIC is permitted to investigate all legal defenses for the amount of the claim. This will  be done in a matter which avoids unnecessary delay ***without affecting the liability or non-liability of MAIC*** . . .[93]

Upon receipt of MAIC's letter, and subsequent communications, Plaintiff was on notice that any investigation and/or handling of his claim had no bearing on whether or not MAIC was liable for his loss.[94] MAIC also made it clear from the onset of the claims process that the claim was subject to any applicable policy exclusions. As such, Plaintiff cannot now feign ignorance and argue that MAIC's words or actions rendered it liable for his excluded loss.

---

[91] Pl.'s Opening Brief, at 16.
[92] Ex. A to Pl's MSJ - Christodoulatos Dep., at 104:18-105:3.
[93] Ex. 4 - MAIC Prod., at MARKEL 000073-76 (Reservation of Rights letter)(emphasis added).
[94] *See Id.;* Exhibit K and L to Plaintiff's MSJ.

### 2.    MAIC Did Not Treat the Loss as "Salvage Ownership"

Plaintiff fails to cite to any evidence on record that MAIC "took custody of Plaintiff's Vessel" or "treated the loss as 'salvage ownership' of the Vessel, according to the terms of the [P]olicy."[95] The Policy reserves MAIC's right to take possession of the remains of the Vessel, if it elects to do so.[96] Under those circumstances, MAIC would have requested a transfer of the Vessel's title.[97] As of the filing of this brief, Plaintiff still retains ownership and title to the Vessel.

### 3.    MAIC's Payments are Neither an Admission of Coverage, Nor Do They Function to Confess Judgment

Plaintiff's argument that payment of limited expenses to preserve the vessel for inspection falls under the "Protect and Recover" clause similarly fails. Said clause refers solely to *Plaintiff's* post-loss duties pursuant to the Policy, and does nothing to impart a duty or obligation upon MAIC.[98] Likewise, this section does not state that "the need to 'protect' the damaged Vessel *only* arises 'in the event of a covered loss.'"[99] However, Plaintiff selectively highlights the phrase "In the event of a covered loss…" and concludes that any payment by MAIC automatically results in complete coverage.[100]

Every case Plaintiff cites to in support of this false assertion is either distinguishable, completely irrelevant, or misstates the holding. Further, the majority of the cases apply Florida common law and statutes, which are wholly inapplicable in this action.[101] By way of example, Plaintiff misstates the holding in *Martinez v. Hartford Cas. Ins. Co.*, in which the court granted summary judgment *to the defendant-insurer*, holding that Plaintiff's action was untimely and that

---

[95] Pl.'s Opening Brief, at 17.
[96] Ex. 6 - Policy, at 8.
[97] Ex. 6 - Policy, at 8.
[98] Ex. 6 - Policy, at page 8.
[99] Pl.'s Opening Brief, at 16 (emphasis added); *see* Ex. 6 - Policy, at page 8.
[100] Pl.'s Opening Brief, at 16.
[101] *See* MAIC's Opening Brief.

27743043v.1

the insurer did not concede liability for the remaining claims.[102] In fact, the opinion clearly states that "*The plaintiff does not and, from the evidence presented, cannot allege that the defendant has conceded liability for any claims that it has not already paid.* "[103] In that case, the defendant-insurer had "(1) calculated, conceded liability for, and paid $118,985.76 in damage and related monetary loss, (2) calculated (and apparently denied liability for) $26,041.59 for depreciation value, and (3) not acknowledged liability for any other claims of damages[.]"[104] Even where the insurer paid over $118,000, the court did not find that the insurer conceded liability based on partial payment. Here, MAIC is even further removed from possible liability, because 1) it has denied liability as to any of Plaintiff's claims and 2) it has not issued payment in any amount directly to Plaintiff to cover any alleged loss.[105]

Likewise, in *Arvat Corp. v. Scottsdale Ins. Co.,* the defendant-insurer "admitted that there [was] a covered loss for some of the damage" and issued payment for those damages.[106] Plaintiff demanded an appraisal for the remaining damages, and the court granted summary judgment in favor of the Plaintiff.[107] Here, MAIC has made no such admission, nor has it made any direct payments to Plaintiff for any claimed damages.[108] Further, Plaintiff Stokes is not demanding an appraisal, but rather full coverage for an excluded loss.

Plaintiff's reliance upon footnote 1 of *Plante v. USF&G Specialty Ins. Co.* is again misplaced because 1) it refers to an inapplicable Florida statute, 2) the insurer explicitly conceded

---

[102] 429 F. Supp. 2d 52, 60-62 (D.D.C. 2006).
[103] *Id*., at 61.
[104] *Id*., at 60-61.
[105] Ex. A to Pl's MSJ - Christodoulatos Dep., at 161:2-6.
[106] 2015 U.S. Dist. LEXIS 146092, at *5 (S.D. Fla. Oct. 28, 2015).
[107] *Id*., at *8.
[108] Ex. A to Pl's MSJ - Christodoulatos Dep., at 161:2-6.

18

liability, and 3) the insurer "waived its coverage defenses by paying Plante for her claims."[109] Again, Florida law is inapplicable, MAIC has denied liability, and MAIC did not make direct payments to Plaintiff to cover the direct loss of the Vessel.[110] Plaintiff's remaining citations regarding bad faith are similarly distinguishable.[111]

Even if Florida law applied, *Commerce Pointe v. Glencoe Ins.* is more applicable to these facts and distinguishes *Plante*.[112] There, the Southern District of Florida vacated the District's prior order "finding that Glencoe's payments to Commerce Pointe for other damage caused by Hurricane Jeanne constituted a sufficient admission of liability to allow the claim for statutory bad faith to proceed."[113] The court granted the insurer's motion to dismiss and distinguished the facts from *Plante*, reasoning:

> In *Plante*, the insurer tried to deny coverage for the same type of damage, and in the exact same location, where it previously had conceded coverage. The only issue was extent of damages. Here, Glencoe has paid for one type of damage in one part of the building while denying coverage for wholly separate damage. Upon

---

[109] 17 Fla. L. Weekly Fed. D 686 (U.S. S.D. Fla. 2004).

[110] *Waters Edge Living, Ltd. Liab. Co. v. RSUI Indem. Co.,* 2008 U.S. Dist. LEXIS 33049, at *10 (N.D. Fla. Apr. 22, 2008) is distinguishable for the same reason.

[111] *See State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1286 (Fla. 1996)(holding that "the appraisal clause at issue is not void for lack of mutuality of obligation simply because of a retained rights clause, where we interpret the clause as retaining only the right to dispute the issues of coverage as to the whole loss, or whether the policy conditions have been violated"); *State Farm Fla. Ins. Co. v. Hernandez*, 172 So. 3d 473, 474-75 (Fla. Dist. Ct. App. 2015); *Tristar Lodging, Inc. v. Arch Specialty Ins. Co.*, 434 F. Supp. 2d 1286, 1292-93 (M.D. Fla. 2006)( "The parties agree that there are no coverage issues to adjudicate and the sole issue is whether Plaintiff is entitled to an award of attorney's fees and costs, given the sequence and circumstances of the claims being made, processed and paid."); *Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.*, 2008 U.S. Dist. LEXIS 66496 (S.D. Fla. Aug. 20, 2008)("Florida courts have recognized multiple methods for determining insurer liability, including litigation, arbitration, and payment by an insurer of the ***full policy limit***."(emphasis added)); (denying insurer's motion to dismiss because it ***paid full policy limits to insured*** in settlement); *Brookins v. Goodson*, 640 So. 2d 110 (Fla. Dist. Ct. App. 1994)(reversing judgment dismissing plaintiff's claim for bad faith because insurer conceded liability by ***settling for policy limits***).

[112] 2006 U.S. Dist. LEXIS 111085, at *3 (S.D. Fla. July 14, 2006).

[113] *Id.*, at *2.

19

> reconsideration, Glencoe's prior payments are not an admission of liability sufficient to make Commerce Pointe's bad faith claim ripe.[114]

Here, MAIC has never conceded liability or directly paid Plaintiff for any portion of his claimed damages.[115] All payments by MAIC were made to facilitate inspection and investigation of the claim, because Plaintiff refused to pay invoices related to the salvage, towing, and storage of the Vessel and allowed them to fall into arrears.[116] MAIC was not permitted to inspect the Vessel by the storage facility until those invoices were paid, which prejudiced MAIC's ability to access the Vessel and investigate Plaintiff's claims. However, MAIC reserved its rights to make these payments and investigate without prejudice. Just like *Glencoe*, MAIC paid for hauling and storage, but it declined to make any direct payments to Plaintiff to cover damage to the Vessel.

## V.    CONCLUSION

Plaintiff has failed to meet his burden of proving that his loss was accidental or fortuitous, and the record shows that a series of design defects were the proximate cause of the Vessel's loss from saltwater submersion. He applies incorrect legal standards throughout, lists legal conclusions that are not supported by the case citations he has provided, mis-cited deposition testimony, and imparts duties on MAIC which do not exist under the Policy or at law. Even if Plaintiff is considered to have carried his burden of proof on fortuity, Plaintiff's motion should still be denied because coverage is excluded, and Plaintiff has failed to present any disputed issue of fact. MAIC has met its burden of showing that at least one genuine, material issue of fact remains, and has sufficiently supported its affirmative defenses with the current evidentiary record. Due to the foregoing, MAIC asks that this honorable Court deny Plaintiff's motion for summary judgment.

---

[114] *Id.*, at *3.
[115] Ex. A to Pl's MSJ - Christodoulatos Dep., at 161:2-6.
[116] *See* Exhibits H through K to Plaintiff's Opening Brief.