IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES STOKES, | : |
| | : C.A. No.   1:19-cv-02014 LPS |
| PLAINTIFF, | : |
| | : |
| v. | : TRIAL BY JURY OF TWELVE |
| | : DEMANDED |
| MARKEL AMERICAN INSURANCE | : |
| COMPANY, a foreign corporation, | : |
| | : |
| DEFENDANT. | : |

**DEFENDANT MARKEL AMERICAN INSURANCE COMPANY'S
RESPONSES TO PLAINTIFF'S CONCISE STATEMENT OF UNDISPUTED FACTS**

COMES NOW Defendant, Markel American Insurance Company ("MAIC") with its Responses to Plaintiff's Concise Statement of Undisputed Material Facts in Support of his Motion for Summary Judgment.

**RESPONSES**

1. It is undisputed that this action arises out of Defendant's refusal to indemnify its longtime-insured, Mr. Stokes, for his sudden, accidental, and fortuitous Vessel loss that occurred on or about October 11, 2018, when Mr. Stokes' 2017 Midnight Express 39' with three (3) Seven Marine 627s engines sank in her slip in Bethany Beach, Delaware, upon the torrential rains of Hurricane Michael.

**RESPONSE: Disputed. MAIC disputes that Plaintiff's loss was the result of a hurricane. Jonathon Klopman testified that the loss occurred when the storm was at tropical storm strength, not hurricane strength.[1] Further, Plaintiff's counsel has also admitted that at the**

---

[1] Exhibit 11 to MAIC's Opening Brief – Deposition of Jonathon Klopman ("Klopman Dep."), at 65:24-66:10.

time of the loss, the wind and rain was no longer a hurricane, but a tropical storm.[2] MAIC's expert has opined that Plaintiff's loss was caused by a combination of design defects, resulting in the sinking of the Vessel.[3] Losses resulting from design defects are not covered losses under Plaintiff's MAIC Policy,[4] and therefore MAIC issued a "Notice of Disclaimer of Coverage" to Plaintiff on August 19, 2021.[5]

2. It is undisputed that Mr. Stokes' Vessel was fully insured by Defendant via an "all-risk," agreed $680,000 policy for the period commencing from October 20, 2017, to October 20, 2018, bearing policy number MHP361698, effective and endorsed June 1, 2018. The Subject Policy is attached **as Exhibit "B."**

**RESPONSE: Disputed. The Policy, and the coverage provided pursuant to it, speaks for itself and requires no characterization.**

3. It is undisputed that on or about October 12, 2018, the day immediately following Mr. Stokes' Hurricane Michael loss, Mr. Stokes timely provided notice of his loss. The Notice of Loss is attached as **Exhibit "C."**

**RESPONSE: Disputed. MAIC disputes that Plaintiff's loss was the result of a hurricane. Jonathon Klopman testified that the loss occurred when the storm was at tropical storm strength, not hurricane strength.[6] Further, Plaintiff's counsel has also admitted that at the time of the loss, the wind and rain was no longer a hurricane, but a tropical storm.[7]**

---

[2] Exhibit 9 to MAIC's Opening Brief - Deposition or Robert Taylor ("Taylor Dep."), at 41:6-12; Exhibit 11 to MAIC's Opening Brief –Klopman Dep., at 65:24-66:10.
[3] Exhibit 8 to MAIC's Opening Brief - MAIC Expert Report by Robert Taylor.
[4] Exhibit 6 to MAIC's Opening Brief - Policy.
[5] Exhibit A (attached to these responses)- Notice of Disclaimer of Coverage, dated August 19, 2021.
[6] Exhibit 11 to MAIC's Opening Brief –Klopman Dep., at 65:24-66:10.
[7] Exhibit 9 to MAIC's Opening Brief - Taylor Dep., at 41:6-12; Exhibit 11 –Klopman Dep., at 65:24-66:10.

27741523v.1

4. It is undisputed that the hurricane loss occurred during the active policy period. Deposition of Defendant's Claims Adjuster, Justin Evenson ('Evenson Depo'), p. 38:2-4, is attached as **Exhibit "D."**

**RESPONSE: Disputed. MAIC disputes that Plaintiff's loss was the result of a hurricane. Jonathon Klopman testified that the loss occurred when the storm was at tropical storm strength, not hurricane strength.[8] Further, Plaintiff's counsel has also admitted that at the time of the loss, the wind and rain was no longer a hurricane, but a tropical storm.[9]**

5. It is undisputed that Defendant assigned the loss claim number "18C40603" and does not dispute the date of loss, October 11, 2018. *See id.* at p. 32:1-2.

**RESPONSE: Undisputed.**

6. It is undisputed that Defendant determined that Mr. Stokes did not make any misrepresentations when applying for insurance to protect the Vessel.

**RESPONSE: Disputed. MAIC contends that Mr. Stokes made a representation as to his warranty that the Vessel was seaworthy, because the design defects were present at the inception of the Policy and throughout the active policy period, it was not seaworthy.[10]**

7. It is undisputed that there are no issues regarding the "navigational limits" of the Vessel at the time of the loss. Corporate Representative Depo, p. 54:11-17; *id.* p. 24:15-19.

**RESPONSE: Undisputed.**

8. It is undisputed that Defendant and Defendant's inspector confirmed the "extreme"

---

[8] Exhibit 11 to MAIC's Opening Brief – Klopman Dep., at 65:24-66:10.
[9] Exhibit 9 to MAIC's Opening Brief - Taylor Dep., at 41:6-12; Exhibit 11 to MAIC's Opening Brief –Klopman Dep., at 65:24-66:10.
[10] Exhibit 6 to MAIC's Opening Brief - Policy; Exhibit 8 to MAIC's Opening Brief -Taylor Report.

27741523v.1

and torrential rains that led to the loss. Defendant's surveyor, Jonathan Klopman, reported that "[a] thunderstorm passed through the marina between 11:00PM and midnight. The total rainfall for this time period was 7.29 inches. *This is an extreme amount of rainfall by any measure*."[4] See Klopman Report, p. 4 of 21, attached as **Exhibit "E"** (emphasis added).

**RESPONSE: Disputed. Mr. Klopman's report does note that the rain was extreme, however, both Mr. Klopman and Robert Taylor have opined that the Vessel's design defects caused the loss.[11] In fact, Mr. Klopman's report states that "[t]he loss was the direct result of improper design and construction."[12]**

9.   It is undisputed that Mr. Kevin R. Brinson, PhD(c), the director of the Delaware Environmental Observing System ("DEOS") and a Delaware Associate State Climatologist at the Office of the Delaware State Climatologist, confirmed the extensive and historic rainfall associated with Hurricane Michael. Mr. Brinson provided compiled datasets confirming extreme rain within a short period of time. See Delaware Rainfall Datasets, attached as **Exhibit "G."**

**RESPONSE: Disputed. Mr. Brinson did compile datasets, but has provided no report analyzing the data. Thus, MAIC disputes any characterization of that data by Plaintiff.**

10.  It is undisputed that the subject "all-risks" insurance policy does not feature any "anti-concurrent cause" language, rendering any of Defendant's purported "exclusions" or defenses futile. *See* Subject Policy, **Ex. "B."**

**RESPONSE: Disputed. MAIC disputes this paragraph, because causation in maritime matters is governed by the Efficient Proximate Cause Doctrine, and not the Concurrent Causation Doctrine. Therefore, MAIC was not required to include "anti-concurrent cause"**

---

[11] Exhibit 8 to MAIC's Opening Brief - Taylor Report.
[12] Exhibit 3 to MAIC's Opening Brief - Klopman Damage Survey, at MARKEL 000095.

**language. This point is further discussed in MAIC's Answering Brief in Opposition of Plaintiff's Motion for Summary Judgment.**

11. On November 12, 2018, after acceptance and payment of several invoices confirming coverage, Defendant sent a "reservation of rights" letter, indicating novel reasons that Defendant might try to use to reach its goal of denying coverage. *See* Correspondence, **Ex. "F."**

**RESPONSE: Disputed. MAIC did send Mr. Stokes a Reservation of Rights letter on November 12, 2018. However, MAIC did not confirm coverage of Plaintiff's claim at any time. The invoices paid by MAIC were paid directly to vendors, because Plaintiff refused to remit payment for invoices related to the salvage, towing, and storage of the Vessel.[13] He allowed several invoices to fall into arrears, which would have prejudiced MAIC's ability to investigate and obtain access to the Vessel.[14] MAIC has neither conceded liability for Plaintiff's loss, nor made any direct payments to Plaintiff for his claimed loss.**

12. It is undisputed that Defendant made numerous payments on Plaintiff's loss affirmatively confirming and affording coverage—including payments prior to the issuance of any purported reservation letter. *See infra*, **Composite Ex. "H."**

**RESPONSE: Disputed. MAIC did send Mr. Stokes a Reservation of Rights letter on November 12, 2018. However, MAIC did not confirm coverage of Plaintiff's claim at any time. The invoices paid by MAIC were paid directly to vendors, because Plaintiff refused to remit payment for invoices related to the salvage, towing, and storage of the Vessel.[15] He allowed several invoices to fall into arrears, which would have prejudiced MAIC's ability**

---

[13] See Exhibits H through K to Plaintiff's Opening Brief in Support of his Motion for Summary Judgment.
[14] *Id*.
[15] See Exhibits H through K to Plaintiff's Opening Brief in Support of his Motion for Summary Judgment.

to investigate and obtain access to the Vessel.[16]. MAIC has neither conceded liability for Plaintiff's loss, nor made any direct payments to Plaintiff for his claimed loss.

13. Defendant's letter attempting to "reserve rights" vaguely claims that "the Policy contains several general conditions as well as several specific exclusions that make your claim ineligible for coverage." *Id.* at p. 1. Defendant points to policy provisions it *may* rely upon to attempt to avoid payment. Later in letter, Defendant claims, "[a]t this stage in our investigation we cannot yet determine whether coverage exists for this loss." *Id.* at p. 3.

**RESPONSE: Disputed. MAIC's Reservation of Rights letter speaks for itself. MAIC disputes Plaintiff's characterizations of the letter.**

14. Mr. Evenson, the drafter of Defendant's "reservation" letter, conceded that he "did not have any evidence that it [the Vessel] would not be seaworthy." Evenson Depo, p. 95:9-10.

**RESPONSE: Disputed. This testimony is provided without proper context. Mr. Evenson testified that he discussed the seaworthiness of the Vessel in the Reservation of Rights letter, because "this is, kind of, a weird event where a boat sinks at the dock" and he "wanted to call attention to the fact that it is possible that that vessel was not seaworthy at the time of the loss."[17]**

### Undisputed Facts Surrounding Defendant's Care Custody, and Control of the Vessel and Prior Payments

15. It is undisputed that Defendant previously confirmed and afforded coverage on Mr. Stokes' loss, despite Defendant's current contention—now over two years after the loss—that it has not issued a coverage determination. Corporate Representative Depo, pp. 160:24-25, 187:18-25.

---

[16] *Id.*
[17] Deposition of Justin Evenson, 94:20-95:15.

27741523v.1


**RESPONSE: Disputed. MAIC did not confirm coverage of Plaintiff's claim at any time. The invoices paid by MAIC were paid directly to vendors, because Plaintiff refused to remit payment for invoices related to the salvage, towing, and storage of the Vessel.[18] He allowed several invoices to fall into arrears, which would have prejudiced MAIC's ability to investigate and obtain access to the Vessel.[19] MAIC has neither conceded liability for Plaintiff's loss, nor made any direct payments to Plaintiff for his claimed loss. Further, MAIC issued a "Notice of Disclaimer of Coverage" to Plaintiff on August 19, 2021.[20]**

16. It is undisputed that Defendant ordered the Vessel raised and towed from the site of the loss (Mr. Stokes' slip) to the marina of Defendant's choice, Indian River Marina, located in Delaware Seashore State Park, where, upon information and belief, the Vessel remains to this day.

**RESPONSE: Disputed. Mr. Stokes and his neighbor, who notified him of the sinking, directed the recovery of the boat through Boat US.[21] Mr. Stokes then orchestrated the raising and towing.[22] Further, the Klopman report is clear that the Vessel was simply "towed over to the closest marina, Indian River Marina in Rehoboth Beach DE."[23]**

17. It is undisputed that significant raising and salvage costs, totaling over five-figures, were incurred due to Defendant's actions and upon Defendant's requests and agreement. *See* Klopman Report, **Ex. "E,"** p. 2 of 21 (regarding salvage efforts).

---

[18] See Exhibits H through K to Plaintiff's Opening Brief in Support of his Motion for Summary Judgment.
[19] *Id.*
[20] Exhibit A- Notice of Disclaimer of Coverage, dated August 19, 2021.
[21] Exhibit B (attached to this Statement)- Claims File Production, at MARKEL 000003, 000249.
[22] Exhibit B- Claims File Production, at MARKEL 000003, 000249.
[23] Exhibit 3 to MAIC's Opening Brief - Klopman Damage Survey, page 2.

**RESPONSE: Disputed. Mr. Stokes and his neighbor, who notified him of the sinking, directed the recovery of the boat through Boat US.[24] Mr. Stokes then orchestrated the raising and towing.[25] Further, the Klopman report is clear that the Vessel was simply "towed over to the closest marina, Indian River Marina in Rehoboth Beach DE."[26]**

    18.    It is undisputed that Defendant MARKEL has paid coverage amounts and expenses in excess of the $15,199.00 for raising, salvage, and tow costs, including but not limited to *at least* the following amounts:

- Indian River Marina Invoice No. 12756, dated October 12, 2018, totaling $1,320.50 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.

- Indian River Marina Invoice No. 12853, dated November 27, 2018, totaling $663.00 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.

- Indian River Marina Invoice No. 13495, dated June 6, 2019, totaling $1,600.00 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.

- Indian River Marina Invoice No. 13617, dated July 1, 2019, totaling $360.75 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.

- Indian River Marina Invoice No. 13722, dated July 19, 2019, totaling $575.25 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.

- Indian River Marina Invoice No. 14168, dated October 24, 2019, totaling $360.75 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.

- Johnny Shine Invoice No. 501, dated July 29, 2019, totaling $400.00 in fees and costs incurred due to MARKEL's post-loss demands, paid by MARKEL.

---

[24] Exhibit B- Claims File Production, at MARKEL 000003, 000249.
[25] Exhibit B- Claims File Production, at MARKEL 000003, 000249.
[26] Exhibit 3 to MAIC's Opening Brief - Klopman Damage Survey, page 2.

27741523v.1

- Further expenses incurred as a result of the Vessel loss, including additional invoices from Indian River Marina paid by Defendant. Upon information and belief, Plaintiff's Vessel remains located at Indian River Marina to this day.

Please see the above Invoices, attached as **Composite Exhibit "H**.

**RESPONSE: Disputed. MAIC has paid various invoices related to the towing, salvage, and storage of the Vessel, because Plaintiff refused to remit payment for invoices related to the salvage, towing, and storage of the Vessel.[27] He allowed several invoices to fall into arrears, which would have prejudiced MAIC's ability to investigate and obtain access to the Vessel.[28] However, MAIC disputes the characterization that these fees and costs were "incurred due to MARKEL'S post-loss demands[.]"**

19.   It is undisputed that on October 31, 2018, Defendant did make an indemnity payment to Indian River Marina pertaining to the storage fees, costs, and service fees incurred by Mr. Stokes after the subject loss, and at the direction of Defendant. *See* email Correspondence Between Mr. Stokes and Mr. Evenson – Def.'s Claims Examiner, dated October 31, 2018, attached as **Exhibit "I."**

**RESPONSE: Disputed. MAIC has paid various invoices related to the towing, salvage, and storage of the Vessel, because Plaintiff refused to remit payment for invoices related to the salvage, towing, and storage of the Vessel.[29] He allowed several invoices to fall into arrears, which would have prejudiced MAIC's ability to investigate and obtain access to the Vessel.[30]**

---

[27] *See* Exhibits H through K to Plaintiff's Opening Brief in Support of his Motion for Summary Judgment.
[28] *Id*.
[29] *See* Exhibits H through K to Plaintiff's Opening Brief in Support of his Motion for Summary Judgment.
[30] *Id*.

**However, MAIC disputes the characterization that these payments were "indemnity" payments.**

20.     It is further undisputed that Defendant has made a number of additional indemnity payments on behalf of Mr. Stokes, including but not limited to additional indemnity payments issued on invoices from Indian River Marina, continuing to this day. Please see Email Correspondence Between Ms. DeFelice of Indian River Marina and Mr. Varnell – Def.'s Claims Manager, dated January 28, 2019, attached as **Exhibit "J."** *See* Correspondence from Defendant's Counsel, Ms. Rivera, dated November 18, 2019, attached as **Exhibit "K."**

**RESPONSE: Disputed. MAIC has paid various invoices related to the towing, salvage, and storage of the Vessel, because Plaintiff refused to remit payment for invoices related to the salvage, towing, and storage of the Vessel.[31] He allowed several invoices to fall into arrears, which would have prejudiced MAIC's ability to investigate and obtain access to the Vessel.[32] However, MAIC disputes the characterization that these payments were "indemnity" payments.**

21.     It is undisputed that Defendant refused to allow Mr. Stokes to transport his Vessel out of the Indian River Marina to a location more suitable to Mr. Stokes, proving that Defendant assumed ownership, care, custody, and control over the damaged Vessel. *See* Correspondence from Defendant's counsel, dated July 1, 2019, p. 2, attached as **Exhibit "L."**

**RESPONSE: Disputed. MAIC had the Vessel towed to the nearest marina, to allow for access by all parties pertinent to investigating Plaintiff's claim. MAIC further disputes that it has assumed ownership, care, custody, and control over the Vessel. The Vessel is still**

---

[31] *See* Exhibits H through K to Plaintiff's Opening Brief in Support of his Motion for Summary Judgment.
[32] *Id.*

-10-

**owned by Plaintiff, and MAIC has only taken the steps necessary to investigate Plaintiff's claim and litigate this matter.**

22. It is undisputed that Defendant had previously confirmed coverage but now argues, over 33 months after the loss, that it still has not formulated any official "coverage position." Corporate Representative Depo, pp. 160:24-25, 187:18-25.

**RESPONSE: Disputed. MAIC has never confirmed coverage of this claim. It issued a Reservation of Rights letter on November 12, 2018, and a Notice of Disclaimer of Coverage on August 19, 2021.**

23. It is undisputed that the subject policy provides for $750 in "Emergency Towing and Assist" coverage, and that Defendant's payments greatly exceeded this figure. Defendant issued payments totaling at least $5,280.25 for invoices and at least $15,199.00 for raising, salvage, and towing. Defendant thereby treated the subject loss as a covered loss.

**RESPONSE: Disputed. MAIC disputes Plaintiff's characterization of its payments. The Policy does not indicate that any payments made by MAIC are with prejudice.[33] Further, MAIC reserved its rights to investigate the claim and make payments to vendors in its Reservation of Rights letter.[34] In fact, MAIC remitted payment because Plaintiff refused to do so.[35] He allowed several invoices to fall into arrears, which would have prejudiced MAIC's ability to investigate his claims and obtain access to the Vessel.[36] At no time has MAIC treated Plaintiff's claim as a covered loss.**

---

[33] *See generally* Exhibit 6 to MAIC's Opening Brief- Policy; Exhibit A to Plaintiff's Opening Brief- Deposition of Katherine Christodoulatos, 113:4-115:3.
[34] Exhibit 4 to MAIC's Opening Brief- Reservation of Rights letter.
[35] *See* Exhibits H through K to Plaintiff's Opening Brief in Support of his Motion for Summary Judgment.
[36] *Id*.

24. It is undisputed that Defendant issued payment for invoices related to the post-loss work and storage of the Vessel, which Defendant is only required to do in the event of a "covered loss." Subject Policy, p. 8, **Ex. "B."**

**RESPONSE: Disputed. Presumably Plaintiff is referring to a "Protect and Recover" clause in the Policy, which is a subsection of "Loss Conditions," not "Coverage" which is the previous section.[37] This section states:**

> e. Protect and Recover
> In the event of a covered loss to the **insured watercraft**, you must protect the **insured watercraft** from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under 'Watercraft and Equipment' coverage, but not to exceed the limit for 'Watercraft and Equipment' on the Declarations Page. We will not cover any further loss incurred due to your failure to protect the **insured watercraft**.

**MAIC disputes Plaintiff's interpretation of this section. This section does not state that MAIC is "only required" to cover post-loss hauling, salvage, or storage. It only states what Plaintiff must do to prevent further loss to the Vessel. All payments by MAIC were made without waiver, subject to its Reservation of Rights letter, as a necessary measure to ensure access to the Vessel and complete its claim investigation. Prior to MAIC's payments, Plaintiff refused to remit payment for invoices related to the salvage, towing, and storage of the Vessel.[38] He allowed several invoices to fall into arrears, which would have prejudiced MAIC's ability to investigate and obtain access to the Vessel.[39]**

---

[37] Exhibit 6 to MAIC's Opening Brief - Policy, at pages 5-9.
[38] See Exhibits H through K to Plaintiff's Opening Brief in Support of his Motion for Summary Judgment.
[39] *Id*.

-13-

**WHITE AND WILLIAMS LLP**

*/s/ Timothy S. Martin*
**TIMOTHY S. MARTIN (#4578)**
**DARYLL HAWTHORNE-SEARIGHT (#6520)**
Courthouse Square
600 N. King Street, Suite 800
Wilmington, DE 19801
(302) 467- 4520
Martint@whiteandwilliams.com
Counsel for Defendant,
Markel American Insurance Company

Dated: September 13, 2021