## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

JAMES STOKES,

                Plaintiff,                    CASE NO.: 1:19-cv-02014 LPS

vs.

MARKEL AMERICAN INSURANCE COMPANY,

                Defendant.

_____

### PLAINTIFF JAMES STOKES' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Date: September 13, 2021

PALMER BIEZUP & HENDERSON LLP
Michael B. McCauley (ID 2416)
1223 Foulk Road
Wilmington, DE 19803
(302) 594-0895
mccauley@pbh.com
Attorneys for Plaintiff

Of counsel:
David Avellar Neblett
James M. Mahaffey III
PERRY & NEBLETT, P.A.
2550 South Bayshore Drive Suite 211
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile: (305) 967-8182
david@perryneblett.com
jmahaffey@perryneblett.com

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS……………………………………………1

SUMMARY OF THE ARGUMENTS…………………………………………………………1

COUNTERSTATEMENT OF FACTS……………………………………………………....2

ARGUMENT……………………………………………………………………………...6

I.    DEFENDANT FAILED TO CARRY ITS BURDEN ON SUMMARY JUDGMENT AND FAILED TO ADEQUATELY SUPPORT ITS MOTION………………………………6

II.   FLORIDA LAW APPLIES TO "THE INTERPRETATION OF THE INSURANCE POLICY"………………………………………………………………………………7

III.  DEFENDANT BREACHED THE POLICY OF INSURANCE AND ALL OF PLAINTIFF'S WELL-PLED CLAIMS MUST SURVIVE………………………………7

      1.    Defendant Breached the Policy and Plaintiff is entitled to the Entry of Summary Judgment in Plaintiff's Favor………………………………...........................7

      2.    The Record Evidence Confirms that Plaintiff's Loss was Fortuitous, and Plaintiff has Satisfied his Initial and "Simple" Burden as to Same………………………...7

            a.    "Extreme" Rainfall and Weather Conditions from Hurricane Michael are Sufficient to Satisfy Plaintiff's "Light" Burden……………………………9

            b.    Defendant has not Established that Plaintiff's Damages are Excluded…...12

      3.    Plaintiff Proved his Loss was Fortuitous and Defendant Cannot Establish that all of Plaintiff's Damages are Excluded………...............................................13

      4.    Plaintiff's Vessel was Seaworthy at the Inception of the Subject Policy…………14

      5.    Defendant Breached its Duty to "Adjust" Plaintiff's Loss and Claim…………...18

IV.  PLAINTIFF'S TORT AND ESTOPPEL CLAIMS SURVIVE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT …………………….....................................................18

      1.    Plaintiff's Well-Pled Tort and Estoppel Claims are not Barred by the "Independent Tort Doctrine"………………………………………………………………18

2.      Defendant has not met its Burden on Summary Judgment as to Plaintiff's Well-Pled Fraud and Estoppel Counts……………………………………………………19

3.      Plaintiff's Well-Pled Tort and Estoppel Claims Survive Under Maryland or Delaware Law………………………………………………………………………20

V.      PLAINTIFF'S FLORIDA LAW CLAIMS SURVIVE AS FLORIDA LAW APPLIES……………………………………….............................................................20

CONCLUSION…………………………………………………………………………..20

PBH619079.1

## <u>TABLE OF CITATIONS</u>

**<u>Cases</u>**                                                                                                               **<u>Page</u>**

*Am. Express Travel Related Servs. Co., Inc. v. Symbiont Software Group, Inc.*,
 837 So.2d 434, 435 (Fla. 3d DCA 2002)……………………………………….........18

*Archer Daniels Midland Co. v. Aon Risk Servs.*,
 No. CIV.97-2185, 2002 U.S. Dist. LEXIS 19314, 2002 WL 31185884, at *8 (D. Minn. Sept.
 27, 2002), aff'd, 356 F.3d 850 (8th Cir. 2004)………………………………………10, 12

*Axis Reinsurance Co. v. Resmondo*,
 2009 U.S. Dist. LEXIS 122778, at *16 (M.D. Fla. May 2009)…………………………........15

*Banco Nacional de Nicaragua v. Argonaut Ins. Co.*,
 681 F.2d 1337, 1340 (11th Cir. 1982)……………………………………………………...8, 14

*British & Foreign Marine Ins. Co. v. Gaunt*,
 [1921] 2 A.C. 41, 47…………………………………………………………………………...9

*Carey Canada, Inc. v. California Union Ins. Co.*,
 748 F. Supp. 8, 15 (D.D.C. 1990)……………………………………………………………...8

*Celotex Corp. v. Catrett*,
 477 317, 323 (1986)………………………………………………………………………......6

*Chartis Prop. Cas. Co. v. Inganamort*,
 2019 U.S. Dist. LEXIS 45806 (D.N.J. Mar. 20, 2019)………………………………........11, 12

*Colella v. State Farm Fire & Cas. Co.*,
 407 F. App'x 616, 622 (3d Cir. 2011)…………………………………………………….........14

*Egan v. Wash. Gen. Ins. Corp.*,
 240 So. 2d 875, 876 (Fla. 4th DCA 1970)………………………………………….......................8

*Empire Indem. Ins. Co. v. Winsett*,
 325 F. App'x 849, 851 (11th Cir. 2009)…………………………………………………….........13

*Emp'rs Ins. v. Occidental Petroleum Corp.*,
 978 F.2d 1422, 1436, n.14 (5th Cir. 1992)……………………………………………………...15

*Glaser v. Geovera Specialty Ins. Co.*,
 420 F. Supp. 3d 1287, 1293 (M.D. Fla. 2019)…………………………………………….........13

*Goodwin v. Btu Murray Insurance Agency, Inc.*,
    939 So. 2d 1098, 1103 (Fla. 5th DCA 2006)...……………………………………….......19

*Hickson Corp. v. N. Crossarm Co., Inc.*,
    357 F.3d 1256, 1259 (11th Cir. 2004)………………………………………….............6

*Hudson v. Prudential and Cas. Ins. Co.*,
    450 So.2d 565 (Fla. 2d DCA 1984)……………………………………………...........14

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
    309 F.3d 76, 84 (2d Cir. 2002)…………………….........................................................9

*Int'l Ship Repair & Marine Servs., Inc.*,
    944 F. Supp. at 893………………………………………………………………….8

*Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*,
    866 F.2d 71, 76 (3d Cir. 1989)……………………………………………8, 10, 14

*Jones v. Federated Nat'l Ins. Co.*,
    235 So. 3d 936, 941-42 (Fla. 4th DCA 2018)……………………………….......14

*Lamadrid v. Nat'l Union Fire Ins. Co.*,
    567 F. App'x 695, 699 (11th Cir. 2014)……………………………..……….7, 8

*Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co.*,
    768 F.3d 1320, 1338 (11th Cir. 2014)………………………………......................19

*Mathis v. Hanover Ins. Co.*,
    127 Ga. App. 89, 90, 192 S.E.2d 510, 511 (1972)…….…………………………15

*Morrison Grain Co. v. Utica Mutual Ins. Co.*,
    446 F. Supp. 415, 430 (M.D. Fla. 1977)……………………………………....8

*Morrison Grain Co. v. Utica Mut. Ins. Co.*,
    632 F.2d 424 (5th Cir. 1980)…………………………………..............9

*Pelican Island Property Owners Ass'n, Inc, v. Murphy*,
    554 So. 2d 1179, 1181 (Fla. 2d DCA 1989)…………………………………......19

*Pitts Sales, Inc. v. King World Prods., Inc.*,
    383 F. Supp. 2d 1354 (S.D. Fla. 2005)…………………………..........................19

*Pruco Life Ins. Co. v. Brasner*,
    2011 WL 2669651, at *7 (S.D. Fla. 2011)……………………..............................19

PBH619079.1

*Sebo v American Home Assurance Company, Inc.*,
    208 So. 3d 694, 700 (Fla. 2016)……………………………………………………………14

*State Farm Fire and Cas. Co. v. Hackendorn*,
    605 A.2d 3, 7 (Del. Super. 1991)……………………………………….............................8

*Trexler Lumber Co. v. Allemannia Fire Ins. Co. of Pittsburgh*,
    289 Pa. 13, 136 A. 856, 858 (Pa. 1927)…………………………………………….....14

*U.S. v. Four Parcels of Real Property*,
    941 F.2d 1428, 1437 (11th Cir. 1991)……………………………………..................6

*Washington Sports and Entm't, Inc. v. Untied Costal Ins. Co.*,
    7 F. Supp. 2d 1, 7 (D.D.C. 1998)………………………………………………………8

*Wilburn Boat Co. v. Fireman's Fund Insurance Co.*,
    348 U.S. 310, 313, 75 S. Ct. 368, 99 L. Ed. 337 (1955)…………….......................7

*Withrow v. Spears*,
    967 F. Supp. 2d 982, 1000 (D. Del. 2013)…………………………………………18

**Statutes**

28 U.S.C. § 1332………………………………………………………………………..5

DEL. CODE ANN. tit. 18, § 902-1.2.1.5, 6, 7 & 8……………………………...............1

Fla. Stat. § 627.70131(5)(a)………………………………………………………………1

Fla. Stat. § 627.7142……………………………………......................................................1

**Other Authorities**

5A Appleman 85, § 3273……………………………………………………………15

45 CJS 561, Insurance, § 652……………………………………………………………..15

Brian Lada, *Live updates: Michael shifts over Virginia, Delmarva Peninsula with windswept rain; Flash flood emergencies issued*, YAHOO (Oct. 11, 2018), https://www.yahoo.com/news/live-updates-6-dead-over-230919161.html (last visited Jul. 28, 2021)…………………………………………………………………………..10

Marilyn Raia, *Seaworthiness Defined*, PACIFIC MARITIME MAGAZINE (Nov. 2009)……………..15

## NATURE AND STAGE OF THE PROCEEDINGS

This case is a dispute between Plaintiff JAMES STOKES and his insurer, Defendant MARKEL AMERICAN INSURANCE COMPANY due to Defendant's refusal to indemnify Plaintiff following a sudden, accidental, and fortuitous loss to his fully-insured, 2017 Midnight Express 39' Open with three (3) Seven Marine 627s engines (the "Vessel") during the extreme rain and weather conditions of Hurricane Michael.

Plaintiff has filed his Motion for Summary Judgment and Brief in Support,[1] requesting summary judgment for Plaintiff on the issue of coverage. Pl.'s Mot., D.I.s 107, 108. Plaintiff's Motion to Strike and/or Preclude Testimony by Defendant's Experts, Robert K. Taylor and Matthew Schmahl (with supporting briefs), D.I.s 98, 99, 102, 103,[2] is pending before the Court.

On August 19, 2021—subsequent to the filing of Plaintiff's Motion for Summary Judgment and 1,043 days after the October 11, 2018 loss—Defendant issued its long overdue coverage determination, improperly "disclaiming" coverage. Plaintiff's Motion for Summary Judgment could not address the recent "formal" denial of coverage as, under the very unusual facts of this case, Defendant had never previously provided Plaintiff with an actual coverage determination.[3]

## SUMMARY OF THE ARGUMENTS

1.  Defendant is not entitled to summary judgment on any of Plaintiff's claims. Defendant's burden is not met and, at a minimum, genuine issues of disputed material fact exist.

---

[1] The Court granted the parties' proposed stipulations to extend dispositive motion briefing schedules but denied the parties' request to extend page limits. *See* Order, D.I. 97.

[2] Plaintiff has filed a *Daubert* challenge to preclude the testimony of Defendant's hired experts due to unreliable methodologies and tests employed, *inter alia*. **Importantly, Defendant did not file a *Daubert* challenge of its own, waiving its ability to challenge Plaintiff's experts.**

[3] Under several state laws, an insurer has ninety (90) days to issue a coverage determination. *See* Fla. Stat. § 627.70131(5)(a) (2019); *see also* Fla. Stat. § 627.7142 (2019); DEL. CODE ANN. tit. 18, § 902-1.2.1.5, 6, 7 & 8. Defendant's purported coverage denial was untimely by any measure.

    a.  Plaintiff has established with record evidence that he suffered a fortuitous hurricane loss and that Defendant's argument to the contrary is incorrect.

    b.  Defendant has not established with sufficient record evidence, and Plaintiff disputes, that any alleged "design defect" was a cause of Plaintiff's fortuitous hurricane loss. The policy does not contain "anti-concurrent cause" language or provisions, rendering any "design defect" exclusion inapplicable in these circumstances. Defendant cannot prove that all of Plaintiff's damages are excluded.

    c.  Defendant has not established with sufficient record evidence, and Plaintiff disputes, that the Vessel was "unseaworthy" at the inception of the Parties' insuring agreement. Plaintiff's loss is covered under the terms of the policy.

2.    Defendant is not entitled to judgment as a matter of law and relies upon disputed facts.

3.    Defendant's Motion offers an incorrect analysis of pending choice-of-law issues. Florida law continues to apply in the instant action.

4.    Plaintiff's well-pled causes of action are not barred by the "independent tort doctrine" and must survive.

5.    The Court should disregard Defendant's untimely attempts to cast aspersions upon Plaintiff's experts. Defendant did not file a *Daubert* Motion and waived any expert challenge.

## <u>COUNTERSTATEMENT OF FACTS</u>[4]

1.    Plaintiff is without knowledge as to Defendant's business organization.

---

[4] Defendant filed a five-page "Concise Statement of Undisputed Facts" under a separate cover from its Motion for Summary Judgment (akin to an exhibit). D.I. 104-2. Defendant did not seek leave of Court to extend the twenty-page limit for dispositive motions. Also, the Court denied the parties' joint proposed stipulation for an extended page-limit. D.I. 97. Plaintiff respectfully requests that Defendant's over-the-limit "Concise Statement of Undisputed Facts" be disregarded by the Court, and that Defendant's Motion be denied on the basis of this violation alone.

2

2.      Plaintiff's Vessel was fully insured by Defendant via an "all-risk," agreed $680,000 value, policy for the period October 20, 2017 to October 20, 2018, bearing policy number MHP361698, effective and endorsed June 1, 2018. See Policy, of record at D.I. 108-2. The 2016 policy period is not at issue.

3.      It is undisputed that Defendant agreed to issue Plaintiff an "all risks" policy. *Id.* It is undisputed that the Policy does not have any "anti-concurrent cause" language or provision. *Id.*

4.      Plaintiff disputes that the policy was "issued and delivered" in the District of Columbia and incorporates by reference Plaintiff's Response to Defendant's Choice of Law Motion. Pl.'s Response, Choice of Law, D.I. 95, pp. 4-6, 10-12 of 27; *see also* Decl. Stokes, ¶¶ 16-17, of record at D.I. 36-1.

5.      Defendant and Plaintiff agreed to coverage on four separate occasions: in 2016, 2017, 2018 (endorsed), and again in 2018. Despite Defendant's care, custody, and control of Plaintiff's Vessel, Plaintiff was forced to pay additional amounts to Defendant for coverage after the loss.

6.      The all-risks Policy speaks for itself. Plaintiff and Plaintiff's experts dispute that any "seaworthiness" issues ever existed, as evidenced by Defendant and Plaintiff's several agreements to enter into subsequent insurance contracts, *see* Def.'s Ex. 2, of record at D.I. 105-4; Plaintiff's continued use of the Vessel with family, without issue, and within weeks of the loss; and Plaintiff's experts' opinions, *inter alia*. See Expert Report of Charles M. Stephens, attached hereto as **Exhibit "A;"** Expert Report of Drew B. Hains, P.E., attached hereto as **Exhibit "B."**[5]

7.      The all-risks Policy speaks for itself. It cannot be reasonably disputed that Plaintiff

---

[5] Plaintiff attaches as exhibits Plaintiff's experts' reports for ease of reference, and requests that the confidential materials of Plaintiff's experts, improperly filed by Defendant, be stricken from the record. *Infra* note 14.

sustained a "sudden accidental direct physical loss or damage to the insured watercraft," a covered loss under the policy. Policy, p. 8 of 21, of record at D.I. 108-2.

8.    The all-risks Policy speaks for itself. Defendant has failed to prove the applicability of any "manufacturer's defect or design defects" exclusion. See Stephens Report, **Ex. "A;"** Hains Report, **Ex. "B."**

9.    On October 11, 2018, Plaintiff's Vessel sank during the extreme rains, winds, and weather conditions of Hurricane Michael. Plaintiff's Vessel was in her slip in Delaware in compliance with the Policy's hurricane season navigational limits. See Policy, of record at D.I 108-2. It is undisputed that the loss was due to no fault of Mr. Stokes.

10.    It is undisputed that Plaintiff immediately and timely filed a claim with Defendant and was assigned a claim number. See Notice, of record at D.I. 108-3.

11.    Plaintiff does not dispute that Defendant hired Mr. Jonathan K. Klopman to survey the Vessel post-loss. It is further undisputed that Defendant and Defendant's surveyor confirmed the "extreme" torrential rains of Hurricane Michael. Mr. Klopman reported that "[a] thunderstorm passed through the marina between 11:00PM and midnight. The total rainfall for this time period was 7.29 inches. **This is an extreme amount of rainfall by any measure**." See Klopman Report, p. 4 of 21, of record at 108-5.

12.    Plaintiff does not dispute that Defendant authored and sent a "reservation of rights" letter. See Def.'s Correspondence, p. 2, of record at D.I. 108-6. It is further undisputed that Defendant did not issue a "formal" coverage determination, Corporate Representative Depo, pp. 160:24-25; 187:18-25, of record at 108-1, until 1,043 days after the loss.

13.    It is undisputed that Plaintiff initiated his action against Defendant in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

PBH619079.1

14.     It is undisputed that Defendant removed the instant action "at law" pursuant to 28 U.S.C. § 1332 diversity jurisdiction. See Notice of Removal, of record at D.I. 1.

15.     It is undisputed that the instant case was transferred to the U.S. District Court for the District of Delaware. *See* Order, D.I. 55. Choice-of-law has not yet been determined.

16.     A Motion for Choice of Law is pending, to which Plaintiff filed his Answering Brief [D.I. 95]. Plaintiff disputes Defendant's choice-of-law analysis.

17.     Plaintiff retained Mr. Charles M. Stephens, Mr. Drew B. Hains, P.E. [6], Mr. Kevin Brinson, PhD(c), and Davis Engineering, LLC as experts in this matter.

18.     Plaintiff and his experts dispute the opinions offered by Defendant's expert, Mr. Taylor. Pl.'s *Daubert* Mot., D.I. 99; Hains Report, **Ex. "B,"** Stephens Report, **Ex. "A."**

19.     Plaintiff and his experts dispute the opinions offered by Mr. Taylor. *Id.* Plaintiff notes that Mr. Stephens and Mr. Taylor's reports were served on the same day.

20.     Plaintiff and his experts dispute the opinions offered by Mr. Taylor[7], including as to standards. Hains Report, **Ex. "B,"** Stephens Report, Ex. **"A."** Mr. Taylor admitted that a vessel need not be built to either standard. Taylor Depo, p. 18:2-16, of record at D.I 105-10.

21.     Plaintiff and his experts dispute Defendant's statements as to the specific "ABYC standards" cited, and Plaintiff refers the Court to Mr. Hains, P.E.'s report. **Ex. "B."**

22.     Plaintiff and his experts dispute Defendant's statements as to the specific "ABYC standards" cited, and Plaintiff refers the Court to Mr. Hains, P.E.'s report. *Id.*

23.     Plaintiff disputes that "wind did not play a significant part in causing this loss," *see* Stephens Report, **Ex. "A,"** and Defendant has provided inadequate support or evidence for this

---

[6] Notably, Defendant's Motion does not address the substance of Mr. Hains, P.E.'s report.
[7] See Hains Report, **Ex. "B;"** Stephens Report, **Ex. "A,"** *inter alia*.

assertion. Plaintiff disputes Defendant's statement that the weather conditions and "extreme" rain from a hurricane equate to "calm waters." *See infra*.

24.     Plaintiff disputes that Plaintiff's Vessel was the only boat in the area that suffered "such a degree of damage." Defendant relies upon inadequate support or evidence for its assertion.

25.     Plaintiff disputes Defendant's attempt to misrepresent Mr. Stephens' report. Plaintiff directs the Court to Plaintiff's *Daubert* Motion, D.I. 99, and Mr. Hains, P.E.'s report, **Ex. "B,"** which contradict the opinions of Defendant's expert(s).

26.     Plaintiff disputes Defendant's experts' opinions. *Supra*, ¶ 25.

## ARGUMENT

Defendant has not properly analyzed or carried its burden on summary judgment.

## I.   DEFENDANT FAILED TO CARRY ITS BURDEN ON SUMMARY JUDGMENT AND FAILED TO ADEQUATELY SUPPORT ITS MOTION

"The moving party bears 'the initial responsibility of informing the ... [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 317, 323 (1986)).

Simply stated, Defendant has failed to show that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004). The "facts" relied upon by Defendant do not demonstrate the absence of genuine issues of material fact. Additionally, Defendant's proffered evidence does not satisfy the standard on summary judgment.

## II.    FLORIDA LAW APPLIES TO "THE INTERPRETATION OF THE INSURANCE POLICY"

Choice-of-law is fully briefed and awaiting ruling. Plaintiff's Brief [D.I. 95] outlines a more "in-depth" choice-of-law analysis. *See Lamadrid v. Nat'l Union Fire Ins. Co.*, 567 F. App'x 695, 699 (11th Cir. 2014); *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S. Ct. 368, 99 L. Ed. 337 (1955). "The Supreme Court held in *Wilburn Boat Co.* that in the absence of a controlling rule of federal maritime law, the interpretation or construction of a marine insurance contract is to be determined according to state law," *Lamadrid*, 567 F. App'x at 699, here, Florida law. Defendant's Motion fails to identify any "controlling rule of federal maritime law" in its cursory choice-of-law analysis or assertions. There may also be situations where Florida law and maritime law are not materially different. *Id.* at 700 ("Notwithstanding the analytical approach outlined in *Wilburn Boat Co.* and its progeny[,]…we need not decide this issue today, as our precedent makes clear that Florida law and federal maritime law are not materially different.").

## III.    DEFENDANT BREACHED THE POLICY OF INSURANCE AND ALL OF PLAINTIFF'S WELL-PLED CLAIMS MUST SURVIVE

### 1.    Defendant Breached the Policy and Plaintiff is entitled to the Entry of Summary Judgment in Plaintiff's Favor

Plaintiff disagrees with Defendant's self-serving conclusion that it "did not Breach the Policy." Defendant's Motion relies on the unsupported assumption that federal admiralty law applies to Plaintiff's Breach of Contract action, without identifying adequate factual or legal support for same. *See* Def.'s Mot, D.I. 105, p. 12 of 27.

### 2.    The Record Evidence Confirms that Plaintiff's Loss was Fortuitous, and Plaintiff has Satisfied his Initial and "Simple" Burden as to Same

Plaintiff incorporates by reference and refers the Court to Plaintiff's Motion for Summary Judgment [D.I. 108] which outlines the undisputed facts on record that establish Plaintiff's

hurricane loss was fortuitous; however, Defendant attempts to make the incorrect and argument that loss was "not fortuitous." *See* Def.'s Mot., D.I. 105, p. 13 of 27.[8] When analyzing "fortuity," maritime and Florida law "are not materially different." *Lamadrid*, 567 F. App'x at 700.



Importantly, the "**burden of demonstrating fortuity is not a particularly onerous one**." *Id.* at 701 (emphasis added) (citing *Morrison Grain Co. v. Utica Mutual Ins. Co.*, 446 F. Supp. 415, 430 (M.D. Fla. 1977); *Int'l Ship Repair & Marine Servs., Inc.*, 944 F. Supp. at 893 ("[T]he burden of demonstrating a fortuitous event is not an onerous one."); *Egan v. Wash. Gen. Ins. Corp.*, 240 So. 2d 875, 876 (Fla. 4th DCA 1970) ("Plaintiff's burden of proof under such a policy is a light one: to make a prima facie case for recovery, he must show only that a loss has occurred.")).[9] In recognition of this "light" and "not particularly onerous" burden, "courts which have considered

---

[8] Notably, although it is uncontested that a named storm passed through Delaware and the surrounding areas, Defendant's Motion makes no mention of the storm. *See generally* Def.'s Mot., D.I. 105. Plaintiff respectfully requests that the Court take judicial notice that Hurricane Michael passed through Delaware on or about October 11, 2018—the date of Plaintiff's Vessel loss.

[9] *Banco Nacional de Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982); *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 76 (3d Cir. 1989). Upon meeting this "simple" burden, the burden shifts back to the insurer to prove that the claims fall under an applicable policy exclusion. *See, e.g.*, *State Farm Fire and Cas. Co. v. Hackendorn*, 605 A.2d 3, 7 (Del. Super. 1991); *Washington Sports and Entm't, Inc. v. Untied Costal Ins. Co.*, 7 F. Supp. 2d 1, 7 (D.D.C. 1998) (citing *Carey Canada, Inc. v. California Union Ins. Co.*, 748 F. Supp. 8, 15 (D.D.C. 1990)).

the question have rejected the notion that the insured must show the precise cause of loss to demonstrate fortuity." *Morrison Grain Co.*, 632 F.2d at 431; *see also Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 84 (2d Cir. 2002) (noting that insured "needs only to show a fortuitous loss; it need not explain the precise cause of the loss"); *British & Foreign Marine Ins. Co. v. Gaunt*, [1921] 2 A.C. 41, 47 ("[Insured] is not bound to go further and prove the exact nature of the accident or casualty which, in fact, occasioned his loss.").

### a. "Extreme" Rainfall and Weather Conditions from Hurricane Michael are Sufficient to Satisfy Plaintiff's "Light" Burden

It is undisputed that the subject policy is an "all-risks" insurance contract. See Policy, of record at D.I 108-2. The facts on record prove that Plaintiff's hurricane loss was fortuitous.[10] Defendant cannot reasonably contest that Plaintiff's loss was fortuitous.[11] Defendant's position is futile. The incontrovertible facts on record, including statements from Defendant and Defendant's employees and surveyor(s), establish that Plaintiff's loss was a fortuitous and accidental event.

It cannot be reasonably disputed that the subject loss occurred "fortuitously" (by chance) due to torrential and "extreme" rains and weather associated with Hurricane Michael. Hurricane Michael was an extremely devastating and powerful storm that affected Delaware and resulted in "[f]lash flood warnings cover[ing] nearly the entire state of Delaware, as well as southern New

---

[10] Defendant's Motion assumes that Plaintiff "may attempt to rely upon the opinions of Mr. Charles Stephens that the loss was fortuitous." Def.'s Mot., D.I. 105, pp. 13-14 of 27. The facts on record are so clear that Plaintiff's loss was fortuitous that Plaintiff relies upon Stephens' opinions and Plaintiff's other experts (including meteorologist Mr. Brinson, PhD(c)), along with the testimony and opinions of Defendant's Corporate Representative and Defendant's adjusters and surveyors to establish the fortuitous nature of Plaintiff's loss. *See* Pl.'s Mot, D.I.s 108, pp. 16-19 of 26.

[11] Defendant's brief, at footnote 11, states that it assumed which law applies to the instant dispute, despite the Court not issuing ruling upon choice-of-law issues. *See* Def.'s Mot., n. 11. Plaintiff disputes Defendant's analysis and objects to Defendant's purported reservation of rights "to move for further briefing should the Court decide that different law governs." *Id.*

Jersey and eastern Maryland."[12] Defendant's post-loss inspector, Mr. Klopman, confirmed that a severe "thunderstorm passed through the marina between 11:00PM and midnight. The total rainfall for this time period was 7.29 inches. **This is an extreme amount of rainfall by any measure**." See Klopman Report, pp. 4-5, of record at D.I 108-5 (emphasis added). Defendant's Corporate Representative testified under oath that Defendant agreed with Mr. Klopman as to the "extreme" amount of rainfall. Corporate Representative Depo, p. 146:5-25, of record at 108-1. Defendant's claims adjuster confirmed that he "would not say that's a normal amount of rain." Evenson Depo, p. 51:3-13, 51:15, of record at 108-4 (Mr. Evenson: "That's an excessive amount of rain").

It cannot be reasonably disputed that "excessive amount[s] of rain," *id.*, and the extreme weather from Hurricane Michael caused Plaintiff's Vessel to sink. *See Intermetal Mexicana, S.A. v. Ins. Co. of N Am.*, 866 F.2d 71, 77 (3d Cir. 1989) (The "burden of demonstrating fortuity is not a particularly onerous one."). "[H]eavy rainfall is a fortuitous event for purposes of recovery under an all-risk policy." *Archer Daniels Midland Co. v. Aon Risk Servs.*, 2002 U.S. Dist. LEXIS 19314, 2002 WL 31185884, at *8 (D. Minn. Sept. 27, 2002), *aff'd*, 356 F.3d 850 (8th Cir. 2004).

The record is replete with evidence of "extreme" weather, wind, and heavy rainfall, including evidence proffered from both parties and publicly available evidence. *See* Klopman Report, pp. 4-5, of record at 108-5 (showing significant rainfall within a matter of minutes). Plaintiff retained an expert meteorologist, Mr. Kevin R. Brinson, PhD(c), the director of the Delaware Environmental Observing System ("DEOS") and a Delaware Associate State Climatologist with the Office of the Delaware State Climatologist, who confirmed the extensive and historic rainfall associated with Hurricane Michael, and provided local weather station rain

---

[12] Brian Lada, *Live updates: Michael shifts over Virginia, Delmarva Peninsula with windswept rain; Flash flood emergencies issued*, Yahoo (Oct. 11, 2018), https://www.yahoo.com/news/live-updates-6-dead-over-230919161.html (last visited Jul. 28, 2021).

collection datasets, confirming hurricane conditions and "extreme" rainfall in a short period of time. See Delaware Rain Datasets, of record at 108-7 (rain measurements in 5-inch increments).[13] Expert Stephens' opinion further confirms the fortuitous nature of the hurricane loss, examining the meteorological data, historic rainfall, and contributing weather factors such as wind and windswept debris, *inter alia*. Stephens Report, **Ex. "A."**

Defendant's attempt to cast aspersions upon Plaintiff's Expert, Mr. Charles M. Stephens, via the filing of Mr. Stephens' entire expert file as an exhibit, *see* Def.'s "Exhibit 7," D.I.s 106, 106-1,[14] is inappropriate and improper. *See* Fed. R. Civ. P. 5.2. Mr. Stephens' expert file, inappropriately placed into the public record by Defendant, has no bearing on or connection to Defendant's motion.

Defendant also attempts to cast aspersions upon Mr. Stephens by relying upon the inapposite *Chartis Prop. Cas. Co. v. Inganamort*, 2019 U.S. Dist. LEXIS 45806 (D.N.J. Mar. 20, 2019). Completely dissimilar to the instant case, the court in *Chartis* found that the defendant-insureds did not present any rainfall data for the court to find that south Florida rainfall was "heavy." *Id.* at *12-13 ("For a rainfall to be 'heavy' in south Florida such that it would implicate the "fortuitous loss" rule, there must be sufficient evidence, likely from either meteorological data or publicly available reports, as to the rain's severity."). In this case, all such data, and more, has

---

[13] Defendant's motion is silent as to Plaintiff's Expert meteorologist, Mr. Brinson, PhD(c), and the weather datasets compiled. *See generally* Def.'s Mot., D.I. 105.

[14] Plaintiff produced Mr. Stephens' expert file in compliance with Court Order as to same. *See* Oral Order, D.I. 92. Plaintiff demands that Defendant immediately strike or redact from the record "Exhibit 7," [D.I.s 106, 106-1, starting at page 107] which contains information irrelevant to Defendant's motion and not part of Mr. Stephens' written report, including flight and hotel expenses, multiple payment drafts with unredacted account numbers and addresses, tax identification numbers, and other identifying information.

been provided to the Court by way of a meteorologist, indisputably satisfying Plaintiff's initial burden. *See supra*.

Although *Chartis* did not concern a hurricane loss, as here, the opinion noted that "'[c]ourts have held that heavy rainfall is a fortuitous event for purposes of recovery under an all-risk policy.'" *Id.* at *8 (citing *Archer Daniels Midland Co. v. Aon Risk Servs.*, 2002 U.S. Dist. LEXIS 19314, 2002 WL 31185884, at *8 (D. Minn. Sept. 27, 2002), *aff'd*, 356 F.3d 850 (8th Cir. 2004)).

### b. Defendant has not Established that Plaintiff's Damages are Excluded

Defendant has no legitimate "coverage defenses," and Defendant cannot meet its burden of proving that Plaintiff's damages are excluded under the "all risks" policy of insurance. The subject policy does not contain "anti-concurrent cause" language, see Policy, of record at 108-2, rendering any conceived coverage defense unviable, as it cannot be reasonably disputed that hurricane conditions caused Plaintiff's fortuitous Vessel loss. Defendant's Motion again fails to identify any "controlling rule of federal maritime law" in its cursory analysis on choice-of-law as to causation. *Arguendo*, even if Defendant contends that a "design defect" was a contributing factor, the "cause which 'rendered the loss inevitable'" *see* Def.'s Mot., at 16 of 27, was indisputably the "extreme" rain and weather from Hurricane Michael.

Plaintiff disputes the opinion of Mr. Taylor, erroneously relied upon by Defendant to offer a novel "design defect"[15] exclusion/argument. *See* Def.'s Mot., D.I. 105, p. 15 of 27. Plaintiff retained naval architect Mr. Drew B. Hains, P.E. to rebut the erroneous position taken by Mr. Taylor. Hains Report, **Ex. "B."** Confusingly, Defendant's Motion expects Mr. Stephens' report to "dispute" or "address" all the contentions in Mr. Taylor's report, *see* Def.'s Mot., p. 17 of 27,

---

[15] Upon information and belief, Defendant contacted the Vessel's manufacturer and determined that no subrogation action was viable, as there is no plausible manufacturing or design defect.

without recognizing that both reports were served on the same day. Defendant points to various standards, including "ABYC" and "ISO" but fails to note that Mr. Taylor testified that boat manufacturers are not required to build to "ABYC" or "ISO" standards. Taylor Depo, p. 18:2-15, of record at D.I. 105-10. At a bare minimum, Defendant relies upon clearly disputed contentions[16] to support its inapplicable "design defect" position. Hains Report, **Ex. "B,"** Stephens Report, **Ex. "A."**

3. **Plaintiff Proved his Loss was Fortuitous and Defendant Cannot Establish that all of Plaintiff's Damages are Excluded**

Defendant's design defect "exclusion" is both disputed and of no consequence due to the policy's lack of "anti-concurrent cause" (sometimes referred to as "efficient proximate cause") language or provisions. *Empire Indem. Ins. Co. v. Winsett*, 325 F. App'x 849, 851 (11th Cir. 2009) (explaining efficient proximate cause doctrine as follows: "The efficient proximate cause is 'the one that sets others in motion.' If the efficient proximate cause is covered, then the claim for damages will be covered even if the other causes are not covered."); *Glaser v. Geovera Specialty Ins. Co.*, 420 F. Supp. 3d 1287, 1293 (M.D. Fla. 2019). The "concurrent causation" or "efficient proximate cause" doctrine, which holds that "when there are two . . . or more causes of loss, the

---

[16] Defendant incorrectly claims that "Mr. Stephens' report agrees with Mr. Taylor's 'description and statements [in his report] as to the amount of rain.'" Defendant is quite mistaken. The full statement in Mr. Stephens' report is in reference to *Mr. Klopman's* initial survey [not Mr. Taylor's expert report served on the same day as Mr. Stephens' expert report]:

> I [expert Stephens] take issue with some of Mr. Klopman's initial survey and report as I find that the dewatering systems of the vessel were adequate for their intended purposes and would have kept the vessel afloat, but for the fortuitous event of a hurricane and the winds and rains associated with this event. Although **I agree with the description and statements as to the amount of rain** and that the marine growth was not a cause of loss, this report [Mr. Klopman's] seems to be based on a number of incorrect premises.

Stephens Report, **Ex. "A,"** p. 2 (emphasis added).

policyholder's claim is covered as long as the immediate or proximate cause of loss is covered by the policy." *Colella v. State Farm Fire & Cas. Co.*, 407 F. App'x 616, 622 (3d Cir. 2011) (citing *Trexler Lumber Co. v. Allemannia Fire Ins. Co. of Pittsburgh*, 289 Pa. 13, 136 A. 856, 858 (Pa. 1927)); *Sebo v American Home Assurance Company, Inc.*, 208 So. 3d 694, 700 (Fla. 2016) (hurricane rain and construction defects acted in concert to create the destruction of plaintiff's home, but because the policy did not contract around the concurrent cause doctrine, "the plain language of the policy does not preclude recovery.").

Defendant has the burden to prove that all of Plaintiff's damages are excluded from coverage—a burden that cannot be met because excessive rainfall and hurricane conditions were at the very least a cause of loss.[17] Even if Defendant contends that there were problems with the design of the Vessel, hurricane weather and "extreme" rainfall are the concurrent causes that "rendered the loss inevitable." *See* Def.'s Mot., at 16 of 27. Without "anti-concurrent cause" language in the Policy, as here, Defendant cannot satisfy its burden.

### 4.    Plaintiff's Vessel was Seaworthy at the Inception of the Subject Policy

Plaintiff's Vessel was seaworthy from the inception of the policy, and Plaintiff testified that he did not experience any issues with his Vessel under normal, "non-hurricane" conditions for the two plus years he had owned the Vessel prior to the loss. Stephens Report, **Ex. "A,"** p. 1. Defendant contends that "[a]n express warranty of seaworthiness indicates that the Vessel is 'reasonably fit for the intended purpose.'" Def.'s Mot., p. 19 of 27. Mr. Stokes' Vessel, a pleasure

---

[17] *Banco Nacional de Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982); *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 76 (3d Cir. 1989); *see also Hudson v. Prudential and Cas. Ins. Co.*, 450 So.2d 565 (Fla. 2d DCA 1984); *Jones v. Federated Nat'l Ins. Co.*, 43 Fla. L. Weekly D164 (Fla. 4th DCA 2018).

craft[18], was reasonably fit for its intended purpose, as Plaintiff was a frequent and active boater, and had used the Vessel within weeks of the loss with no issue. Stephens Report, **Ex. "A,"** p. 1.

The insurer bears the burden of establishing that a vessel was unseaworthy at the moment the policy attached. *Axis Reinsurance Co. v. Resmondo*, 2009 U.S. Dist. LEXIS 122778, at *16 (M.D. Fla. May 2009) (citing *Emp'rs Ins. v. Occidental Petroleum Corp.*, 978 F.2d 1422, 1436, n.14 (5th Cir. 1992)). Defendant has not and cannot point to any undisputed material fact that establishes that Plaintiff's Vessel, which Plaintiff had owned (and Defendant had willingly insured) for over two years, was "unseaworthy" at the "moment the policy attached." *See id.* Defendant's adjuster, Mr. Evenson, the drafter of Defendant's "reservation" letter, conceded under oath that he "did not have any evidence that it [the Vessel] would not be seaworthy." Evenson Depo, p. 95:9-10, of record at 108-4. As noted in the warranty on which Defendant relies, seaworthiness is warranted "at the inception" of the insuring agreement. Plaintiff's Vessel was insured by Defendant MARKEL for multiple years without incident or issue. Stephens Report, **Ex. "A,"** p. 1. The excerpted deposition testimony of Mr. Stokes cited by Defendant, *see* D.I. 105-11, does not support a position that the Vessel was unseaworthy from the inception of the insuring

---

[18] "The concepts of seaworthiness and its opposite, unseaworthiness, can be found in many aspects of maritime law. Despite their pervasive presence, the concepts are not easily defined. A vessel that is seaworthy in one circumstance may not be seaworthy in another. Moreover, what was considered a seaworthy vessel a decade ago may no longer be so because of technological advances. Over the years, the courts have fashioned various definitions of seaworthiness." Marilyn Raia, *Seaworthiness Defined*, PACIFIC MARITIME MAGAZINE (Nov. 2009). "Seaworthiness means the ability to withstand the ordinary stress of wind, wave and weather which the vessel might normally be expected to encounter in other words, to stay afloat in the absence of abnormal conditions. 5A Appleman 85, § 3273. The definition is relative, and includes the concepts of 'lakeworthy' and 'portworthy.' 45 CJS 561, Insurance, § 652." *Mathis v. Hanover Ins. Co.*, 127 Ga. App. 89, 90, 192 S.E.2d 510, 511 (1972) (examining historical contexts and declining to apply seaworthiness to pleasure crafts, "the new owner of a pleasure craft [] calls his agent to arrange for coverage. … He would surely equate the transaction with adding another automobile or house, and he would almost certainly expect that if the boat sank through no fault of his own, it would be covered.").

agreement.[19] *See also* Corporate Representative Depo, pp. 152:8-159:5 (testimony as to Defendant's unsubstantiated and contested "seaworthiness" argument) of record at 108-1.

Shockingly, Defendant contends that "it should be undisputed" that the Vessel was unseaworthy as a matter of law, because the "equipment failed under normal use while it was berthed in calm waters." Def.'s Mot., p. 20 of 27. Such a flatly incorrect characterization of the facts illustrates Defendant's "grasping-for-straws" effort to avoid coverage. The extreme and historic hurricane conditions surrounding the loss were not "normal use" conditions or "calm waters." Defendant also does not support its statement that "there is no evidence on the record that any other vessels moored at the marina sank that evening," Def.'s Mot, p. 21 of 27.

Plaintiff disagrees with and disputes Defendant's use of Mr. Taylor's testimony to support its "seaworthiness" argument. Plaintiff refers the Court to and incorporates by reference Plaintiff's Motion to Strike and/or Preclude Testimony by Defendant's Experts, Robert K. Taylor and Matthew Schamal, D.I.s 98, 99. Plaintiff and his experts have controverted the opinions of Defendant's experts and Plaintiff has moved to strike the expert report and testimony of Mr. Robert K. Taylor and/or prohibit testimony and opinions contained in same, as Mr. Taylor's report and opinions incorporate unreliable testing and suppositions. Specifically, the "tests" conducted by Mr. Taylor—namely a "flow test" and a "float test"—are not based upon reliable, scientific methods, cannot be peer reviewed or confirmed, and do not address potential errors rates of the techniques utilized, but instead feature inferences stacked upon inferences to reverse-engineer an unreliable

---

[19] Mr. Stokes' Vessel is a high value, luxury vessel, insured for over $680,000. Defendant is a major underwriter of recreational marine insurance, with numerous surveyors and consultants at its disposal, and had ample opportunity to inspect Mr. Stokes' Vessel prior to issuing and renewing the coverage but chose not to do so. Plaintiff owned, and Defendant insured, the Vessel since 2016 without issue.

opinion. At a bare minimum, questions of disputed fact remain, and Defendant has not met its burden of proof on summary judgment.

Defendant again attempts to cast aspersions upon Plaintiff and his timely disclosed initial and rebuttal expert(s), in light of Defendant's own failure to file a *Daubert* challenge. Plaintiff has already addressed Defendant's misplaced position. *See* Pl.'s Reply Brief, D.I. 103, Sec.II, pp. 2-4 ("Plaintiff Timely and Properly Disclosed his Initial Expert and his Rebuttal Expert"). Defendant's motion advances a mistaken notion that Plaintiff did not comply with this Court's Scheduling Order regarding expert disclosures. Def.'s Mot., D.I. 105, pp. 23 of 27. This Court's Scheduling Order indicates that for the "the party who has the initial burden of proof on the subject matter, the initial Federal Rule 26(a)(2) disclosure of expert testimony is due on or before March 15, 2021." Scheduling Order, D.I. 69, ¶ 3(f)(i). In compliance, Plaintiff timely disclosed his "initial" experts, and served the requisite expert reports and documents. Surprisingly, Defendant also disclosed its experts on March 15, 2021, previously contending that "Plaintiff and MAIC mutually served their Rule 26(a) Expert Disclosures [on March 15, 2021], as both parties bear the burden of proof on certain issues." Def.'s Response, D.I. 102, p. 6. Defendant did not provide any legal authority to support its understanding of the "initial burden on the subject matter."

On May 17, 2021, in compliance with this Court's Scheduling Order (and in an abundance of caution), Plaintiff served a "supplemental disclosure to contradict or rebut the evidence on the same matter identified by another party," identifying Mr. Hains, P.E. as Plaintiff's rebuttal/reply expert. *See* Scheduling Order, D.I. 69, ¶ 3(f)(i). In full compliance with the relevant timeframes, Plaintiff served Mr. Hains, P.E.'s "[r]eply expert[] report," on June 15, 2021. *See id.* Plaintiff complied with the Court's Scheduling Order, and Defendant strayed from the schedule.

In any event, there is no prejudice to Defendant and Defendant has not alleged otherwise. *See, e.g.*, *Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013). It is not disputed by Defendant that Mr. Hains, P.E.'s rebuttal/reply expert report is proper and is offered "to contradict or rebut the evidence on the same subject matter identified by the opposing party's expert report." *Id.* at 1001. Defendant did not timely raise any challenge to Plaintiff's initial experts or Plaintiff's rebuttal/reply expert, waiving its ability to do same and rendering Defendant's improper "challenge" in its Motion a nullity.

### 5.    Defendant Breached its Duty to "Adjust" Plaintiff's Loss and Claim

By failing or refusing to issue a coverage determination for 1,043 days, *inter alia*, Defendant failed in its duty to adjust Plaintiff's claim. Defendant's failure to timely and properly adjust Plaintiff's claim violates statute and equates to bad-faith claims handling. *Supra* note 4.

## IV.    PLAINTIFF'S TORT AND ESTOPPEL CLAIMS SURVIVE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### 1.    Plaintiff's Well-Pled Tort and Estoppel Claims are not Barred by the "Independent Tort Doctrine"

Defendant cites the so-called "independent tort doctrine," which is inapplicable to Plaintiff's well-pled counts—counts that Defendant has Answered and failed to seek relief upon previously.[20] Plaintiff has properly-pled his tort causes of action for Negligent Misrepresentation, Fraudulent Inducement, and Fraud, and these claims are not barred by the independent tort doctrine. It is well settled that if the alleged tort specifically involves acts that are "independent of any contractual breach"—known as an "independent tort"—the tort claim will not be barred. *Am. Express Travel Related Servs. Co., Inc. v. Symbiont Software Group, Inc.*, 837 So.2d 434, 435 (Fla. 3d DCA 2002). The events giving rise to the above causes of action occurred prior to the parties

---

[20] Plaintiff disagrees that District of Columbia law applies.

entering into the subject Policy and prior to the claim and lawsuit and thus are separate and independent from Defendant's breach of the contract.

> **2.     Defendant has not met its Burden on Summary Judgment as to Plaintiff's Well-Pled Fraud and Estoppel Counts**

Plaintiff sufficiently alleged and supported his estoppel cause of action (Count VI). *See* Pl. Compl., D.I. 1-1; *Goodwin v. Btu Murray Insurance Agency, Inc.*, 939 So. 2d 1098, 1103 (Fla. 5th DCA 2006) (citing *Pelican Island Property Owners Ass'n, Inc, v. Murphy*, 554 So. 2d 1179, 1181 (Fla. 2d DCA 1989).[21] The record confirms that Defendant represented that fortuitous losses would be covered under the policy of insurance, a position relied upon by Plaintiff to his detriment, and a position changed by Defendant's later positing that Plaintiff's policy is ineffectual (illusory).[22]

Plaintiff has sufficiently alleged and supported his Fraudulent Inducement (Count V), *see Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co.*, 768 F.3d 1320, 1338 (11th Cir. 2014), Fraud (Count VII), *see Pitts Sales, Inc. v. King World Prods., Inc.*, 383 F. Supp. 2d 1354 (S.D. Fla. 2005), and Negligent Misrepresentation (Count IV), *see Pruco Life Ins. Co. v. Brasner*, 2011 WL 2669651, at *7 (S.D. Fla. 2011), claims. Plaintiff has presented evidence that Defendant has treated the subject policy as illusory, as Defendant represented that fortuitous losses would be covered under the policy of insurance. Defendant's testimony confirms that Defendant has treated the Policy as illusory, due to Defendant's position on "seaworthiness." Corporate Representative Depo, pp. 152:8-159:5, of record at 108-1.

---

[21] Plaintiff maintains that Florida law applies.

[22] Defendant also maintained care, custody, and control of Plaintiff's Vessel while making payments in accordance with the terms of the policy, and later changed its position.

19

3.    **Plaintiff's Well-Pled Tort and Estoppel Claims Survive Under Maryland or Delaware Law**

Plaintiff disputes that Plaintiff's well-pled claims fail under Maryland or Delaware law. *See* Pl.'s Response, Choice of Law, D.I. 95.

## V.    PLAINTIFF'S FLORIDA LAW CLAIMS SURVIVE AS FLORIDA LAW APPLIES

As discussed extensively in Plaintiff's Response Brief to Defendant's Choice of Law Motion, *id.*, Florida law applies to both procedural and substantive aspects of this matter.[23] All claims pled pursuant to Florida law, including Willful Tortious Breach of Section 624.155, Florida Statutes (Count III), must survive. Defendant should be held accountable for its bad-faith handing of Mr. Stokes' claim, and Plaintiff's bad-faith claim will be perfected upon entry of Summary Judgment in favor of Plaintiff on the coverage issue.

## CONCLUSION

Defendant's motion for summary judgment should be denied.

Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

Date: September 13, 2021

By:   /s/ Michael B. McCauley (ID 2416)
       1223 Foulk Road
       Wilmington, DE 19803
       (302) 594-0895
       mccauley@pbh.com
       Attorneys for Plaintiff

Of counsel:
David Avellar Neblett
James M. Mahaffey III
PERRY & NEBLETT, P.A.
2550 South Bayshore Drive Suite 211
Miami, Florida 33133
david@perryneblett.com
jmahaffey@perryneblett.com

---

[23] Although already Answered by Defendant, if the Court determines, *arguendo*, that choice-of-law is different, Plaintiff requests the opportunity to amend to conform to same.

20