## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JAMES STOKES,                                          :
                                                       :    C.A. No.    1:19-cv-02014 LPS
           PLAINTIFF,                           :
                                                       :
           v.                                   :    TRIAL BY JURY OF TWELVE
                                                       :    DEMANDED
MARKEL AMERICAN INSURANCE                              :
COMPANY, a foreign corporation,                        :
                                                       :
           DEFENDANT.                           :

### DEFENDANT MARKEL AMERICAN INSURANCE COMPANY'S
### REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**WHITE AND WILLIAMS LLP**

*/s/ Timothy S. Martin*
**TIMOTHY S. MARTIN (#4578)**
**DARYLL HAWTHORNE-SEARIGHT**
**(#6520)**
Courthouse Square
600 N. King Street, Suite 800
Wilmington, DE 19801
(302) 467- 4520
Martint@whiteandwilliams.com
Counsel for Defendant,
*Markel American Insurance Company*

Dated: September 28, 2021

27810360v.1

## TABLE OF CONTENTS

PAGE

I.  ARGUMENT ...................................................................................................1

    A.  MAIC HAS MET ITS BURDEN ON SUMMARY JUDGMENT ......................1

    B.  FLORIDA LAW DOES NOT APPLY TO ANY CLAIM IN THIS ACTION .....................................................................................................1

    C.  PLAINTIFF'S BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS STILL FAIL AS A MATTER OF LAW .........................2

        1.  Plaintiff has Failed to Prove that MAIC Breached the Policy ...................2

        2.  The Record Evidence Confirms that Plaintiff's Loss was Not Fortuitous, and Plaintiff has Failed to Satisfy His Initial Burden ...............2

            a.  Rainfall is not Enough to Show that the Vessel's Submersion was Fortuitous...............................................................3

            b.  Efficient Proximate Cause is the Correct Standard for Causation........................................................................................4

            c.  The Evidence Establishes that Plaintiff's Damages are Excluded, and that Design Defects, Not Rainfall, Were the Efficient Proximate Cause of the Loss.............................................5

        3.  Plaintiff's Vessel was Unseaworthy at the Inception of the Policy ............6

        4.  MAIC Has Not Breached Any Duty to "Adjust" Plaintiff's Claim............8

    D.  PLAINTIFF'S TORT CLAIMS AND ESTOPPEL CLAIMS STILL FAIL AS A MATTER OF LAW...................................................................................9

        1.  MAIC is Entitled to Summary Judgment on Plaintiff's Tort Claims because District of Columbia Law does not Allow Plaintiffs to Concurrently Plead Tort Claims with a Breach of Contract Claim ............9

        2.  Plaintiff Has Not Met His Burden of Proof as to Any of His Claims Lying in Fraud or Estoppel .......................................................................9

        3.  Plaintiff's Claims Would Still Fail Under Maryland or Delaware Law ..........................................................................................................9

27810360v.1

E.     PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND HIS
       COMPLAINT ...................................................................................................... 10

II.    CONCLUSION ............................................................................................................. 10

27810360v.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Archer Daniels Midland Co. v. Aon Risk Servs.*,
    2002 U.S. Dist. LEXIS 19314 (D. Minn. Sep. 27, 2002) .........................................................4

*AVM Techs., LLC v. Intel Corp.*,
    2017 U.S. Dist. LEXIS 65698 (D. Del. Apr. 29, 2017) .........................................................6

*Chartis Prop. Cas. Co. v. Inganamort*,
    2019 U.S. Dist. LEXIS 45806 (D.N.J. Mar. 20, 2019), *aff'd* 953 F.3d 231 (3d
    Cir. 2020) ...........................................................................................................................4

*Cont'l Ins. Co. v. Lone Eagle Shipping (Liber.)*,
    952 F. Supp. 1046 (S.D.N.Y. 1997)....................................................................................5

*Davis v. Tillman*,
    370 So. 2d 1323 (La. Ct. App. 1979)..................................................................................4

*G&S Metal Consultatns, Inc. v. Cont'l Cas. Co.*,
    2014 U.S. Dist. LEXIS 124700 (N.D. Ind. Sep. 8, 2014).....................................................6

*Int'l Ship Repair & Marine Servs. v. St. Paul Fire & Marine Ins. Co.*,
    944 F. Supp. 886 (M.D. Fla. 1996).....................................................................................2

*Lanasa Fruit Steamship & Importing, Co. v. Univ. Ins. Co.*,
    58 S. Ct. 371 (1938)............................................................................................................5

*Lexington Ins. Co. v. Paddock Swimming Pool Co.*,
    2021 U.S. Dist. LEXIS 63259 (D.D.C. Apr. 1, 2021) ..........................................................8

*N.H. Ins. Co. v. Krilich*,
    387 F. App'x 940 (11th Cir. 2010).......................................................................................5

*One Call Prop. Servs. v. Sec. First Ins. Co.*,
    165 So. 3d 749 (Fla. Dist. Ct. App. 2015) ..........................................................................9

*Reese v. Herbert*,
    527 F.3d 1253 (11th Cir. 2008) ..........................................................................................7

*Sipowicz v. Wimble*,
    370 F. Supp. 442 (S.D.N.Y. 1974) .....................................................................................2

*St. Paul Fire & Marine Ins. Co. v. Lago Canyon*,
    2008 U.S. Dist. LEXIS 142202 (S.D. Fla. Mar. 6, 2008)...................................................4, 5

27810360v.1

*Standard Oil Co. v. U.S.*,
  340 U.S. 54 (1950) ................................................................................5

*Stokes v. Markel Am. Ins. Co.*,
  2019 U.S. Dist. LEXIS 108685 (S.D. Fla. June 28, 2019) ......................................10

*Tillery v. Hull & Co.*,
  876 F.2d 1517 (11th Cir. 1989) ................................................................5

*U.S. Fire Ins. Co. v. Cavanaugh*,
  732 F.2d 832 (11th Cir. 1984) ................................................................5

*Withrow v. Spears*,
  967 F. Supp. 2d 982 (D. Del. 2013) ................................................................8

## OTHER AUTHORITIES

Black's Law Dictionary (9th ed. 2009) ................................................................8

Fed. R. Civ. P. 26 ................................................................6-8

Fed. R. Civ. P. 56(c) ................................................................1

# I.    ARGUMENT[1]

## A.    MAIC HAS MET ITS BURDEN ON SUMMARY JUDGMENT

MAIC has provided a separate, concise statement of undisputed facts,[2] and proffered supportive evidence on the record, which demonstrates that there is "no genuine issue as to any material fact and that [MAIC] is entitled to judgment as a matter of law."[3] Plaintiff's conclusory first section stating otherwise fails to provide any evidence to the contrary.

## B.    FLORIDA LAW DOES NOT APPLY TO ANY CLAIM IN THIS ACTION

MAIC's Motion for Choice of Law is indeed fully briefed and awaiting ruling, and it flatly refutes Plaintiff's assertion that MAIC has "fail[ed] to identify 'any controlling rule of federal maritime law[.]'"[4] Rather, MAIC's choice of law briefs analyze in great detail why federal maritime law, supplemented by District of Columbia law if necessary, applies to each of Plaintiff's claims.[5] Therefore, MAIC will not waste the Court's time with further argument on this point.

---

[1] MAIC's Choice of Law motion analyzed Plaintiff's claims pursuant to Florida's choice-of-law rules and requested that this court enforce the choice of law provision in the Policy by applying federal admiralty law and District of Columbia law. The analysis in this brief was completed under the assumption that federal admiralty and District of Columbia law govern this matter. MAIC reserves the right to move for further briefing should the Court decide that different law governs.

[2] MAIC did not file a separate, concise statement of undisputed facts as a means of disregarding the Court's denial of a page extension. It filed it as a separate exhibit because it believes it to be customary in federal court. Further, a separate statement is accepted throughout DED courtrooms, even though the local rules are silent on this particular point. Instead, the local rules simply require a "concise statement of facts, with supporting references to the record, presenting the background of the questions at issue…The answering counterstatement of facts need not repeat facts recited in the opening brief[.]" Rule 7.1.3 (c)(1)(E). If MAIC was mistaken, it has no objection to Plaintiff filing its own separate statement.

[3] Fed. R. Civ. P. 56(c).

[4] MAIC's Opening Brief in Support of its Motion for Choice of Law [D.I. 87]; MAIC's Reply Brief in Support of its Motion for Choice of Law [D.I. 100]- collectively MAIC's "Briefs for COL."

[5] MAIC incorporates by reference MAIC's Opening Brief in Support of its Motion for Choice of Law [D.I. 87] and MAIC's Reply Brief in Support of its Motion for Choice of Law [D.I. 100].

### C.     PLAINTIFF'S BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS STILL FAIL AS A MATTER OF LAW

#### 1.     Plaintiff has Failed to Prove that MAIC Breached the Policy

Again, Plaintiff seeks to ignore MAIC's Briefs in support of its Motion for Choice of Law in their entirety. Rather, Plaintiff makes *ad hominem* attacks on MAIC's well supported conclusions. MAIC's position that it has not breached the policy is based on the very clear law and analysis detailed in its briefs.[6] More importantly, Plaintiff ignores the plain, clear, and unambiguous choice-of-law provision in the Policy itself, which states that the Policy "is subject to established principles and precedents of federal admiralty law of the United States of America…"[7] Plaintiff's continued attempt to ignore an express choice of law clause in the Policy, which he repeatedly renewed, is incredulous.

#### 2.     The Record Evidence Confirms that Plaintiff's Loss was Not Fortuitous, and Plaintiff has Failed to Satisfy His Initial Burden

Plaintiff has failed to meet his burden of showing that the loss was accidental or fortuitous regardless of choice-of-law, because the record does not support the assertion that the rainfall and weather conditions at the time of the loss satisfy Plaintiff's burden. Further, design defects are neither accidental nor fortuitous.[8]

---

[6] MAIC's Opening and Reply Briefs for COL [D.I. 87], at pgs. 7-12 and [D.I. 100], at pg. 2.; MAIC's Opening Brief to MSJ [D.I. 105], at § C, pages 5-17; MAIC's Answering Brief to Plaintiff's MSJ [D.I. 112], at pgs. 8-13.

[7] Ex. 6 to MAIC MSJ- Policy, at page 3.

[8] *Int'l Ship Repair & Marine Servs. v. St. Paul Fire & Marine Ins. Co*., 944 F. Supp. 886, 892-93 (M.D. Fla. 1996)("'[a] loss is not considered fortuitous if it results from an inherent defect in the object damaged, from ordinary wear and tear, or from the intentional misconduct of the insured.'"); *Sipowicz v. Wimble*, 370 F. Supp. 442, 448 (S.D.N.Y. 1974)("A loss is not occasioned by a peril of the sea when it results from the defective, deteriorated or decayed condition of the vessel or from ordinary wear and tear.").

2

a.    **Rainfall is not Enough to Show that the Vessel's Submersion was Fortuitous[9]**

Plaintiff makes much of the descriptor "extreme," but fails to connect any admissible evidence regarding "extreme" rainfall to the cause of the Vessel's ultimate submersion. "[W]hether the rainfall indicated in the data is 'extraordinary' [or 'extreme'] for purposes of this motion is a legal question."[10] MAIC anticipated that Plaintiff would rely on at least one of his own experts to support his claim that the loss was fortuitous, but instead Plaintiff's Answering Brief relies solely upon Jonathon Klopman's ("Mr. Klopman") post-loss damage survey to jump to the impermissible legal conclusion that any testimony or agreement regarding "extreme" rainfall automatically means that the loss was fortuitous.[11] This is not the law.

Plaintiff ignores all relevant context, and attempts to mislead the Court. None of MAIC's experts, representatives, or claim adjusters have testified that the rainfall was so "extreme" that it *resulted in the submersion of the Vessel*.  Indeed, although Mr. Klopman's report states the rain was "extreme," his *full and complete* statement was that "if you have one boat that—that mysteriously sinks and – and no one else sank, usually it's not an act of God.."[12] That is to say that the rainfall was seemingly only "extreme" with regard to Plaintiff's Vessel.  Plaintiff has still failed produce any evidence of another vessel sinking in the same marina during the same time period, despite having the opportunity to do so throughout the case or the four briefs he has filed. Even more significant is Mr. Klopman's testimony that the loss occurred when the storm was at tropical

---

[9] MAIC objects to the admissibility of the weather graphic on page 8 of Plaintiff's Answering Brief. Plaintiff has failed to cite the source of the graphic, and it displays no evidence specific to the relevant timeframes in this matter.
[10] *Id*., at *12.
[11] Pl.'s Opening Brief, at 9-11.
[12] Ex. 11 – Klopman Dep., at 128:25-129:2.

storm strength, not hurricane strength.[13] And Plaintiff's counsel has admitted that, at the time of the loss, the conditions were at a tropical storm level.[14] Despite Plaintiff's efforts to say that *Chartis Prop. Cas. Co. v. Inganamort* should not apply, it is directly on point. Both matters involve a loss which occurred during heavy rainfall not otherwise designated as a named hurricane, and neither instance of rainfall was enough to render the loss a fortuitous loss.[15,16] Like the rainfall in *Chartis*, the rainfall that occurred the day of the subject loss, even if considered "extreme," did not rise to the level of being so "extraordinary" that the Vessel's submersion is fortuitous as a matter of law.

For the above reasons, Plaintiff has failed to establish that the rainfall that occurred on the day the Vessel submerged was extraordinary such that the Vessel's submersion was fortuitous as a matter of law.

**b.    Efficient Proximate Cause is the Correct Standard for Causation**

Contrary to Plaintiff's unsupported categorization of the law, it is well-established law that "the theory of proximate cause is the appropriate standard to be applied to determine whether a loss is covered under a marine insurance policy and this application is consistent with general admiralty law."[17] In fact, proximate cause is applied more strictly in matters involving maritime

---

[13] Exhibit 11 to MAIC's Opening Brief – Deposition of Jonathon Klopman ("Klopman Dep."), at 65:24-66:10.

[14] Exhibit 9 to MAIC's Opening Brief - Deposition or Robert Taylor ("Taylor Dep."), at 41:6-12; Exhibit 11 to MAIC's Opening Brief –Klopman Dep., at 65:24-66:10.

[15] 2019 U.S. Dist. LEXIS 45806 (D.N.J. Mar. 20, 2019), *aff'd* 953 F.3d 231, 233 (3d Cir. 2020).

[16] Plaintiff notes that *Chartis* cited to *Archer Daniels Midland Co. v. Aon Risk Servs.*, 2002 U.S. Dist. LEXIS 19314, at *24 (D. Minn. Sep. 27, 2002) to support the assertion that heavy rainfall is a fortuitous event. However, that case does not involve maritime law or the submersion of a boat, and the decision is 17 years older than *Chartis*. Further, *Archer* cites to *Davis v. Tillman*, 370 So. 2d 1323, 1325 (La. Ct. App. 1979), which involved a rainfall of "'excessive rain to the extent of 21 inches above normal[.]'" Here, the rainfall does not nearly reach that level of excess.

[17] *St. Paul Fire & Marine Ins. Co. v. Lago Canyon*, 2008 U.S. Dist. LEXIS 142202, at *17-19 (S.D. Fla. Mar. 6, 2008).

insurance coverage.[18] Federal maritime law does not utilize a "but for" causation standard,[19] but instead "'the proximate cause is the efficient cause and not a merely incidental cause which may be nearer in time to the result.'"[20] In other words, it is the "predominant" or "determining" cause of the loss, and not simply the cause nearest to the time of loss.[21] If there could be more than one cause, the court must determine which cause "rendered the loss inevitable," in order to distinguish between the proximate cause and the remote cause.[22] Despite Plaintiff's unsupported claim otherwise, this standard applies regardless of whether the Policy includes "Anti-Concurrent Cause" language.[23]

> **c.    The Evidence Establishes that Plaintiff's Damages are Excluded, and that Design Defects, Not Rainfall, Were the Efficient Proximate Cause of the Loss**

The undisputed material facts establish that design defects were the efficient proximate cause of the loss.[24] Both Robert Taylor *and* Mr. Klopman testified to this.[25]   Mr. Klopman

---

[18] *Cont'l Ins. Co. v. Lone Eagle Shipping (Liber.),* 952 F. Supp. 1046, 1061-62 (S.D.N.Y. 1997)(citation omitted); *Lanasa Fruit S.S. & Importing, Co. v. Univ. Ins. Co.*, 58 S. Ct. 371 (1938).
[19] *Id.*
[20] *N.H. Ins. Co. v. Krilich*, 387 F. App'x 940, 942 (11th Cir. 2010)(citing *Lanasa*, 58 S.Ct. 371, 374); *see also Standard Oil Co. v. U.S.*, 340 U.S. 54, 58 (1950) (stating that proximate cause is the "cause which is most nearly and essentially connected with the loss as its efficient cause"); *Tillery v. Hull & Co*., 876 F.2d 1517, 1519 (11th Cir. 1989) ("[C]ourts seeking to determine the cause of a vessel's damage assign greater weight to the ultimate, efficient cause than to the temporally remote causes."); *U.S. Fire Ins. Co. v. Cavanaugh*, 732 F.2d 832, 835 (11th Cir. 1984).
[21] *Lone Eagle Shipping*, 952 F. Supp. at 1061-62 (citations omitted).
[22] *Id.* (citing 2 Thomas J. Schoenbaum, Admiralty & Maritime Law, § 19-10, at 434 (2d ed. 1994)(finding that "heavy weather" was not the efficient proximate cause of damage to a vessel, but rather the corroded condition of the frames allowed a breach of the integrity of the vessel before the heavy weather affected the vessel); *Krilich*, 387 F. App'x 941-42 (affirming that insured's failure to maintain the watertight hatches was the efficient proximate cause of loss, instead of a fracture in the keel, because "all of the experts agreed that the vessel 'would not have sunk as quickly or in the manner that it did if the sea chests had been secured watertight.'").
[23] *Lago Canyon*, 2008 U.S. Dist. LEXIS 142202, at *17-19.
[24] *See* Exhibit 8 to MAIC's Opening Brief - Taylor Report; Exhibit 3 to MAIC's Opening Brief - Klopman Damage Survey, at MARKEL 000095.
[25] *Id.*

concluded that "[t]he loss was the direct result of improper design and construction."[26] Contrary to Plaintiff's blatant misrepresentations, MAIC fully represented Mr. Taylor's testimony in its Opening Brief. However, the expert testimony in the record speaks for itself and is not a disputed contention.

### 3.    Plaintiff's Vessel was Unseaworthy at the Inception of the Policy

The evidence proves that the Vessel was unseaworthy at the inception of the Policy.[27] Plaintiff's Vessel was not "reasonably fit for the intended purpose," because it sank while docked in a marina in non-hurricane conditions.[28] The submersion was caused by design defects in the Vessel that were present at the time the Policy incepted. And, again, Plaintiff has provided no evidence that any other vessel in the same marina suffered the same fate.

Plaintiff continues to rely on a report by Mr. Drew B. Hains, P.E. as rebuttal to the seaworthiness opinions in the Taylor report, but MAIC still contends that this report was untimely served. Timeliness of an expert report is an inappropriate issue to be presented on a Daubert motion, because Daubert motions pertain to issues of the expert's admissibility under FRCP 702.[29] This is a timeliness challenge pursuant to FRCP 26.[30]

---

[26] Exhibit 3 to MAIC's Opening Brief - Klopman Damage Survey, at MARKEL 000095.

[27] MAIC incorporates by reference its Opposition to Plaintiffs *Daubert* Motion [D.I. 102], and its Opening Brief to its Motion for Summary Judgment [D.I. 106].

[28] *See* Exhibit 8 to MAIC's Opening Brief - Taylor Report; Exhibit 3 to MAIC's Opening Brief - Klopman Damage Survey, at MARKEL 000095.

[29] *See AVM Techs., LLC v. Intel Corp*., 2017 U.S. Dist. LEXIS 65698, at *5 (D. Del. Apr. 29, 2017)("Plaintiff next argues that Dr. Subramanian's supplemental report was untimely and is prejudicial. . . This is not an appropriate issue for a Daubert motion."); *see also G&S Metal Consultants, Inc. v. Cont'l Cas. Co.*, 2014 U.S. Dist. LEXIS 124700, at *10 (N.D. Ind. Sep. 8, 2014)("Continental brings this motion solely pursuant to [FRCP] 26 and is not challenging the admissibility of Mr. Leatzow's opinions under [FRCP] 702.").

[30] *G&S Metal Consultants,* 2014 U.S. Dist. LEXIS 124700, at *10 ("Federal Rule of Civil Procedure 26 provides, in relevant part, that a party must make expert disclosures 'at the times and in the sequence that the court orders.")

6

This Court's scheduling order contemplated three dates for expert disclosures— 1) Initial disclosures on March 15, 2021 on subject matter for which a party has the initial burden of proof, 2) Supplemental disclosures on May 15, 2021 (actual date of Monday, May 17, 2021) to "contradict or rebut evidence on the same matter identified by another party,"  3) Reply expert reports on June 15, 2021, "from the party with the initial burden of proof."[31] Pursuant to Federal Rule 26(a)(2)(B), expert disclosures in Federal Court "must be accompanied by a written report— prepared and signed by the witness" and the report must contain:

> "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.[32]

MAIC has the initial burden of proof on the issues of seaworthiness and the applicable policy exclusions,[33] and therefore provided its initial expert disclosure and report on March 15, 2021 as required. Plaintiff was then required to serve his rebuttal expert report by May 17, 2021, pursuant to the scheduling order. Instead, he served a supplemental disclosure without a rebuttal report, and purposely waited until June 15, 2021 to serve the report authored by Mr. Hains.[34] In fact, Plaintiff attempts to conflate the two deadlines by categorizing Mr. Hains as a "rebuttal/reply

---

[31] Case Scheduling Order [D.I. 69], at pages 2-3.
[32] *See, e.g.,  Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (striking expert affidavit where producing party did not comply with Rule 26 because "'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing 'a complete statement of all opinion' and 'the basis and reasons therefor.")
[33] *See generally* MAIC's Opening Brief to MSJ [D.I. 106].
[34] *See* Plaintiff's Answering Brief to MAIC's MSJ [D.I. 114] at page 17.

7

expert," which combines the 2nd and 3rd expert categories/deadlines clearly outlined in the Scheduling Order.[35] Because Plaintiff willfully disregarded both the scheduling order and Federal Rules of Civil Procedure, MAIC would absolutely be prejudiced by the acceptance of this report.[36] This is exactly the type of situation for which exclusion of expert testimony is a remedy.[37] Not only did Plaintiff flagrantly disregard the Court's scheduling order, but MAIC was never given the opportunity to depose Mr. Hains. Now we are in the midst of dispositive motions, and Plaintiff has provided no explanation for this failure to adequately disclose his expert's opinion. Pursuant to Rule 26 and federal precedent, Mr. Hains' report should be stricken from the record. Without that report, Plaintiff has failed to even potentially rebut Mr. Taylor's opinions that design defects caused Plaintiff's loss and his claims must be dismissed.

### 4.    MAIC Has Not Breached Any Duty to "Adjust" Plaintiff's Claim

Plaintiff cites to "note 4" as support for the assertion MAIC breached its duty to adjust, but note 4 is not relevant to this point and provides no legal support for his argument. Plaintiff provides no other citations. MAIC still contends it adjusted Plaintiff's claim consistent with the common and plain meaning of "adjust," until Plaintiff filed suit. At that point, MAIC's investigation was delayed, thereby altering the adjustment process. MAIC breached no such duty to adjust.[38]

---

[35] *See* Plaintiff's Answering Brief to MAIC's MSJ [D.I. 114] at page 17.

[36] *See Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013)("[T]he Third Circuit has directed district courts to weigh certain factors: (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; (5) the explanation for the failure to disclose; and (6) the importance of the testimony sought to be excluded.").

[37] *Withrow,* 967 F. Supp. 2d 982, 1000 (D. Del. 2013)("Instead, the remedy of exclusion should be reserved for circumstances amounting to "willful deception or flagrant disregard of a court order by the proponent of the evidence." Id. at 792 (internal quotation marks and citations omitted).

[38] *Lexington Ins. Co. v. Paddock Swimming Pool Co.,* 2021 U.S. Dist. LEXIS 63259, at *27 (D.D.C. Apr. 1, 2021)("*See Adjust*, Black's Law Dictionary (11th ed. 2019)("To determine the

8

### D. PLAINTIFF'S TORT CLAIMS AND ESTOPPEL CLAIMS STILL FAIL AS A MATTER OF LAW

#### 1. MAIC is Entitled to Summary Judgment on Plaintiff's Tort Claims because District of Columbia Law does not Allow Plaintiffs to Concurrently Plead Tort Claims with a Breach of Contract Claim

Plaintiff has again failed to support his contention that District of Columbia law does not govern this matter. Strangely, Plaintiff states that "[t]he events giving rise to [his] causes of action occurred prior to the parties entering into the subject Policy and prior to the claim and lawsuit,"[39] yet each and every cause of action in the Complaint stems from the same set of facts, occurrences, and alleged breach of the Policy.[40] Plaintiff may not now mischaracterize his claims because he is faced with adverse law.

#### 2. Plaintiff Has Not Met His Burden of Proof as to Any of His Claims Lying in Fraud or Estoppel

Plaintiff's Answering Brief fails to address MAIC arguments that he has failed to meet the requisite elements of fraud and/or estoppel. As repeatedly argued by MAIC and its experts, this is not a fortuitous loss pursuant to applicable admiralty law or the Policy. Plaintiff has failed to prove any material misrepresentations or omissions on behalf of MAIC. The record is still devoid of any evidence regarding fraud, material misrepresentations, or material omissions on behalf of MAIC, or that Plaintiff relied on any such material misrepresentation or omission, and Plaintiff's Answering Brief fails to address this point.

#### 3. Plaintiff's Claims Would Still Fail Under Maryland or Delaware Law

As discussed about in Section D. 2., Plaintiff has failed to prove any claims lying in fraud. This stands regardless of whether District of Columbia, Maryland, or Delaware law applies.

---

amount that an insurer will pay an insured to cover a loss."); *see One Call Prop. Servs. v. Sec. First Ins. Co.,* 165 So. 3d 749, 755 (Fla. Dist. Ct. App. 2015)(citations omitted).

[39] Plaintiff's Answering Brief in Opposition to MAIC's MSJ [D.I. 114], at pages 18-19.

[40] *See* Exhibit 1 to MAIC's Opening Brief to MSJ- Complaint.

### E.    PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND HIS COMPLAINT

Plaintiff argues in opposing MAIC's Motion for Summary Judgment that he should be permitted to amend his complaint to the applicable state law if Florida law is found not to apply.[41] Plaintiff should not be permitted to revise his pleadings at this late stage.  The only Florida law to be considered in this matter is Florida's choice-of-law rules.[42] Further, the Southern District of Florida put Plaintiff on notice that Florida law would likely not apply to this action, and yet he still failed to file his own Motion for Choice of Law.[43] MAIC also identified that Florida law did not apply in its Renewed Motion to Dismiss and its Answer to Plaintiff's Complaint, but Plaintiff again failed to file his own Motion for Choice of Law.[44]

Plaintiff should not be permitted to delay this litigation by repleading any issues he previously ignored, especially those pertaining to choice-of-law. Florida law does not apply to the procedural or substantive aspects of this matter, and therefore all claims pled pursuant to Florida law should be dismissed.

### II.    CONCLUSION

For the foregoing reasons and those discussed in MAIC's Opening brief, MAIC respectfully requests that this Court grant its Motion for Summary Judgment and dismiss all of Plaintiff's claims as a matter of law.

---

[41] Plaintiff's Answering Brief in Opposition to MAIC's MSJ [D.I. 114] at fn 23. Notably, Plaintiff did not even request such relief in his Opposition to MAIC's Motion for Choice of Law.
[42] *Stokes v. Markel Am. Ins. Co.,* 2019 U.S. Dist. LEXIS 108685 (S.D. Fla. June 28, 2019) ("Accordingly, Florida's choice-of-law rules will apply to the action regardless of the final forum.")
[43] *Id.* at *16 ("The only material connection of this case to Florida are two of Plaintiff's witnesses, and this alone is insufficient to burden Florida jurors.")
[44] MAIC's Renewed Motion to Dismiss [D.I. 31], at page 12.