# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

JAMES STOKES,

        Plaintiff,                            CASE NO.: 1:19-cv-02014 LPS

vs.

MARKEL AMERICAN INSURANCE COMPANY,

        Defendant.

_____

## PLAINTIFF JAMES STOKES' REPLY BRIEF
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Date: September 28, 2021                        PALMER BIEZUP & HENDERSON LLP
                                                                  Michael B. McCauley (ID 2416)
                                                                  1223 Foulk Road
                                                                  Wilmington, DE 19803
                                                                  (302) 594-0895
                                                                  mccauley@pbh.com
                                                                  Attorneys for Plaintiff

Of counsel:
David Avellar Neblett
James M. Mahaffey III
PERRY & NEBLETT, P.A.
2550 South Bayshore Drive Suite 211
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile: (305) 967-8182
david@perryneblett.com
jmahaffey@perryneblett.com

## **TABLE OF CONTENTS**

**Page**

ARGUMENT……………………………………………………………………………...1

    I.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED……………………………………………………………………1

    II.    DEFENDANT'S POLICY INTERPRETATION………………………………….2

    III.    DEFENDANT'S "EFFICIENT PROXIMATE CAUSE" ANALYSIS STILL REQUIRES SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR……………………..…………………………………………………...2

    IV.    PLAINTIFF ESTABLISHED THAT A FORTUITOUS LOSS OCCURRED AND THAT THE CAUSE OF PLAINTIFF'S LOSS WAS EXTREME WEATHER FROM HURRICANE MICHAEL…………......................................................................3

    V.    PURPORTED "DESIGN DEFECTS" WERE NOT THE CAUSE OF PLAINTIFF'S LOSS………………………………………………………………………..5

    VI.    DEFENDANT'S AFFIRMATIVE DEFENSES ARE PRECLUDED……………...…………………………………………………… 7

    VII.    DEFENDANT'S CARE, CUSTODY, AND CONTROL OF PLAINTIFF'S VESSEL FURTHER CONFIRMS THAT PLAINTIFF'S LOSS IS COVERED…………….…………………………………………………… 8

    VIII.    CONCLUSION…………………………………………………………10

# TABLE OF CITATIONS

**Cases** **Page**

*Alamia v. Nationwide Mut. Fire Ins. Co.*,
 495 F. Supp. 2d 362, 368 (S.D.N.Y. 2007)……………………………………………….2

*Anderson v. Liberty Lobby*,
 477 U.S. 242 (1986)……………………………………………………………………...1

*Archer Daniels Midland Co. v. Aon Risk Servs.*,
2002 U.S. Dist. LEXIS 19314, 2002 WL 31185884, at *8 (D. Minn. Sept. 27, 2002),
*aff'd*, 356 F.3d 850 (8th Cir. 2004) …………………………………………………….4

*Bayer CropScience AG v. Dow AgroSciences LLC*,
 2011 U.S. Dist. LEXIS 149636, at *2 (D. Del. Dec. 30, 2011)………………………...7

*Blaine Richards & Co. v. Marine Indemnity Insurance Co.*,
 635 F.2d 1051, 1054 (2d Cir. 1980)……………………………………………………3

*Boazova v. Safety Ins. Co.*,
 462 Mass. 346, 968 N.E.2d 385, 394 n.4 (Mass. 2012)………………………………...2

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)……………………………………………………………………...7

*Chartis Prop. Cas. Co. v. Inganamort*,
 2019 U.S. Dist. LEXIS 45806, at *13-14 (D.N.J. Mar. 20, 2019)……………………...4

*Crowley Liner Servs., Inc. v. Transtainer Corp.*,
 2007 WL 433352, at *3 (S.D. Fla. 2007)……………………………………………………1

*Jones v. UPS Ground Freight*,
 683 F.3d 1283, 1292 (11th Cir. 2012)…………………………………………………7

*Lamadrid v. Nat'l Union Fire Ins. Co.*,
 567 F. App'x 695, 699 (11th Cir. 2014)……………………………………................2, 5

*Lanasa Fruit Plante v. USF & G Specialty Insurance Co.*,
 No. 03-23157-CIV, 2004 WL 1429932, at *2 n.1 (S.D. Fla. 2004)…………………….3

*Schainberg v. Urological Consultants of S. Fla., P.A.*,
 2013 U.S. Dist. LEXIS 208128, at *4 (S.D. Fla. Mar. 18, 2013)……………………….7

*St. Paul Fire & Marine Ins. Co. v. Lago Canyon*,
 2008 U.S. Dist. LEXIS 142202, at *16-17 (S.D. Fla. Mar. 6, 2008)………………..2, 3

PBH620066.1

*Standard Oil Co. of New Jersey v. U.S.*,
 340 U.S. 54, 57-58 (1950)……………………………………………................................3

*Tillery v. Hull & Co.*,
 876 F.2d 1517, 1519 (11th Cir. 1989)……………………………………………………….3

## **Other Authorities**

Fed. R. Civ. P. 56(a)…...……………………………………………………………………......1

PBH620066.1

## **ARGUMENT**[1]

Defendant's Answering Brief, D.I. 102 ("Def.'s Response"), fails to show a genuine issue of material fact as to the cause of the loss, and thus Plaintiff should be granted summary judgment as a matter of law. Fed. R. Civ. P. 56(a); D.I.s 107, 108.[2] Plaintiff has met his "light" burden and has established that a fortuitous loss occurred during the policy period. Defendant, on the other hand, cannot carry its burden of proving that all of Plaintiff's damages are excluded. Plaintiff is therefore entitled to summary judgment.

**I.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED**

With regard to Plaintiff's Motion for Summary Judgment, D.I.s 107, 108, Defendant has failed to come forward with sufficient facts to show a genuine factual dispute for trial. The test for the existence of a genuine factual dispute is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. *See Crowley Liner Servs., Inc. v. Transtainer Corp.*, 2007 WL 433352, at *3 (S.D. Fla. 2007). Defendant's

---

[1] Defendant's Response briefing(s) include a thirteen-page item filed under a separate cover from Defendant's "main" answering brief [D.I. 112] titled "Defendant Markel American Insurance Company's Responses to Plaintiff's Concise Statement of Undisputed Facts." D.I. 113. Defendant did not seek Leave of Court to extend the twenty-page limit for dispositive motions and responses to same. As already noted in Plaintiff's Response Brief to Defendant's Motion for Summary Judgment, D.I. 114, n.4, the Court denied the Parties' joint proposed stipulation for an extended page-limit. D.I. 97. Plaintiff respectfully requests that Defendant's over-the-limit attempt to create issues of fact be disregarded by the Court. Plaintiff has been prejudiced by Defendant's briefing strategies, as Plaintiff may not exceed the prescribed page limits to reply to Defendant.

[2] Plaintiff also incorporates by reference his Answering Brief in Opposition to Defendant's Motion for Summary Judgment, D.I. 114, and the arguments and attachments contained therein.

PBH620066.1

positions and self-serving legal conclusions in opposition to Plaintiff's Motion do not demonstrate a genuine factual dispute.

## II. DEFENDANT'S POLICY INTERPRETATION

To begin, Defendant's Response brief is based on an incorrect choice-of-law analysis. Def.'s Response, D.I. 112, p. 11 of 26.[3] "The Supreme Court held in *Wilburn Boat Co.* that in the absence of a controlling rule of federal maritime law, the interpretation or construction of a marine insurance contract is to be determined according to state law," *Lamadrid v. Nat'l Union Fire Ins. Co.*, 567 F. App'x 695, 699 (11th Cir. 2014), here, Florida law[4]. Defendant has not adequately identified "a controlling rule of federal maritime law" with regard to the proper construction of an all-risks policy that, like the one at issue here, lacks any anti-concurrent-cause language.

## III. DEFENDANT'S "EFFICIENT PROXIMATE CAUSE" ANALYSIS STILL REQUIRES SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR

Defendant presents a slightly different "efficient proximate cause" analysis from the one presented by Plaintiff.[5] But even if the Court were to apply the "efficient proximate cause," as analyzed in *St. Paul Fire & Marine Ins. Co. v. Lago Canyon*, 2008 U.S. Dist. LEXIS 142202, at *16-17 (S.D. Fla. Mar. 6, 2008),[6] Defendant cannot seriously dispute that Hurricane Michael is

---

[3] For ease of understanding, Plaintiff relies upon and references the pagination generated by the Case Management/Electronic Case Files system, which appears as a header on all filings.

[4] Notably, Defendant's Response Brief, D.I. 112, heavily relies upon cases from 11th Circuit and cases applying Florida law. Plaintiff maintains that Florida law applies.

[5] Some courts note that "[t]he inclusion of an 'anticoncurrent cause' provision ... is designed to circumvent the doctrine of efficient proximate cause whereby coverage is afforded as long as the predominant cause of the loss is a covered peril." *Boazova v. Safety Ins. Co.*, 462 Mass. 346, 968 N.E.2d 385, 394 n.4 (Mass. 2012). As it cannot be reasonably disputed that hurricane conditions are the "predominant cause" of Plaintiff's loss, and without anti-concurrent cause language, Defendant cannot prove that all of Plaintiff's damages are excluded. "An anti-concurrent clause is meant to 'exclude[] coverage for damage caused by an excluded peril even when covered perils also contribute to the damage.'" *Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 368 (S.D.N.Y. 2007).

[6] Defendant again relies upon a case that applies "federal admiralty law or Florida state law." *See*

2

the "cause which is most nearly and essentially connected with the loss as its efficient cause." *Id.* at *18 (citing *Standard Oil Co. of New Jersey v. U.S.*, 340 U.S. 54, 57-58 (1950)).

Defendant also cites to *Tillery v. Hull & Co.*, 876 F.2d 1517, 1519 (11th Cir. 1989), which likewise supports the granting of Plaintiff's summary-judgment motion. As noted by the Eleventh Circuit in *Tillery*, "[c]ourts analyzing problems of marine insurance causation have, as a rule, applied strictly the doctrine of *causa proxima non remota spectatur* ('the immediate not the remote cause is considered'). That is to say, courts seeking to determine the cause of a vessel's damage assign greater weight to the ultimate, efficient causes than to the temporally remote causes. *See, e.g.*, *Lanasa Fruit Steamship & Importing Co. v. Universal Insurance Co.*, 302 U.S. 556, 563, 58 S. Ct. 371, 374, 82 L. Ed. 422 (1938) (noting, in admiralty case, that 'cause which is truly proximate is that which is proximate in efficiency'); *Blaine Richards & Co. v. Marine Indemnity Insurance Co.*, 635 F.2d 1051, 1054 (2d Cir. 1980) (to 'trace the origins of losses back to their remote causes' would violate the parties' reasonable understandings as to the scope of coverage)." The record shows that the Markel Policy, *see* 108-2, is an "all risks" policy, and Plaintiff's Hurricane Michael loss is a covered fortuitous loss.

### IV. PLAINTIFF ESTABLISHED THAT A FORTUITOUS LOSS OCCURRED AND THAT THE CAUSE OF PLAINTIFF'S LOSS WAS EXTREME WEATHER FROM HURRICANE MICHAEL

Defendant's position in its Response, *see generally* D.I. 112, pp. 11-19 of 26, that the "extreme" and historic weather from Hurricane Michael was somehow not the cause of the sinking, flies in the face of the causation standard Defendant purports to rely upon. First, Defendant attempts to downplay the hurricane as "rainfall alone." *Id.* at p. 15 of 26. Defendant then claims

---

*St. Paul Fire & Marine Ins. Co.*, 2008 U.S. Dist. LEXIS 142202, at *23. Notably, many of the opinions relied upon by Defendant to support its causation position, *see id.*, were issued by courts sitting in admiralty, unlike the case at bar, where the Court sits "at law."

3

PBH620066.1

that "rainfall alone is not enough to show that a sinking was accidental or fortuitous." *Id.* (citing to the easily distinguishable *Chartis Prop. Cas. Co. v. Inganamort*, 2019 U.S. Dist. LEXIS 45806, at *13-14 (D.N.J. Mar. 20, 2019)). Defendant's positions are incorrect and fail to establish the existence of a genuine factual dispute as to the cause of the loss.[7]

As already noted in Plaintiff's Response to Defendant's summary-judgment motion, D.I. 114, pp. 17-18, the court in *Chartis* found that the defendant-insureds did not present any rainfall data for the court to find that the seasonal, south Florida rain was "heavy." *Chartis Prop. Cas. Co.*, 2019 U.S. Dist. LEXIS 45806 at *12-13 ("For a rainfall to be 'heavy' in south Florida such that it would implicate the "fortuitous loss" rule, there must be sufficient evidence, likely from either meteorological data or publicly available reports, as to the rain's severity."). *Chartis* does not stand for the proposition that "rainfall alone is not enough" to show that a loss is fortuitous, as Defendant claims. Def.'s Response, D.I. 114, p. 15 of 26. Although *Chartis* did not concern a hurricane loss, as here, the opinion notes that "'[c]ourts have held that heavy rainfall is a fortuitous event for purposes of recovery under an all-risk policy.'" *Id.* at *8 (citing *Archer Daniels Midland Co. v. Aon Risk Servs.*, 2002 U.S. Dist. LEXIS 19314, 2002 WL 31185884, at *8 (D. Minn. Sept. 27, 2002), aff'd, 356 F.3d 850 (8th Cir. 2004)).

In the instant case, all such data, and more, has been provided to the Court by way of a meteorologist,[8] thereby easily satisfying Plaintiff's initial burden. The record is replete with

---

[7] As previously noted, the facts on record are clear that Plaintiff's loss was fortuitous. Plaintiff relies upon Stephens' opinions and Plaintiff's other experts (including meteorologist Mr. Brinson, PhD(c)), along with the testimony and opinions of Defendant's own Corporate Representative, adjusters, and surveyors to establish the fortuitous nature of the loss. *See* Pl.'s Mot, D.I.s 108, pp. 16-19 of 26; *see also* Pl.'s Answering Brief, D.I. 114 (regarding the extreme weather conditions in Delaware during Hurricane Michael).

[8] Defendant's response is silent as to Plaintiff's Expert meteorologist, Mr. Brinson, PhD(c), and the weather datasets compiled. *See generally* Def.'s Response, D.I. 112.

evidence of "extreme" weather, wind, and heavy rainfall, including evidence proffered from both parties and publicly available evidence. *See, e.g.*, Klopman Report, p. 5 of 21, of record at 108-5. It cannot be disputed that Plaintiff owned and operated his Vessel for two-plus years under normal, "non-hurricane" conditions, and did not experience any issues, design or otherwise. Defendant's misapplication of law and unsupported legal conclusion that it "reasonably" disputes that weather from Hurricane Michael was the proximate cause of the loss is not enough to defeat Plaintiff's Motion for Summary Judgment.[9]

## V. PURPORTED "DESIGN DEFECTS" WERE NOT THE CAUSE OF PLAINTIFF'S LOSS

Defendant's strained arguments, which largely rely on unsupported legal conclusions,[10] do not create genuine issues of disputed fact and do not establish that design defects were the proximate cause of the loss. Plaintiff has moved to strike and preclude the testimony of Defendant's experts, D.I.s 98, 99, 103, and already shown why the arguments posited by Defendant and its experts are unreliable.[11] Plaintiff incorporates by reference Plaintiff's Response Brief in Opposition to Defendant's motion, D.I. 114. Plaintiff has already addressed Defendant's position on its novel "design defect" defense. Defendant points to various standards, including "ABYC" and "ISO," but fails to note that Defendant's own expert, Mr. Robert Taylor, testified

---

[9] As already extensively noted in Plaintiff's Motion and Plaintiff's Response to Defendant's Motion, the "**burden of demonstrating fortuity is not a particularly onerous one**." *Lamadrid v. Nat'l Union Fire Ins. Co.*, 567 F. App'x 695, 701 (11th Cir. 2014) (emphasis added). Plaintiff is not required to come forward with evidence regarding other vessels docked in slips outside the residences in Bethany Beach, Delaware. Defendant's analysis in its Response Brief is incorrect.

[10] To wit, Defendant's Response states the following: "The evidence shows that, because design defects were the 'predominant' or 'determining' cause of the loss, that 'rendered the loss inevitable,' the proximate cause of the Vessel's sinking was various design defects existing in the Vessel prior to the Policy's effective date, and throughout the policy period to the date of loss." Defendant fails to provide record support in its unfounded conclusions. The record is devoid of any loss or damage to Plaintiff's Vessel aside from the hurricane loss.

[11] As noted previously, Defendant decided not to challenge Plaintiff's experts.

5

that boat manufacturers are not required to build to "ABYC" or "ISO" standards. Taylor Depo, p. 18:2-15, of record at D.I. 105-10. Plaintiff's retained naval architect Mr. Drew B. Hains, P.E., also rebuts the opinions offered by Mr. Taylor. *See* Hains Report, of record at D.I. 114-2.

Defendant's position—that Plaintiff's Vessel was "teetering on the edge" ever since it left the factory—is unreasonable and illogical. Defendant attempts to bolster its argument by citing Mr. Taylor's deposition testimony, regarding testing conducted by Mr. Taylor. Def.'s Response, D.I. 112, p. 18 of 26, n. 68. However, Mr. Taylor conceded that his post-submersion "float test" was to gather waterline info and that, as a result of the submersion, "the [Vessel's] whole electrical system [] [was] shot" at the time of his testing. Taylor Depo, pp. 143:10-14, 144:6-9, of record at D.I. 105-10. Defendant does not reasonably support the position that the Vessel had been defectively designed for two-plus years and prior to the inception of the various policies of insurance. *See* Defendant's argument, *supra* note 10.

It is undisputed that the Vessel experienced no issue during the two-plus years Plaintiff owned (and Defendant insured) the Vessel prior to the loss. Now that Plaintiff has the necessity to use insurance, Defendant takes the improper position that Plaintiff's Vessel should have been designed in a different manner.[12] Regardless of the fact that the Policy does not contain anti-

---

[12] In almost every marine casualty, one can imagine additional protections that, had they been in place, might have prevented or minimized the loss (e.g., a fire that would have been quickly extinguished if the vessel had a different fire suppression system). Defendant's position, taken to its logical conclusion, would jeopardize coverage for every casualty, since an expert can always be found to say, in hindsight, that this or that component or system could have been designed differently to avoid or minimize a loss. When an insurer wants to be sure that the vessel has a certain protective device, the remedy is to write an express warranty into the policy or complete a pre-insurance inspection. This policy did not contain any warranty mandating that the Vessel be built to ABYC, ISO, or any other standard. The design-defect exclusion does not function as a warranty that the Vessel will be built to ABYC standards. Moreover, whether this particular builder built to those standards is something Defendant could have found out on its own; if Defendant was not comfortable insuring vessels built by this builder, it should have declined to insure the Vessel.

concurrent cause language, Defendant's conclusion—that the design of the Vessel rather than the "extreme" hurricane conditions was the proximate cause of the loss—is a self-serving and unsupported opinion.

## VI. **DEFENDANT'S AFFIRMATIVE DEFENSES ARE PRECLUDED**

Defendant claims that the striking of affirmative defenses is "generally disfavored," citing *Bayer CropScience AG v. Dow AgroSciences LLC*, 2011 U.S. Dist. LEXIS 149636, at *2 (D. Del. Dec. 30, 2011), a patent case. Defendant's authority is inapposite, as it is "[m]otions to strike" that are noted as disfavored by the *Bayer CropScience AG* court. 2011 U.S. Dist. LEXIS 149636, at *2. Plaintiff's motion is not a "motion to strike," but a summary-judgment motion. "[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Schainberg v. Urological Consultants of S. Fla., P.A.*, 2013 U.S. Dist. LEXIS 208128, at *4 (S.D. Fla. Mar. 18, 2013) (citing *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Celotex*, 477 U.S. at 322)). "Consequently, when moving for summary judgment on affirmative defenses:

> [T]he moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show — that is, point out to the district court — that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

*Id.* at *4-*5 (citations omitted). Plaintiff has done just that, and Defendant has wholly failed to satisfy its burden to come "forward with evidence sufficient to support their affirmative defenses in response to Plaintiff's Motion." *Id.* at *5. Summary Judgment should be granted in Plaintiff's favor on Defendant's twelve affirmative defenses as Defendant has failed to satisfy its burden.

## VII. DEFENDANT'S CARE, CUSTODY, AND CONTROL OF PLAINTIFF'S VESSEL FURTHER CONFIRMS THAT PLAINTIFF'S LOSS IS COVERED

Defendant contends that Plaintiff is seeking "coverage by estoppel." *See* Def.'s Response, D.I. 112, p. 21 of 26. Rather, Plaintiff is noting that Defendant acted as though the loss were covered and now seeks to change its position. Plaintiff does not "misstate" or misinterpret Defendant's 30(b)(6) Corporate Representative's testimony. Defendant's 30(b)(6) Representative, Ms. Katherine Christodoulatos, specifically testified as follows:

```
24      Under what provision of the
25   insurance policy did Markel issue payment
                                      Page 194
 1                Christodoulatos
 2   to Indian River Marina for invoice 14552
 3   as reflected in this January 28, 2020
 4   e-mail from Mr. Rob Varnell?
 5      A.   I'll refer to Markel Bates
 6   number 000205 paragraph 2-E protect and
 7   recover, the payment would have been
 8   issued under the Reservation of Rights
 9   without prejudice.
10      Q.   I'll ask the similar questions
11   that I asked earlier about the other
12   payments we went through for the protect
13   and recover or sue and labor provision to
14   apply it leads in with "in the event of a
15   covered loss to the insured watercraft",
16   correct?
17      A.   Yes.
18      Q.   As we've gone through
19   everything, have you found a provision in
20   the policy that would allow the insurance
21   company to issue payments for my client's
22   loss without prejudice?
23      A.   There's no specific provision in
24   the policy that relates to that.
```

Corporate Representative Depo, pp. 193:24-194:24; *see also* pp. 101:22-105:13, of record at D.I. 108-1. As noted in Plaintiff's Motion, it is undisputed that Defendant paid invoices before "reserving rights," including Indian River Marina Invoice number 12756, paying $1,320.50 for storage and for repair work. Since Defendant treated Plaintiff's loss as a covered loss in accordance with the Policy, Defendant should not now be heard to argue otherwise.

PBH620066.1

Defendant claims that the "Protect and Recover" clause does not provide Defendant with an obligation. Def.'s Response, p. 23 of 26. Plaintiff disagrees. As noted in Plaintiff's Motion, the protect and recover clause in the Policy does provide Defendant with an affirmative obligation to pay reasonable costs "in the event of a covered loss":

> e. **Protect and Recover**
> In the event of a covered loss to the **insured watercraft**, you must protect the **insured watercraft** from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under 'Watercraft and Equipment' coverage, but not to exceed the limit for 'Watercraft and Equipment' on the Declarations Page. We will not cover any further loss incurred due to your failure to protect the **insured watercraft**.

Subject Policy, p. 8, of Record at D.I. 108-2.

Equally unavailing is Defendant's attempt to characterize its payments, including payment prior to any purported "reservation of rights," as something other than a concession of liability.[13] As discussed above, Defendant's 30(b)(6) Corporate Representative could not provide an adequate policy-based justification for the payments made. As there is no identified "controlling rule of federal maritime law" on Plaintiff's position, Florida law applies. *Plante v. USF & G Specialty Insurance Co.*, No. 03-23157-CIV, 2004 WL 1429932, at *2 n.1 (S.D. Fla. 2004). Defendant also asserts that it "denied liability as to any of Plaintiff's claims," a denial that was issued only after Plaintiff filed his Motion for Summary Judgment (previously Defendant had claimed that a coverage decision was yet to be issued).[14] The facts show that Defendant issued partial payment on Plaintiff's "covered loss," without any Policy justification or excuse and prior to a "reservation of rights," thereby confirming coverage on Plaintiff's loss and estopping Defendant from attempting to deny coverage at this late juncture.

---

[13] Plaintiff notes that after the filing of Plaintiff's Motion for Summary Judgment, Defendant has now refused—some three years after the loss—to satisfy any additional payments for the storage of the Vessel at the Indian River Marina, the marina where Defendant chose to keep the Vessel.
[14] Corporate Representative Depo, pp. 160:24-25; 187:18-25, of record at 108-1.

9

## VIII. CONCLUSION

Plaintiff respectfully requests that summary judgment be granted in his favor.

Date: September 28, 2021

Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

By:   /s/ Michael B. McCauley (ID 2416)
      1223 Foulk Road
      Wilmington, DE 19803
      (302) 594-0895
      mccauley@pbh.com
      Attorneys for Plaintiff

Of counsel:
David Avellar Neblett
James M. Mahaffey III
PERRY & NEBLETT, P.A.
2550 South Bayshore Drive Suite 211
Miami, Florida 33133
Telephone: (305) 856-8408
Facsimile: (305) 967-8182
david@perryneblett.com
jmahaffey@perryneblett.com

10

PBH620066.1