IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES STOKES

*Plaintiff,*

v.

No. 1:19-cv-02014-SB-MPT

MARKEL AMERICAN
INSURANCE COMPANY
*a foreign corporation*

*Defendant.*

---

Michael B. McCauley, Daniel H. Wooster, PALMER, BIEZUP & HENDERSON, Wilmington, DE; David A. Neblett, James M. Mahaffey, III, John A. Wynn, PERRY & NEBLETT, Miami, FL.

*Counsel for Plaintiff.*

Daryll Hawthorne-Bernardo, Timothy S. Martin, WHITE & WILLIAMS, Wilmington, DE; Krista Acuna, HAMILTON, MILLER & BIRTHISEL, Miami, FL.

*Counsel for Defendant.*

---

**MEMORANDUM OPINION**

March 8, 2023

---

BIBAS, *Circuit Judge*, sitting by designation.

Claims are weighed, not counted. So stacking several claims that cover the same dispute does not tip the scale.

James Stokes's speedboat was damaged, but his insurer did not pay in full. So he sued for breach of contract and a hodgepodge of other claims. But the other claims either duplicate the contract claim, are not private rights of action, or have already been dismissed. So I dismiss them all with prejudice.

## I. A SPEEDBOAT IS SWAMPED

On this motion to dismiss, I take all well-pleaded facts as true. James Stokes owned a speedboat, and Markel American Insurance Company insured it. Am. Compl., D.I. 130 ¶¶ 4–11. The boat was docked in Delaware when Hurricane Michael hit in October 2018. ¶ 15. The storm was fierce, dumping more than seven inches of rain in an hour. ¶¶ 18–19. This downpour swamped the boat, partially sinking it at the dock. ¶¶ 5. The next day, Stokes reported the claim to Markel. ¶¶ 16–17. Markel took possession of the boat but eventually decided that the insurance policy did not cover the loss. ¶¶ 22, 34.

Shortly after the boat sank, Stokes sued Markel in Florida state court. The case was eventually removed to federal court and transferred to the District of Delaware. D.I. 1, D.I. 55. As the case travelled the country, the parties engaged in discovery. This Court then issued an opinion granting summary judgment in part, denying it in part, and denying *Daubert* motions. D.I. 122. The Court also held that certain issues are governed by federal admiralty law and others by Washington, D.C. law. D.I. 121 at 6–14. Because Stokes had not had a chance to replace his Florida-law arguments with D.C.-law arguments, the Court granted leave to amend. *Id.* at 25. Stokes duly filed a new complaint, alleging breach of contract and six other claims. D.I. 130. Markel has moved to dismiss the six other claims. D.I. 133.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## II. THE DECLARATORY-JUDGMENT CLAIM FAILS

First, Stokes seeks a declaratory judgment about the parties' contractual rights and duties under 28 U.S.C. § 2201(a). Am. Compl. ¶¶ 80–93; Resp. Br., D.I. 141 at 6–8. But declaratory judgment does not fit this contractual dispute. *See Gibson v. Liberty Mut. Group, Inc.*, 778 F. Supp. 2d 75, 78–80 (D.D.C. 2011).

Stokes says his "claim for declaratory relief specifically relates to the contractual duties under the subject policy." D.I. 141 at 8. That is the problem. The Declaratory Judgment Act "permits actual controversies to be settled *before* they [become] violations of law or *a breach of contractual duty*." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (4th ed. 2022) (emphases added). Here, Stokes has already brought a breach-of-contract claim. And his declaratory-judgment claim seeks the very same relief. *Compare* Am. Compl. ¶¶ 73–79, *with* ¶¶ 89–90, 93.

But wait, Stokes says. "Declaratory relief will assist Plaintiff in tailoring his causes of actions to the portions of the policy at issue in this matter, thus aiding in the judicial economy and efficiency of this litigation." D.I. 141 at 8. Stokes would thus have the Court proceed in two steps: first determine "the parties' rights and obligations under the contract," and then determine whether the parties have breached those obligations. *Id.* at 8. In other words, Stokes wants a suit for breach of contract. He already has one.

3

Because Stokes's cause of action for declaratory judgment needlessly duplicates his breach-of-contract claim, I dismiss it with prejudice.

### III. THE CONVERSION CLAIM ALSO FAILS

Stokes next tries a conversion claim. He says that Markel was within its contractual rights to take and keep the boat while Markel believed it was a total loss. But once Markel determined that it was not a total loss, it kept the boat anyway. Keeping the boat, Stokes claims, was conversion. Am. Compl. ¶¶ 94–108.

Under D.C. law, "a cause of action that could be considered a tort independent of contract performance is a viable claim if the tort exists in its own right independent of the contract and any duty upon which the tort is based flows from considerations other than the contractual relationship." *Ludwig & Robinson, PLLC v. BiotechPharma, LLC*, 186 A.3d 105, 109–10 (D.C. 2018) (cleaned up). "The tort must stand as a tort even if the contractual relationship did not exist." *Choharis v. State Farm Fire and Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008).

Markel never would have had Stokes's boat but for the contractual relationship. In saying that Markel was initially within its rights to take the boat and act as if it were a total loss, Stokes is presumably referring to ¶ 2(b) of the contract's "PHYSICAL DAMAGE" section. That paragraph gives Markel the right to take title and possession of the remains of a boat for which it paid the contractual maximum coverage—in other words, a total loss. D.I. 130-1 at 12; *cf.* D.I. 130-1 at 2; D.I. 141 at 9–10. Markel had no contractual right to take possession of a boat that was not a total loss. So the claimed tort duty—to avoid taking possession—does not "flow[] from considerations other than the contractual relationship." *Ludwig*, 186 A.3d at 109–10. The

4

contractual relationship addresses Markel's possession of the boat, and "an action for breach of contract would reach … the damages suffered by the tort." *Choharis*, 961 A.2d at 1089; *see also Ludwig*, 186 A.3d at 110 & n.3.

Stokes's own filings confirm that Markel's possession of the boat sounds in contract. In his brief, Stokes argues that his implied-covenant claim "directly relates to Defendant's performance of its obligations under the contract." D.I. 141 at 12. And the complaint lists the ways Markel breached the implied covenant, including, "wrongfully withh[olding] the Vessel, failing to make a claim determination within a reasonable time period and preventing Plaintiff's possession as a result." Am. Compl. ¶ 117. So Stokes will be able to address this alleged wrongdoing in his breach-of-contract claim, as explained below. Because Stokes's conversion claim is simply another way of saying that Markel breached the contract, I dismiss it with prejudice.

### IV. THERE IS NO IMPLIED-COVENANT-OF-GOOD-FAITH CLAIM

Next, Stokes seemingly brings a separate claim for breach of the implied covenant of good faith and fair dealing under D.C. Code § 28:1-304. Am. Compl. ¶¶ 109–32. But there is no implied-covenant claim in D.C. D.C. Code § 28:1-304 cmt. 1. Rather, the claim is breach of contract, and the implied covenant is a theory about which contractual duties were breached. Stokes may repurpose these facts and arguments as part of his breach-of-contract claim. But as a separate cause of action, I dismiss his proposed implied-covenant claim with prejudice.

### V. NOR IS THERE A CLAIM FOR UNFAIR CLAIM-SETTLEMENT PRACTICES

Stokes also tries to bring a claim for unfair-settlement practices under D.C. Code § 31-2231.17. Am. Compl. ¶¶ 133–39. That provision lets D.C. regulators fine

insurance companies for frequently engaging in unfair claim-settlement practices. But nothing in this statute suggests a private cause of action. Stokes nevertheless argues that D.C. courts would recognize such a right of action—citing a case rejecting a similar argument. D.I. 141 at 15; *Choharis*, 961 A.2d at 1087–88 & n.8. So I dismiss this claim with prejudice.

### VI. STOKES FAILS TO STATE A CLAIM FOR BREACH OF THE CONSUMER PROTECTION PROCEDURES ACT

Next, Stokes argues that Markel breached D.C.'s Consumer Protection Procedures Act, which bans a range of unfair-trade practices. D.C. Code §§ 28-3901–3913; Am. Compl. ¶¶ 140–150. He seems to allege violations of D.C. Code § 28-3904(e), (f), (i), and (m). Am. Compl. ¶ 146. Markel argues that Stokes has failed to state a claim with the particularity required by Fed. R. Civ. P. 9(b), but that standard does not seem to apply. *See Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 265–67 (D.D.C. 2015). As a backstop, Markel also argues that Stokes has failed to meet even the requirements of Fed. R. Civ. P. 8 and *Iqbal*. I agree.

Stokes's allegations are conclusory and hard to understand. In response to Markel's argument that his claims were not detailed enough, Stokes cited the complaint to show that he has "sufficiently pled the 'who, what, when, where, and how' with respect to the circumstances of the fraud." D.I. 141 at 18. For "when," he says, "The fraud occurred on the date the subject policy became effective or on the date the declarations page was processed, when Plaintiff paid premiums, was locked in the policy, and believed he had a policy of insurance that provided coverage." *Id.* It is hard to tell what date or dates this refers to. And for "how," Stokes writes,

6

> Defendant and/or its agents made false statement(s) misrepresenting material facts that it knew or should have known were in fact false when it sold Plaintiff the above-referenced policy of insurance for Plaintiff's Vessel, but later advised Plaintiff that his policy contains endorsement(s), exception(s) or exclusion(s) that were not previously disclosed. Inasmuch as all of these terms mean "damage" of any type, the policy – if the endorsement(s), exception(s) or exclusion(s) are to be taken at face value – covers no claim that involves damage, thus rendering the policy and coverages indicated therein illusory. Plaintiff suffered damage as a result of such reliance in the amounts claimed in the preceding counts, costs and fees, interest as well as any other amounts as this Court deems just and proper.

*Id.* (citations omitted). Stokes seems to be arguing that Markel falsely told him that the policy covered some types of damage when, in fact, it covered no damage at all. This argument is plainly wrong. *See generally* D.I. 130-1.

So Stokes has failed to meet the pleading requirements. Ordinarily, I would dismiss without prejudice. But he has had his chance: in response to his argument that Markel "represented that fortuitous losses would be covered under the Policy" but "later changed this position," this Court ruled that Stokes "cannot prove … that [Markel] made a material representation or omission" and granted summary judgment. D.I. 121 at 24–25. Stokes was thus on notice that he had a high bar to clear in re-arguing fraud. Yet his claim remains inadequate. I therefore dismiss it with prejudice.

### VII. AND HE CANNOT RESURRECT HIS FRAUDULENT-INDUCEMENT CLAIM

Stokes's final claim is for fraudulent inducement. Am. Compl. ¶¶ 151–66. He admits that this Court already granted summary judgment against this claim. D.I. 141 at 18–19; D.I. 121 at 24–25. Yet he argues that "[t]his claim is now pled under the laws of D.C. and is separate and distinct from [his] prior claim, which was pled under

7

the laws of the Eleventh Circuit." D.I. 141 at 18–19. He has not explained what that difference might be. Besides, he reuses his argument under the Consumer Protection Procedures Act. *Id.* at 19. As discussed above, that argument does not meet even the minimal pleading requirements. So I dismiss this claim with prejudice too.

\* \* \* \* \*

This is a breach-of-contract case. Stokes has tried to complicate it with half a dozen other claims, but none is viable. So I dismiss them all with prejudice.