IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES STOKES,

    *Plaintiff,*

  v.

MARKEL AMERICAN
INSURANCE CO.,

    *Defendant.*

No. 1:19-cv-02014-SB

Michael B. McCauley, Daniel H. Wooster, PALMER, BIEZUP & HENDERSON, Wilmington, Delaware; David A. Neblett, James M. Mahaffey, III, John A. Wynn, NEBLETT LAW GROUP, Miami, Florida; Kyle Robert Brady, SALMON RICCHEZZA SINGER & TURCHI LLP, Philadelphia, Pennsylvania.

                                               *Counsel for Plaintiff.*

Daryll Hawthorne-Bernardo, Timothy S. Martin, WHITE & WILLIAMS, Wilmington, Delaware; Marc L. Penchansky, WHITE & WILLIAMS, Philadelphia, Pennsylvania; Krista Acuña, HAMILTON, MILLER & BIRTHISEL LLP, Miami, Florida.

                                               *Counsel for Defendant.*

**MEMORANDUM OPINION**

May 7, 2025

BIBAS, *Circuit Judge*, sitting by designation.

A jury found that Markel American Insurance Co. had breached an insurance contract with James Stokes when it refused to cover the loss of Stokes's boat. D.I. 189. Stokes now returns to court seeking a bevy of post-trial relief. He wants (1) pre-judgment interest, (2) post-judgment interest, (3) litigation costs, (4) attorney's fees, and (5) reinstatement of a slew of claims that I have already dismissed. I grant some of Stokes's requests and deny others.

## I. I AWARD PRE-JUDGMENT INTEREST

As the jury found, the parties' insurance contract obligated Markel to pay Stokes $646,000 to cover the loss. D.I. 193. Yet it took Stokes more than six years of litigation to recover the payment that he was entitled to. D.I. 1-1 at 25 (complaint filed in 2019); D.I. 193 (judgment in 2025). To make up for the delay, he seeks interest from the date when he reported the loss to the date when I entered judgment in his favor. D.I. 194 at 3. Markel concedes that it owes Stokes some pre-judgment interest. D.I. 195 at 4. But it disputes when that interest started to accrue and what the interest rate should be. *Id.* at 4–5.

I hold that pre-judgment interest should accrue starting October 12, 2018, when Stokes told Markel that his boat had sunk. D.I. 161 at 5. At that point, Stokes had suffered a loss that his insurance contract covered, Markel knew about the loss, and it was contractually obligated to compensate Stokes. In the rightful state of the world, Stokes would have been paid on that day. Getting paid more than six years later leaves him worse off, and we measure that difference—and compensate Stokes for it—using prejudgment interest. *See City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195–96 (1995).

Markel responds that although pre-judgment interest is awarded as a rule in admiralty, courts may decline to award it in "peculiar circumstances." D.I. 195 at 2. And it says that one such circumstance is present here: It needed time to investigate Stokes's claim before forking over more than $600,000 to him. So, Markel contends, it should get a grace period for its investigation. That means interest should accrue from the date when Markel denied his clam almost three years later. *Id.* at 3–4.

I disagree. For starters, I doubt that an insurance company investigating a claim is a "peculiar circumstance." D.I. 195 at 2; *In re Bankers Tr. Co.*, 658 F.2d 103, 108 (3d Cir. 1981). More importantly, the purpose of pre-judgment interest "is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee*, 515 U.S. at 195. Giving Stokes the value of $646,000 accrued in 2021 would not fully compensate him for a loss of $646,000 that he suffered in 2018. Plus, "a good-faith dispute over liability" does not justify denying pre-judgment interest. *Id.* at 199.

What interest rate does Markel owe? In admiralty cases, courts in this circuit have discretion to choose the rate of pre-judgment interest that they consider proper. *In re Frescati Shipping Co.*, 886 F.3d 291, 314 (3d Cir. 2018), *aff'd sub nom. CITGO Asphalt Refin. Co. v. Frescati Shipping Co.*, 589 U.S. 348 (2020). That might be the rate specified by the state in which the court sits, it might be the yield of Treasury bonds, or it might be something else entirely. *See Platoro Ltd. v. Unidentified Remains of a Vessel*, 695 F.2d 893, 907 (5th Cir. 1983); *Columbia Brick Works, Inc. v. Royal Ins. Co.*, 768 F.2d 1066, 1071 (9th Cir. 1985).

The right interest rate here is the risk-free rate of return as measured by short-term Treasury bonds. The Treasury yield captures the risk-free return that Stokes could have earned in the market. And yields on short-term bonds measure that return more precisely, since long-term yields comprise both that value (which is relevant here) and the expected future path of interest rates (which is not). *See* David R. Harper, *Bonds: Treasury Yields and Interest Rates*, Investopedia (Feb. 11, 2025), https://perma.cc/L6UF-A976. So the right interest rate is the three-month Treasury yield, quoted on an investment basis. Between the date when Stokes reported his loss (October 12, 2018) and the date when I entered judgment in his favor (February 12, 2025), the average three-month Treasury rate was 2.54%. *See Market Yield on U.S. Treasury Securities at 3-Month Constant Maturity, Quoted on an Investment Basis (DGS3MO)*, FRED (accessed May 2, 2025), https://fred.stlouisfed.org/series/DGS3MO.

Stokes argues that I should instead use the interest rate set by Delaware law, which is the Federal Reserve discount rate plus 5 percentage points. Del. Code Ann. tit. 6, § 2301(a). But depending on when that rate is measured, it would either double or triple the rate calculated above, lavishing a premium on Stokes far above the risk-free return that he would have earned if he had been paid when his boat sank. *Interest Rates, Discount Rate for United States (INTDSRUSM193N)*, FRED (Oct. 4, 2021), https://fred.stlouisfed.org/series/INTDSRUSM193N. So I will not use Delaware's statutory rate.

4

Instead, Markel must pay Stokes a pre-judgment interest rate of 2.54%, compounded at three-month intervals starting October 12, 2018. The parties have not briefed the total interest payment that this calculation produces, so I leave it to them to crunch the numbers in the first instance. I trust that they will hammer out agreement on a number calculated in the way described above.

## II. I ALSO AWARD POST-JUDGMENT INTEREST

Stokes is also entitled to post-judgment interest from the date when I entered judgment in his favor to the date when the judgment is paid. 28 U.S.C. § 1961(a)–(b). The relevant statute sets the interest rate as "the weekly average 1-year constant maturity Treasury yield … for the calendar week preceding the date of the judgment." § 1961(a). I also trust that the parties will calculate the post-judgment number.

## III. STOKES MUST FILE A BILL OF COSTS

As the prevailing party, Stokes is also entitled to costs. Fed. R. Civ. P. 54(d)(1); D. Del. L.R. 54.1. Markel objects that the judgment said that "each party will bear its own costs, expenses, and attorneys' fees." D.I. 193; D.I. 195 at 7. But that merely set a status quo that Stokes could move to change. Now that Stokes has moved to be awarded costs, I find that the motion is proper and grant it.

That said, District of Delaware Local Rules require a party seeking costs to file a bill of costs that "clearly describe[s] each item of cost and compl[ies] with the provisions of 28 U.S.C. § 1924." D. Del. L.R. 54.1(a)(2). Stokes has not yet made that filing. He must do so within fourteen days of the order that I will file with this opinion. D. Del. L.R. 54.1(a)(1). Once he files the bill of costs, Markel will have fourteen days to "file specific objections to any item, with detailed justification." D. Del. L.R. 54.1(a)(3).

### IV. I Do Not Award Attorney's Fees

Stokes also wants Markel to pay his attorney's fees. The motion is late and fails on the merits anyway.

A motion for attorney's fees must "be filed no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). Yet Stokes waited 28 days after judgment to move for fees. D.I. 193; D.I. 194. That alone usually bars his motion. *See Altair Logix LLC v. Caterpillar Inc.*, No. 18-2057, 2019 WL 3219485, at \*3 (D. Del. July 17, 2019). And Stokes has not offered any reasons to excuse his late filing or even moved for it to be considered belatedly. Fed. R. Civ. P. 6(b). Instead, he has simply dumped this motion on the court, late and unexplained.

Stokes points out that he also demanded attorney's fees in his complaint. D.I. 194 at 9. But that is not good enough: He must file a motion for fees "no later than 14 days *after*" judgment. Fed. R. Civ. P. 54(d)(2)(B)(i) (emphasis added). A complaint that came more than eighteen months *before* judgment does not fall in that window. D.I. 130; D.I. 194; *see also Altair Logix*, 2019 WL 3219485, at \*2.

Even if Stokes's motion were timely, I would deny it. Stokes insists again and again that he is entitled to fees under Florida law. *See, e.g.*, D.I. 194 at 7–9. But as this Court has already ruled twice, Florida law does not apply. D.I.121 at 10–11, 25; D.I. 144 at 2. Instead, this case is governed by federal admiralty law and, when it is unclear, by DC law. D.I. 144 at 2. Admiralty generally requires each party to pay its own fees. *Misener Marine Constr., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010). It does, however, let parties recover fees for breach of a marine in-

surance contract when the applicable state's law allows it. *Id.* at 838 n.13; *All Underwriters v. Weisberg*, 222 F.3d 1309, 1312–15 (11th Cir. 2000). But DC does not award fees to parties who win such suits unless their conduct was "in bad faith, vexatious, wanton, or oppressive." *Cont'l Ins. Co. v. Lynham*, 293 A.2d 481, 482–83 (D.C. 1972).

That tees up Stokes's last stab at getting fees: His complaint leveled a host of claims against Markel that rested on accusing it of bad faith. D.I. 194 at 8. If those claims had succeeded, they might have opened the door to fees under admiralty or DC law. But I dismissed them all, and Markel prevailed only on a run-of-the-mill claim for breach of contract. D.I. 144 at 8. That does not entitle him to attorney's fees on top of it.

## V. I Do Not Reopen the Case

But Stokes is not done. He now insists that because a jury found that Markel breached the insurance contract, I must reinstate all his bad-faith claims. D.I. 194 at 8–10. It is not clear why he thinks that is proper; as best I can tell, he seems to think that because Markel breached a contract, he now gets a second crack at arguing that Markel acted in bad faith. *Id.* at 9–10. But nothing at trial suggested that Markel acted in bad faith, and Stokes offers no evidence in his briefing beyond this bald and specious syllogism. I dismissed the bad-faith causes of action because they duplicated the breach claim, were insufficiently plead, or were otherwise legally defective. D.I. 144 at 4–8. None of that is changed by a favorable verdict about breach, so I decline to reinstate the dismissed claims.

7

This is not the first time that Stokes's counsel has tried to use an unrelated motion to relitigate positions that he already lost:

- The Court denied two of Stokes's *Daubert* motions in 2022. D.I. 121 at 16–18. Instead of letting it rest, Stokes's counsel re-raised the same arguments three years later in a pretrial motion in limine—along with several different motions, all meritless, that counsel jammed into a single heading to evade this Court's limit on the number of pretrial motions. D.I. 161 at 19–22.

- This Court granted summary judgment to Markel on Stokes's argument that the insurer is estopped from denying coverage. D.I. 121 at 24–25. But that did not faze Stokes's lawyers. They insisted that they could present this evidence at trial anyway, proclaiming that a mere summary-judgment order "cannot operate to bar Plaintiff from offering evidence, testimony, and argument in support of" a claim that the Court had already granted judgment on. D.I. 161 at 43–44.

- After I dismissed all Stokes's claims other than breach of contract, his lawyers continued to list "[t]he amount of extracontractual damages Defendant is liable to Plaintiff for" as an unresolved issue that had to be settled at trial. D.I. 144 at 8; D.I. 161 at 13.

- In this very motion, counsel claims that he is entitled to fees under Florida law despite being told in two prior opinions that it does not apply. D.I. 121 at 10–11, 25; D.I. 144 at 2; D.I. 194 at 7–9.

Now counsel is at it again. I once again deny the request to relitigate issues that have already been resolved and I once again do not look kindly on counsel's obstinacy. Such conduct risks sanctions, including an award of attorney's fees to opposing counsel.

\* \* \* \* \*

I grant Stokes's motion for pre- and post-judgment interest. I am inclined to award him costs, but he must first file a bill of costs. I deny his requests for attorney's fees and to reinstate his dismissed claims.