IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES STOKES,

        *Plaintiff,*

    v.

                          No. 1:19-cv-02014-SB

MARKEL AMERICAN
INSURANCE CO.,

        *Defendant.*

---

David A. Neblett, James M. Mahaffey, III, John A. Wynn, NEBLETT LAW GROUP, Miami, Florida; Kyle Robert Brady, SALMON RICCHEZZA SINGER & TURCHI LLP, Philadelphia, Pennsylvania.

*Counsel for Plaintiff.*

Daryll Hawthorne-Bernardo, Timothy S. Martin, WHITE & WILLIAMS, Wilmington, Delaware; Marc L. Penchansky, WHITE & WILLIAMS, Philadelphia, Pennsylvania; Krista Acuña, HAMILTON, MILLER & BIRTHISEL LLP, Miami, Florida.

*Counsel for Defendant.*

---

**MEMORANDUM OPINION**

November 14, 2025

BIBAS, *Circuit Judge*, sitting by designation.

    Some cases are born frivolous. Others become frivolous because lawyers make them so. This case is the latter. Plaintiff James Stokes won a verdict of $646,000 after Markel American Insurance Co. refused to cover his sunken boat. D.I. 193. But plaintiff's counsel took that meritorious claim and drowned it in a cacophony of frivolous

motions, bumbling lawyering, and refusals to accept this Court's prior decisions. "Now counsel is at it again," again. *Stokes v. Markel Am. Ins. Co.*, 2025 WL 1328805, at *4 (D. Del. May 7, 2025). They have submitted a hodgepodge of costs that are mostly not recoverable, often not documented, and occasionally downright impudent. The Clerk slogged through those costs and found that virtually none were recoverable. D.I. 204. Counsel moved to reconsider, but the objections were as deficient as their initial filing. *See* D.I. 205. So I denied that motion. D.I. 207, 208. And now I order plaintiff's counsel to show cause why I should not sanction them for these frivolous requests.

## I. A HISTORY OF TRYING CONDUCT

This motion is the latest exasperating chapter in a history of exasperating conduct by plaintiff's counsel:

- They submitted a proposed pretrial order with 23 witnesses for a three-day trial. D.I. 161 at 15–17.

- They did not submit a proper exhibit list. *See* D.I. 168. They later revealed that one of their planned exhibits was "1,025 color photographs." D.I. 176.

- After I had limited the parties to three motions in limine each, plaintiff tried to skirt that rule by cramming three motions into a single heading. D.I. 160 ¶ 14; D.I. 161 at 18–22, 25–26. One repeated an argument that the Court had already rejected. D.I. 161 at 19–20 (arguing that because Stokes's policy did not "feature any 'anti-concurrent cause' language," Markel must "prove precisely the cause of loss and may not rely on a 'partial' cause of loss to foreclose

2

coverage"); D.I. 121 at 27 (rejecting this very argument). Two were *Daubert* motions, raised more than three-and-a-half years after the *Daubert* deadline, both of which repeated motions that the Court had already rejected. D.I. 69, ¶¶3(f)(ii), 11 (*Daubert* motions were due June 30, 2021); D.I. 121 at 15–18 (rejecting *Daubert* motions); D.I. 161 at 21–22 (re-raising exact same *Daubert* arguments in January 2025).

- After the Court granted summary judgment to Markel on one of Stokes's arguments, they insisted that they could still raise it at trial, proclaiming that the order "cannot operate to bar Plaintiff from offering evidence, testimony, and argument in support of" a theory that the Court had already granted judgment on. D.I. 121 at 24–25; D.I. 161 at 43–44.

- Although I had dismissed all Stokes's claims other than breach of contract, they still listed "extracontractual damages" as an unresolved issue to be decided at trial. D.I. 144 at 8; D.I. 161 at 13.

- After two earlier opinions were clear that Florida law did not govern this action, counsel still claimed that Florida law entitled them to attorney's fees. *Stokes*, 2025 WL 1328805, at *4.

- After their most recent vexatious motion, I warned counsel that "[s]uch conduct risks sanctions, including an award of attorney's fees to opposing counsel." *Id.*

3

## II. Plaintiff's Counsel Filed Frivolous Requests for Costs

Then they filed this bill of costs. It demanded almost $200,000, of which only $140 are taxable. D.I. 204 at 1, 7. Counsel's staggering number is the sum of a few whopping line items: $3,000 for printing, $70,000 for witness fees, $100,000 for "[o]ther costs." D.I. 198 at 1. But to figure out where those numbers come from, the clerk and defense counsel had to bushwhack through 155 pages of disorganized and unlabeled receipts, invoices, and spreadsheets. Many demand reimbursements that are simply outrageous.

*First*, plaintiff's counsel just threw together a disorganized stack of receipts. It is unclear what many are for, which categories of costs they belong to, or whether they can be taxed at all. *See, e.g.*, D.I. 198-2 at 110–48, 152–54. That left it to defense counsel to slosh through the debris and try to reconstruct what they even were supposed to be objecting to. Their objections are necessarily speculative, as they admit that they had to excavate the numbers from invoices "hidden within Plaintiff's Supporting Documents," guess how a number was calculated because "Plaintiff d[id] not specifically identify the transcripts for which he is seeking costs," and use a combination of shoe-leather detective work and sheer surmise to deduce what receipts were "presumably" for. D.I. 199 at 4–5, 8, 11–13.

Defense counsel is not Stokes's lawyer or accountant. *Cent. Del. Branch of the NAACP v. City of Dover*, 123 F.R.D. 85, 93 n.13 (D. Del. 1988). I do not look kindly on counsel demanding costs, dumping a pile of receipts on their opponent, and making them retrace their steps.

*Second*, the requested costs are often ridiculous. As the clerk explained, only limited categories of costs can be recovered. D. Del. L.R. 54.1(b)(11); D.I. 204 at 2–6. For example, parties may tax a $40 fee for witnesses for each day they attended court, as well as the witness's reasonable travel costs and a modest per diem for subsistence. 28 U.S.C. § 1821(a)–(d). And lawyers and parties must foot their own travel and meals. *McKnatt v. Delaware*, 369 F. Supp. 2d 521, 527 (D. Del. 2004).

Yet here is just a taste of what plaintiff's counsel demands reimbursement for:

- An unexplained receipt for a medium cappuccino with almond milk (50-cent surcharge). D.I. 198-2 at 55.

- $75.95 that Stokes spent in 2019 at a place in Bethany Beach, Delaware, called Freaky Tiki Teez. D.I. 198-2 at 142. What that place is, what Stokes bought there, and why that cost is taxable are unexplained. It seems to sell souvenir t-shirts. https://perma.cc/PVK7-LS4H.

- Two beers from a hotel that Stokes stayed in during trial. D.I. 198-2 at 64.

- $6,926.96 for "Various Meals" in Miami paid for by the client. D.I. 198-3 at 1.

- $2.19 for shaving cream. D.I. 198-2 at 148. No explanation. *Id.*

What categories of taxable costs do these belong to? How do they relate to trial? Who even bought the coffee and shaving cream? Plaintiff's counsel leaves those as life's unanswerable mysteries.

They also leave them as other people's job. Defense counsel had to take—and bill— time to find those plainly frivolous requests and many more like them, track down controlling caselaw, and argue why they need not pay for a slew of receipts that were

thrown together with no explanation of how they were connected to compensable costs or any evidence that they were.

This vexatious bill of costs caps a course of vexatious conduct. I order plaintiff's counsel to show cause why they should not be sanctioned under Federal Rule of Civil Procedure 11(b)(1)–(3) or 28 U.S.C. §1927 for their costs-related conduct and every other action that I identified in this opinion as part of their course of conduct. I will then decide whether to impose a sanction and, if so, what an appropriate sanction would be.