# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| JAMES STOKES, : | |
| : | C.A. No. 1:19-cv-02014-SB |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| MARKEL AMERICAN : | |
| INSURANCE COMPANY, : | |
| : | |
| Defendant. : | |

## EXPLANATION OF COUNSEL FOR PLAINTIFF JAMES STOKES IN RESPONSE TO THE COURT'S SHOW CAUSE ORDER [D.E. 210]

 

**SALMON RICCHEZZA SINGER & TURCHI LLP**
Kyle R. Brady, Esq. (DE ID #6763)
222 Delaware Avenue, 11th Floor
Wilmington, DE 19801
Phone: (302) 655-4290
Fax:    (302) 655-4291
kbrady@srstlaw.com
*Delaware Counsel for Plaintiff, James Stokes*

OF COUNSEL FOR PLAINTIFF:

**NEBLETT LAW GROUP**
David A. Neblett, Esq., B.C.S. (Admitted *Pro Hac Vice*)
James M. Mahaffey, III, Esq. (Admitted *Pro Hac Vice*)
2550 South Bayshore Drive, Suite 211
Miami, FL 33133
david@neblettlaw.com
james@neblettlaw.com

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff's counsel respectfully submits this response to the Court's Order to Show Cause. Plaintiff's counsel first and foremost offers our sincere apologies to the Court for conduct that the Court found frustrating, burdensome, or inconsistent with the orderly administration of this case. Plaintiff's counsel also apologizes to the Court, Clerks office and all counsel for difficulties resulting from the presentation of Plaintiff's Bill of Costs. It was not Plaintiff or Plaintiff's counsel's intention and counsel's actions were not taken in disregard of this Court's rulings or procedures but rather arose from efforts to zealously advocate for Plaintiff in this complex matter with a long, diverse, and unusual procedural history.

As this Court is aware, this case arose out of an insurance coverage dispute between the insured, JAMES STOKES ("Plaintiff"), and his insurer, MARKEL AMERICAN INSURANCE COMPANY ("Defendant") over Defendant's refusal to indemnify Plaintiff following a sudden, accidental, and fortuitous loss of Plaintiff's fully-insured 2017 Midnight Express 39' Open on October 11, 2018. This lawsuit was originally filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. Defendant removed the case to the United States District Court for the Southern District of Florida, and it was subsequently transferred to this Court over Plaintiff's objection. After nearly eight (8) years of litigation, the case having been transferred and removed to multiple districts, courts, and judges, involving multiple different firms for Defendant as well as the involvement of multiple Delaware co-counsel for Plaintiff, the Court entered Judgment in favor of Plaintiff following a Jury Verdict in his favor which was rendered within minutes of the start of deliberations, confirming with emphasis that the vessel was a total loss and Defendant improperly withheld $646,000.00 – full policy limits – from Mr. Stokes since 2018.

Counsel files this response and explanation in order to elaborate upon and explain many of the issues which this Court addressed within its Memorandum of Opinion, D.E. 210, including Plaintiff's bill of costs, Plaintiff's challenge to venue, Plaintiff's reconsideration of the dismissal of Plaintiff's extracontractual causes of action, Plaintiff's witness and exhibit lists, as well as other factors addressed by this Court. The Neblett Law Group acknowledges and appreciates that Plaintiff's Delaware co-counsel may make its own submission to address issues where our positions and interests are not fully aligned.

## II.   PLAINTIFF'S BILL OF COSTS

Counsel acknowledges the Court's concerns with the structure, clarity, and substance of the bill of costs and related filings. We regret that our submission required the Court and opposing counsel to expend significant time sifting through documentation. We take full responsibility for these deficiencies and will ensure that any future filings are organized, clear, and strictly compliant with the Federal Rules, Local Rules, and orders of this Court. We also regret that we did not transmit our Bill of Costs or Motion for Reconsideration of our Bill of Costs to Kyle Brady, Plaintiff's Delaware co-counsel, with sufficient time for him to conduct a substantive review of those filings before they were due.

Our understanding was that the costs had to be submitted on the form provided and much of the costs documents submitted were submitted to Plaintiff's counsel in the form and format presented by third parties. Thus, items like the drink charges referenced by this Court's Memorandum (D.E. 210) was included within Plaintiff's own hotel receipt for travel to Trial in February of 2025 appeared as a line item on his invoice from his hotel. Other travel expenses for Plaintiff's experts were provided to counsel for Plaintiff by our experts in the form originally presented as part of the costs incurred by the experts in furtherance of Plaintiff's case.

Following the clerk's decision to award Plaintiff One Hundred and Forty Dollars ($140.00) out of Plaintiff's total claimed costs, , Mr. Stokes instructed us to seek any additional amounts that were due and owed and we had been tasked with recovering as much in costs as possible, as our client had spent in excess of $200,000.00 out-of-pocket in litigating this matter, not including attorney's fees. Due to scheduling conflicts and other issues for both Florida and Delaware counsel, Mr. Brady learned the Motion for Reconsideration would be filed the night before it was due and had only a short amount of time to review it before it had to be filed.

Some costs submitted in this matter reflect expenditures that have been part of this litigation since its inception, when the case was originally filed years ago in the Circuit Court for Miami-Dade County, Florida. Numerous other expenses were incurred after the filing of the original state court Complaint and before removal and transfer of this case by the Defendant. Our Client believed that these costs would be recoverable as necessary and proper expenditures made in the course of compelling Defendant to issue a coverage determination such as those associated with travel to Delaware to inspect the vessel on multiple occasions, and later, to issue payment. Our attempt to recover these costs was not to burden this Court, the clerk, or counsel for Defendant, but rather to recover every possible dollar we could for our client.

Plaintiff notes, in an effort to provide context rather than to re-litigate issues, that those costs would have been recoverable in prior forums as well as under Plaintiff's tort causes of action. When Plaintiff initially filed this action in Florida, where these costs would be recoverable, there was an expectation that those costs Plaintiff expended out of pocket would be recoverable. Following the removal and transfer of this action, Plaintiff requested that we seek recovery of these costs and we deemed it necessary to preserve our rights to recover these costs through a later, independent action if necessary.

After Defendant maintained possession of the vessel despite its refusal to declare the vessel a total loss, Plaintiff requested from Defendant permission to move the Vessel from Delaware to Florida. Defendant refused to allow Plaintiff to move the Vessel and threatened that its removal would void coverage under the Policy and would result in spoliation of evidence.

Defendant's intentional failure to perform an inspection of the vessel on July 10, 2019 prejudiced Plaintiff's ability to regain possession and control of his vessel and led to Plaintiff incurring significant unnecessary cost which Plaintiff later sought to recover from Defendant.[1] Defendant's keeping of the vessel in a remote location forced Plaintiff's experts, who were all based in Florida, to travel out of state multiple times for multiple inspections, one of which Defendant did not even bother to show up for. Plaintiff was also forced to fly out of state for these inspections in a remote location multiple times and was unable to take the vessel to its manufacturer in Florida to assess damage, claims made by Defendant, and to attempt to repair the vessel.

The costs sought were part of the initial claims and damages asserted in Plaintiff's initial complaint in 2018. Defendant was also on notice that Plaintiff would seek costs incurred thereafter through subsequent amended pleadings, as Plaintiff amended his complaint to include a cause of action for conversion to recover damages in the form of storage invoices and costs. A large portion of the costs Plaintiff attempted to recover within his Bill of Costs dealt directly with expert witness travel and transport of the vessel to and from this remote location. Defendant's decision to keep the vessel in Delaware also forced Plaintiff to hire two (2) separate firms to serve as Delaware co-

---

[1] When Mr. Stokes continued to push for moving the Vessel to Florida, Markel demanded another reinspection, which was mutually coordinated to take place on July 10, 2019. Markel refused to appear at this reinspection. Mr. Stokes and his team of experts showed up to a remote location and incurred extensive expenses related to the reinspection. It should also be noted that Markel and its experts failed to arrange anything with the marina or any third parties for this reinspection, and it is clear to Mr. Stokes that Markel never actually intended to move forward with the reinspection.

counsel, incurring significant additional expenses. Plaintiff's Florida counsel legitimately believed that all of the costs included in the bill of costs were recoverable as allowances in the nature of incidental damages awarded to reimburse the prevailing party for expenses necessarily incurred in the assertion of the party's rights in court.

Although Plaintiff understands and does not wish to challenge this Court's ruling on his Bill of Costs, these expenses were actually incurred and spent by Plaintiff out of pocket. Plaintiff's counsel also conducted extensive research on this issue of recoverable costs under 28 U.S.C. §1920, including looking into recoverable vessel storage fees under Admiralty law, F.R.C.P. 54, Local Rule 54.1(a)(1), and their interpretive case law. See Cent. Delaware Branch of Nat. Ass'n for Advancement of Colored People (NCAAP) v. City of Dover, Del., 123 F.R.D. 85, 94 (D. Del. 1988).

The parties litigated the matter in Florida for a significant period before its removal and subsequent transfer. Many of the costs, travel expenses, witness-related expenditures, and supporting documentation date to that early stage of the case, as Plaintiff's firm and Plaintiff's experts were retained and based in Florida. In compiling materials accumulated over that multi-year span, including from prior counsel and prior procedural phases, we recognize that the level of organization and explanation that this Court rightly requires was not met and apologize for the inconvenience this has caused the Court and the clerk. Much of this litigation pre-dated the retention of Mr. Brady and his firm.

### III. PLAINTIFF'S COUNSEL DID NOT BELIEVE THAT SEEKING RECONSIDERATION OF THIS COURT'S ORDER(S) WAS IMPROPER OR IMPRUDENT.

Although Plaintiff recognizes and apologizes for the burden caused to this Court by way of Plaintiff's motions for reconsideration of this Court's Orders, Plaintiff's actions were taken for the purpose of zealous advocacy and/or to preserve certain items for appeal, rather than to "bog

down" this Court or "clog up" this Court's docket. The decision to seek reconsideration of these various Court Orders was done to preserve issues for appeal as well as to preserve any and all bad faith actions which could later be brought against the Defendant in a separate action.

IV.     **PLAINTIFF'S CHALLENGES TO VENUE WERE MADE IN GOOD FAITH.**

Plaintiff's counsel again apologizes to the Court for the inconvenience and undue burden caused by Plaintiff's challenges to venue in this action. Plaintiff's counsel was also obligated to give due consideration to their client's concerns as well as the numerous factors tying this case to Florida. For this reason, Plaintiff's counsel made the decision to rely on novel yet well-founded theories of law in an attempt to 1) keep this case in Florida and 2) apply Florida law to the dispute. Plaintiff maintains that these arguments were not frivolous and that to the extent that these arguments were contrary to other precedent, they were made in a good faith effort to change or extend the law.  Notably, Plaintiff's arguments have been accepted by other courts.

Plaintiff also sought to raise the well-researched and good-intentioned issue of Defendant's improper holding of the subject vessel and continued refusal to relocate the vessel back to Florida so it could be serviced and inspected by its manufacturer, Midnight Express. Although this issue may have been novel, and was ultimately not accepted by this Court, the factual circumstances of this case, including Defendant's defenses of design and manufacturing defect, warranted consideration of this legal theory and its preservation for appeal.  Plaintiff's counsel thoroughly researched the issues and would not have presented to the Court if Plaintiff's counsel did not believe there was good faith basis for doing so.

V.     **PLAINTIFF'S COUNSEL ADVOCATED ZEALOUSLY ON BEHALF OF THEIR CLIENT IN RAISING COMPLEX AND NOVEL LEGAL ISSUES RELATED TO PLAINTIFF'S CAUSES OF ACTION AND VENUE**

Plaintiff and Plaintiff's counsel apologize to the Court for Plaintiff's counsel's continued pursuit of extra-contractual damages against Defendant at Trial despite those causes of action

having been dismissed by this Court. However, as explained above, these attempts to reconsider dismissal were made not in an act of obstinance, but rather to preserve these issues for appeal and to preserve any and all bad faith actions which could later be brought against the Defendant in a separate action. Plaintiff's Florida counsel recognizes that this case was transferred to the District of Delaware and respects the local rules, customs, and laws of this Court. Plaintiff's Florida counsel has successfully argued and prevailed on many of these causes of action against insurers within Federal Districts located in Florida and routinely files similar causes of action in Florida Federal Court. Plaintiff's Counsel honestly believed that these items may still be recoverable as a procedural matter under the choice of law doctrine or under applicable Admiralty law. In this regard, Mr. Brady deferred to Florida counsel's superior knowledge of both Florida law and Federal Maritime law.

Plaintiff had a good faith basis to bring his cause of action for conversion as this action was premised on Defendant's conduct *after* Defendant improperly disclaimed coverage. "The essence of a conversion is a wrongful taking or a wrongful retention of property after a rightful possession." Choharis v. State Farm Fire & Cas. Co., 961 A.2d 1080, 1089 (D.C. 2008) (citing Shehyn v. District of Columbia, 392 A.2d 1008, 1012 (D.C.1978)).

Plaintiff's conversion claim was not premised on the same conduct that constituted the breach of contract.[2] Here, Defendant breached the contract by refusing to issue coverage and failing to make a coverage determination to pay insurance proceeds long after the Vessel sank during Hurricane Michael and improperly disclaimed coverage. Plaintiff specifically amended his

---

[2] "[A] cause of action that could be considered a tort independent of contract performance is a viable claim if the tort exists in its own right independent of the contract and any duty upon which the tort is based flows from considerations other than the contractual relationship." Ludwig & Robinson, PLLC v. BiotechPharma, LLC, 186 A.3d 105, 109-10 (D.C. Ct. App. 2018) (internal quotation marks and alterations omitted).

8

complaint to include this tort-based cause of action to recover damages incurred following the breach by the Defendant.

The Court discussed in its Memorandum Opinion, D.E. 144, which damages could be sought by Plaintiff through his breach of contract action. The Court suggested that Plaintiff seek extracontractual damages within his breach of contract clam and indicated that these damages would be included within Plaintiff's breach action. Specifically, the Court indicated that "Stokes' own filings confirm that Markel's possession of the boat sounds in contract." D.D. 144 at p. 5. The Court stated, "Stokes may repurpose these facts and argument as part of his breach-of-contract claim." Id. The Court dismissed Plaintiff's cause of action for conversion, but based upon the language of the memorandum and Plaintiff's counsel's understanding of the Court's ruling, Plaintiff's counsel reasonably believed that all damages Plaintiff was seeking through his conversion claim would be subsumed by Plaintiff's breach of contract action. The Memorandum Opinion was entered before Mr. Brady's involvement in this action, and Florida counsel did not believe that it was necessary to consult him regarding Florida counsel's interpretation of the Memorandum Opinion.

## VI. PLAINTIFF'S COUNSEL'S OTHER ACTIONS WHICH REQUIRE ADDRESSING

Plaintiff's counsel asserts that none of the actions taken in this case were intended to cause delay, increase expenses or for any other improper purpose. Plaintiff's counsel will address what we believe to be the remaining actions highlighted by this Court within its Memorandum Opinion [D.E. 209].

### a. Plaintiff's Witness List

Plaintiff's counsel understands and appreciates the Court's concern with listing 23 separate witnesses on the Plaintiff's Trial Witness List, D.E. 161. However, these witnesses were listed out

9

of an abundance of caution as records custodians for various third parties which had involvement in the repair, salvage, towing, or other aspects of this claim, loss, or vessel spanning the over seven (7) years since the vessel's sinking. Plaintiff's counsel deemed it necessary to list these witnesses in the event that the damages stemming from same would be allowed in at Trial.

At the time of filing the initial pre-Trial stipulation, Plaintiff believed it was necessary to list each of these witnesses in order to authenticate documents, photographs, and records that were a part of Plaintiff's claim for damages and that may have come in at Trial. These 23 witnesses, approximately half of which were records custodians, were ultimately pared down by Plaintiff following the Court's pre-Trial rulings, as Plaintiff filed a Trial Witness List consisting of only 7 witnesses, which Plaintiff submits is proper for a jury Trial. See D.E. 181.

**b. Plaintiff's Exhibit List**

Similar to listing a large number of witnesses out of an abundance of caution, Plaintiff listed a large number of "catch-all" exhibits and photographs not for the purposes of harassing counsel for Defendant or unduly burdening this Court. Rather, these exhibits were listed in this manner as each expert in this case had himself taken dozens, if not hundreds, of photographs of the subject vessel, and given the nature of the dispute, including manufacturing and design defects raised by Markel, and other factual issues, Plaintiff needed to be prepared to question any one of his witnesses or experts on these photographs. Markel contested the damages and amount of damages to the vessel and her components and Plaintiff needed to be able to rely on these documents in order to prove damages. Many of these photographs showed the subject vessel in different conditions, as well as components brought to issue by Defendant's "design defect" defense. In order to counter this defense, Plaintiff and Plaintiff's counsel deemed it necessary to list all of their expert's photographs, as well as Defendant's expert's photographs, which included

nearly two hundred (200) individual photographs, as would be needed to refute any claims of design defect at Trial. The damage to the vessel as well as the amount of damage were at issue as Defendant contested the scope and amount of damages until the eve of Trial, when Defendant stipulated that the vessel was a total loss.

Plaintiff filed a revised exhibit list in compliance with this Court's order, which did not interfere with the orderly administration of Trial. See D.E. 182. In listing these photographs, Plaintiff's Florida counsel reviewed this Court's pre-Trial procedures, relied on the assistance of local counsel, and believed we were acting in compliance with all procedures through the manner and means of disclosing these exhibits. When Plaintiff's counsel was unsure of what action to take relating to the marking, exchange, or listing of these exhibits, Plaintiff's counsel took appropriate action and sought clarification from the Court. See D.E. 176.

### c. Plaintiff's Motions in Limine

As to Plaintiff's Motions in Limine, Plaintiff apologizes for the frustration experienced by the Court due to the form of Plaintiff's Motions. Plaintiff's counsel had a good faith basis to believe that these motions in limine were sufficiently intertwined to warrant their assertion as a single filing. Plaintiff's counsel also believed that the issues necessarily raised, given the defenses raised by Defendant and likely to be raised at Trial, including limiting Defendant to certain defenses already raised, precluding Defendant from seeking to introduce evidence as to fraud, prohibiting Defendant from offering argument that an agency relationship existed between Plaintiff and his marine surveyor, and regarding the facts and circumstances concerning vessel losses other than the instant loss, as well as this case's unusual and lengthy procedural history.

To provide a basis for Plaintiff's actions, Plaintiff was very concerned that Defendant would attempt to conduct itself at Trial in the very manner with which Plaintiff's motions in limine

were drafted to address, and Plaintiff's counsel filed these motions in the form which they were filed in order to advocate for their client's concerns. Plaintiff filed these motions as a way to get in front of many of the issues raised at Trial.

## **CONCLUSION**

In sum, counsel apologizes for the presentation of the costs submission, for the filings that the Court viewed as vexatious, and for the strain this litigation placed on the Court. We assure the Court that no disrespect was intended. We remain committed to full compliance with all future orders and to conducting ourselves in a manner that assists—not burdens—the Court. Counsel apologizes for this conduct and did not believe that this conduct would be sanctionable.

Plaintiff maintains that sanctions are not warranted in this instance, as Plaintiff's counsel sought only to zealously advocate for their client, and not to disrupt the judicial process or place undue burden on the judicial system. The purpose behind [sanctions are] "to curb abusive litigation tactics and misuse of the court's process but ... not ... to hinder zealous advocacy .... " Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987). Sanctions are not meant to act as an automatic penalty against an attorney for losing an argument or even to inhibit "imaginative legal or factual approaches .... " Mary Ann Pensiero, Inc. v. Lingle, 84 7 F .2d 90, 94 (3d Cir. 1988). Plaintiff's counsel honestly believed that its conduct, though aggressive, was a proper exercise of zealous advocacy on behalf of its client. Courts in the District of Delaware have demonstrated a clear hesitation to impose sanctions in a way that would chill ordinary zealous advocacy. See Vehicle Operation Techs. LLC v. American Honda Motor Co., No. 13-537-RGA (D. Del. Sept. 12, 2014) (Rule 11 is intended to curb abusive tactics but not to 'hinder zealous advocacy'); Allscripts Healthcare, LLC v. Andor Health, LLC, No. 21-704-MAK (D. Del. June 21, 2022) (courts 'appreciate zealous advocacy' while policing candor and reasonableness); see also Katz v. Beebe

Healthcare, No. 22-625-WCB (D. Del. Apr. 30, 2024) (declining to impose sanctions where conduct, though vigorous, did not warrant the extraordinary step of sanctions). Counsel appreciates that the Court views its conduct differently and will modify their trial strategies going forward in light of the Court's observations. We respectfully request that the Court discharge the Order to Show Cause and decline to impose sanctions. Should the Court require further clarification or wish to address these concerns in a hearing, counsel will make themselves fully available.

WHEREFORE, Plaintiff, JAMES STOKES, respectfully requests that this Court decline to impose sanctions on Plaintiff or Plaintiff's counsel, discharge the Show Cause Order entered on November 14, 2025, and for any other relief that the Court deems just and proper.

Respectfully submitted,

**SALMON RICCHEZZA SINGER & TURCHI LLP**

 /s/ Kyle R. Brady
Kyle R. Brady, Esq. (DE ID #6763)
222 Delaware Avenue, 11th Floor
Wilmington, DE 19801
Phone: (302) 655-4290
Fax:    (302) 655-4291
kbrady@srstlaw.com
*Delaware Counsel for Plaintiff, James Stokes*

Dated: November 26, 2025

OF COUNSEL:

**NEBLETT LAW GROUP**
David A. Neblett, Esq., B.C.S. (Admitted *Pro Hac Vice*)
James M. Mahaffey, III, Esq. (Admitted *Pro Hac Vice*)
2550 South Bayshore Drive, Suite 211
Miami, FL 33133
david@neblettlaw.com
james@neblettlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a true and correct copy of the foregoing was served upon all counsel of record via PACER/ECF.

**SALMON RICCHEZZA SINGER & TURCHI LLP**

 /s/ Kyle R. Brady
Kyle R. Brady, Esq. (DE ID #6763)
222 Delaware Avenue, 11th Floor
Wilmington, DE 19801
Phone:  (302) 655-4290
Fax:     (302) 655-4291
kbrady@srstlaw.com
*Delaware Counsel for Plaintiff, James Stokes*

Dated:  November 26, 2025