IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES STOKES,

    *Plaintiff,*

    v.

    No. 1:19-cv-02014-SB

MARKEL AMERICAN
INSURANCE CO.,

    *Defendant.*

---

David A. Neblett, James M. Mahaffey, III, John A. Wynn, NEBLETT LAW GROUP, Miami, Florida; Kyle Robert Brady, SALMON RICCHEZZA SINGER & TURCHI LLP, Philadelphia, Pennsylvania.

*Counsel for Plaintiff.*

Daryll Hawthorne-Bernardo, Timothy S. Martin, WHITE & WILLIAMS LLP, Wilmington, Delaware; Marc L. Penchansky, WHITE & WILLIAMS LLP, Philadelphia, Pennsylvania; Krista Acuña, HAMILTON, MILLER & BIRTHISEL LLP, Miami, Florida.

*Counsel for Defendant.*

---

### MEMORANDUM OPINION

May 15, 2026

BIBAS, *Circuit Judge*, sitting by designation.

Loose lips sink ships; sloppy lawyering gums up courts. While litigating this ordinary insurance-coverage case, James Stokes's lawyers committed a series of errors.

So I ordered them to explain why they should not be sanctioned for their taxing conduct. Their response is unmoving. I now sanction some of his lawyers under § 1927 for some of their pretrial conduct, as well as their conduct related to the bill of costs.

## I. COUNSEL'S TRYING CONDUCT

Back in November 2025, I ordered counsel to show cause why they should not be sanctioned for:

(1) Submitting a proposed pretrial order with 23 witnesses for a three-day trial;

(2) Failing to submit a proper exhibit list, and then revealing that one planned exhibit was more than 1,000 photographs;

(3) Violating my limit on motions in limine by cramming three motions into one heading, each raising arguments that the Court had previously rejected;

(4) Trying to pursue a theory on which Markel had won summary judgment;

(5) Listing extracontractual damages as an issue for trial, despite dismissal of all non-contract claims;

(6) Claiming entitlement to attorney's fees under Florida law despite several opinions explaining that Florida law did not apply to this case; and

(7) Submitting a disorganized bill of costs, of which only $140 of the requested $193,491.08 were taxable, then baselessly objecting to the Clerk's taxation.

*Stokes v. Markel Am. Ins. Co.*, 2025 WL 3191143, at *1–2 (D. Del. Nov. 14, 2025). I address these actions in three groups: pretrial conduct (the first five items above); the fee request (the sixth); and conduct related to the bill of costs (the seventh).

## II. SOURCES OF SANCTIONS AUTHORITY

Lawyers must "certif[y]" that papers they present to the court "[are] not being presented for any improper purpose." Fed. R. Civ. P. 11(b)(1). They also certify that their "legal contentions are warranted by existing law or by a nonfrivolous argument" and that their "factual contentions have evidentiary support." *Id.* 11(b)(2)–(3).

2

Courts may sanction lawyers who violate that Rule. *Id.* 11(c)(1). But, when acting on its own, a court's authority to impose monetary sanctions is limited. *Id.* 11(c)(4), (5)(B). Under the Third Circuit's "supervisory rule," courts generally may not, once final judgment is entered, sanction lawyers for conduct that occurred before final judgment. *Prosser v. Prosser*, 186 F.3d 403, 405–06 & n.3 (3d Cir. 1999). That would foreclose Rule 11 sanctions for every instance of misconduct but the sixth or seventh.

But courts may also sanction lawyers who "multipl[y] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Sanctions imposed under § 1927 are limited to the "costs, expenses, and attorneys' fees reasonably incurred" because of misconduct. *Id.* The Third Circuit's "supervisory rule" does not apply to those sanctions. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101–02 (3d Cir. 2008). So under § 1927, I could sanction counsel for any of the conduct I identified.

To do so, I must find that counsel "has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential*, 278 F.3d 175, 188 (3d Cir. 2002). Even if a "single maneuver" by counsel does not amount to bad faith, the "totality of the campaign [counsel] waged" during litigation may rise to that level. *Id.* at 189. And meritless claims, if counsel "knew or should have known" that they were meritless, can show bad faith. *Id.* at 188 (quotation marks omitted). But "misunderstanding, … well-intentioned zeal," or "a mistake in professional judgment in pursuing a client's goals" is not bad faith. *LaSalle Nat'l Bank v. First Conn. Holding Grp.*, 287 F.3d 279, 289 (3d Cir. 2002) (quotation marks omitted).

### III. I SANCTION COUNSEL FOR SOME PRETRIAL CONDUCT

I do not sanction counsel again for failing to provide an appropriate witness and exhibit list (items (1) and (2) above). That failure raised distinct issues and created work for opposing counsel and the court, arguably multiplying proceedings and certainly increasing costs. *See* D.I. 161 at 15–17, D.I. 180, D.I. 183 (concerning witness list); D.I. 161 at 14, D.I. 162, D.I. 168, D.I. 170, D.I. 172, D.I. 173, D.I. 176, D.I. 177, D.I. 178 (concerning exhibits). And this conduct was vexatious and unreasonable: Discovery had long since closed, the local rules set forth clear requirements for the proposed pretrial order, and counsel had months to prepare lists. *See* D.I. 154; D.I. 160; D. Del. Local R. 16.3(c), (d).

Plus, I am skeptical of counsel's attempt to justify this conduct. There was no need to list witnesses who would testify about extracontractual damages because counsel had been told, in no uncertain terms, that those damages were off the table. Show Cause Resp., D.I. 211 at 9–10; *Stokes v. Markel Am. Ins. Co.*, 2023 WL 2401706, at *4 (D. Del. Mar. 8, 2023) ("This is a breach-of-contract case."). And given the time they had to prepare, counsel has no excuse for first failing to provide an exhibit list, then failing to provide one that reflected an efficient presentation of then-open questions. Show Cause Resp. at 10–11. The repeated failure to satisfy basic prerequisites of trial preparation indicates bad faith. But I previously ordered counsel to pay sanctions for this type of misconduct, so I do not impose more sanctions now. D.I. 206-4.

But I do sanction counsel for their improper motion in limine, insistence on pursuing a barred theory of the case, and attempt to pursue damages for dismissed claims (items (3), (4), and (5) above).

## A. Multiplying proceedings

Counsel's actions before trial generated motions in limine and created unnecessary work for opposing counsel and the Court. *See* D.I. 161 at 13, 17 (extra-contractual damages and objections), 18–22 (three-in-one motion in limine), 25–28 (defendant's response), 35–39, 42–45, 46–48 (defendant's motions in limine on rejected arguments, plaintiff's responses, defendant's replies), D.I. 168 (granting/denying motions). *Cf. In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015) (factor met where filings "created new issues" for bankruptcy trustee and court "to address").

## B. Vexatious and unreasonable

Counsel has no excuse for flouting my directions for motions in limine by raising several unrelated (and foreclosed) issues at once. Counsel says those issues were so "intertwined" that they could be raised together, but does not explain why. Show Cause Resp. at 11. Indeed, the three issues are, on their face, distinct—each was previously argued separately.

More to the point, counsel had lost all three issues years beforehand. So counsel should have known that none was the proper subject of a motion in limine. *Cf. Prosser*, 777 F.3d at 163 ("[F]ailure to engage in … a reasonable inquiry [into the facts] indicates … objectively unreasonable conduct.").

Nor is there any excuse for raising other long-settled arguments. Counsel tries to cling to issue preservation and reconsideration. Show Cause Resp. at 6, 8. But those excuses sink. To begin, nothing in the papers suggests that reconsideration was counsel's goal at the time. For instance, counsel did not acknowledge that they had already argued and lost most of these questions. *See* D.I. 161 at 19–21, 32, 42. The only time counsel admitted a loss, they bizarrely claimed that the summary-judgment ruling did not preclude re-arguing the issue at trial. *See id.* at 43. So contrary to counsel's revisionist history, these were not requests for reconsideration. Nor does the issue-preservation excuse make sense in its own right. *Cf. Com. of Pa. v. Local Union 542, Int'l Union of Operating Eng'rs*, 552 F.2d 498, 507–08 (3d Cir. 1977) ("The phrase 'preserving the record for appeal' is not a talisman that absolves a lawyer from his usual obligation to comply with … direct orders.").

## C. Increasing costs

Counsel's conduct necessitated objections, responses, a motion in limine, and court orders. *Cf. Prosser*, 777 F.3d at 163 (factor met where filings required the parties and court to "expend[] significant time and resources addressing them rather than the merits").

## D. Bad faith

If counsel had acknowledged prior binding decisions, they would not be in the situation they find themselves in today. Instead, counsel ignored or flatly denied them. And even when opposing counsel pointed out these deficiencies, counsel offered no explanation for their attempted defiance.

A meritless claim can indicate bad faith where counsel "knew or should have known" it was meritless. *Prudential*, 278 F.3d at 188. I see no reason not to conclude the same about a meritless argument—especially when counsel's conduct came down to refusing to acknowledge the law of the case.

Counsel's attempt at post-hoc rationalization shows only that they have no excuse. Show Cause Resp. at 6, 9 (claiming "zealous advocacy" and "[mis]understanding"). This conduct cannot be written off as a simple misunderstanding; the relevant prior order is unambiguous. *See Stokes*, 2023 WL 2401706 at *2, *4. And zealous advocacy is not a talisman that excuses repeated unreasonable conduct. *Cf. Local Union 542*, 552 F.2d at 506 ("[V]igor … has never included the flouting of a judge's rulings. … [D]efiance is not an element of zealousness."); *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 182 (3d Cir. 2003) ("Zealous advocacy … does not excuse a belligerent and uncompromising approach to the discovery process."). Counsel consistently failed to respect procedural rules, litigation norms, and prior rulings. This conduct, considered separately and collectively, showed bad faith. *Cf. Prudential*, 278 F.3d at 189 (noting sanctions can be based on a course of conduct even when "each single instance of misbehavior" might not be sanctionable "[w]hen viewed individually").

## IV. I DO NOT SANCTION COUNSEL FOR FEE-REQUEST CONDUCT

There is nothing inherently improper about requesting costs and attorney's fees. Yet here, counsel—just two months after being reminded to follow the law of the

case—once again ignored my clear and binding ruling that Florida law did not apply. *See Stokes v. Markel Am. Ins. Co.*, 2025 WL 1328805, at \*3 (D. Del. May 7, 2025).

This was vexatious, unreasonable, and in bad faith. But I cannot conclude that it multiplied the proceedings or increased costs. Counsel was repeatedly told that Florida law did not apply. *Id.* But that was only one basis for the request. *See id.* Even without it, the question of fees would have been presented. Nor was this a laborious argument for counsel to respond to, or for me to reject. So I will not sanction counsel under § 1927 for this conduct.

Rule 11 may still apply. Nonetheless, given the other sanctions I impose here for similar conduct, no further sanction for this action would promote the purpose of Rule 11. So I will not address it.

### V. I SANCTION COUNSEL FOR THEIR BILL-OF-COSTS CONDUCT

As I have explained, counsel's "hodgepodge" bill-of-costs submission included "downright impudent" requests and minimal documentation. *Stokes*, 2025 WL 3191143 at \*1. For instance, counsel demanded—without explanation—reimbursement for shaving cream, a random cappuccino, and an undescribed purchase from "Freaky Tiki Teez." *Id.* at \*2. Their motion for reconsideration was also unfounded. *See Stokes v. Markel Am. Ins. Co.*, 2025 WL 3180268 (D. Del. Nov. 14, 2025).

### A. Multiplying proceedings

Defense counsel, the Clerk, and the court had to wrangle the initial filing into something comprehensible. And counsel's decision to insist on these costs, even after

the Clerk and opposing counsel pointed out their errors, required a second round of work by opposing counsel and the Court.

### B. Vexatious and unreasonable

Counsel could have intelligibly organized its request from the get-go, and a simple inquiry into the civil and local rules would have pruned most of it. Instead, they submitted a mishmash filing with no legal basis for 99.928% of the requested costs, then doubled down.

### C. Increasing costs

Requiring everyone else to impose the factual and legal order that counsel failed to provide increased the cost of proceedings.

### D. Bad Faith

Counsel's disorganization and impudence demonstrated complete disregard for both the rules and the work that they offloaded onto others. Defense counsel's objections and the Clerk's taxation should have served as a wake-up call—nevertheless, counsel persisted.

Counsel now protests that their client pushed them to recover as many costs as possible and argues that he could have gotten these costs under Florida law. Show Cause Resp. 4. But counsel well knew that this case did not proceed under Florida law. *Stokes*, 2025 WL 1328805, at *3 (telling counsel this for the *third time*). Indeed, last time counsel tried to relitigate a resolved issue, I warned them that such misconduct might lead to sanctions. *Id.* at *4. And a bill of costs is not a backdoor to obtaining "incidental damages" incurred throughout litigation. Show Cause Resp. at 6; *Stokes*,

9

2025 WL 3180268, at *1. This raft of errors has traveled well beyond mistaken judgment or well-intentioned zeal.

\* \* \* \* \*

Section 1927 imposes a high bar. But counsel repeatedly displayed "a serious and studied disregard for the orderly process of justice." *LaSalle*, 287 F.3d at 288 (quotation marks omitted). Based on my observations of counsel at the pre-trial conference at trial, and based on the papers, Stokes's Florida-based counsel is to blame for this conduct—not his local Delaware counsel. *See* Show Cause Resp. 3, 4, 8, 9. So I order Stokes's Florida counsel to pay the excess costs, expenses, and fees that Markel American reasonably incurred because of the (3) improper motion in limine, (4) pursuit of a barred theory, (5) pursuit of damages for dismissed claims, and (7) bill-of-costs request. They shall not ask local Delaware counsel or their client to foot the bill for any part of this sanction and shall not seek reimbursement or indemnity from either of them or deduct these amounts from Plaintiff's recovery.