# James Stokes vs David Neblett (the Neblett Law Group)

# Filed 1/23/26

Filing # 240108149 E-Filed 01/23/2026 02:57:17 AM

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

JAMES STOKES, SR.,

   *Plaintiff,*

v.

DAVID AVELLAR NEBLETT, ESQ.,
THE NEBLETT LAW GROUP,
Successor in Interest to PERRY & NEBLETT, P.A.,

   *Defendants*

CIVIL DIVISION

CASE NO.:

---

## COMPLAINT

**JAMES STOKES, SR.,** the above-styled "Plaintiff", by and through counsel, does hereby submit this Complaint against the Defendants, **DAVID AVELLAR NEBLETT, ESQ.,** ("Mr. Neblett") and **THE NEBLETT LAW GROUP** (the "Law Group") as successor in interest to Perry & Neblett, P.A., (collectively herein the "Defendants") and states in support thereof the following:

## PARTIES

1. Plaintiff is an individual residing in Washington, D.C.

2. Defendant David Avellar Neblett, Esq., is an attorney licensed to practice law in the State of Florida.

3. Defendant The Neblett Law Group is a Florida law firm with its principal place of business in Miami-Dade County, Florida, and is successor in interest to Perry & Neblett, P.A.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to § 26.012, Florida Statutes, because the amount in controversy exceeds $50,000, exclusive of attorney fees, interests and costs.

5. Venue is proper in Miami-Dade County, Florida, because Defendants maintain offices in this county, the client trust account holding Plaintiff's judgment proceeds is maintained at a financial institution located in this county, and Defendants' wrongful withholding of Plaintiff's judgment funds occurred in Miami-Dade County, Florida.

## FACTS

6. On or about November 28, 2018, Plaintiff retained Defendants to represent him in litigation against Markel American Insurance Company ("Markel") arising from a marine insurance loss.

7. The parties executed a written Authority to Represent and Retainer Agreement ("Agreement").

8. The Agreement is a hybrid contingency and hourly agreement that strictly limits Defendants' ability to collect fees.

9. The Agreement provides, in relevant part, that Defendants are entitled to the greater of a contingency fee or hourly fees actually billed, subject to a mandatory accounting requirement and an absolute cap of one- and one-half times the contingency amount.

10. The Agreement expressly requires Defendant to provide a complete, itemized accounting of hours worked at least ten days before demanding payment of any hourly fees.

11. Compliance with this accounting requirement is an express condition precedent to any entitlement to hourly fees under the Agreement.

12. Defendants represented Plaintiff for nearly six years.

13. During that time period, Defendants **did not provide Plaintiff with a single invoice, billing statement, or itemized accounting.**

14. On or about May 2025, the United States District Court entered judgment in Plaintiff's favor against Markel in the amount of approximately $646,000 under the insurance contract.

15. After May, 2025, Markel paid the judgment proceeds into Defendants' client trust account.

16. Defendants have admitted receipt of the funds and have never disputed possession of the judgment proceeds.

17. Since at least July 2025, Plaintiff has repeatedly demanded immediate disbursement of the entire judgment recovery, together with a full accounting of trust funds, copies of all invoices and billing records, and information regarding interest paid or owed on the judgment.

18. Defendants have refused to provide any invoices or accounting and have refused to disburse any portion of the funds to Plaintiff.

19. Defendants claim entitlement to retain the entire $646,000 judgment recovery as fees, asserting for the first time that their alleged fees exceed $800,000, thereby placing the entirety of Plaintiff's recovery in dispute.

20. Defendants' claim is unsupported by any documentation and directly violates the express terms of the Agreement.

21. Defendants' conduct occurred after significant malpractice in the underlying litigation, including filing an untimely petition for attorney fees (denied in its entirety), filing a grossly deficient motion for costs (substantial part of which was denied), and submitting

filings so deficient that the court ordered Defendants to show cause and threatened sanctions. (*see Attached Memorandum Opinion as Exhibit 1*)

22. As a direct result of Defendants' negligence, Plaintiff permanently lost the ability to recover attorney fees and taxable costs from Markel. Under **Federal Rule of Civil Procedure 54(d)(2)(B)**, any motion or petition for attorney fees was required to be filed no later than fourteen (14) days after entry of judgment. Defendants failed to file a petition for attorney fees within that mandatory deadline, did not seek or obtain an extension, and filed their petition untimely. As a result, Plaintiff's right to recover attorney fees and costs from Markel was waived as a matter of law.

23. The United States District Court expressly found that Plaintiff's counsel engaged in deficient and negligent litigation conduct. In its Memorandum Opinion dated November 14, 2025, the Court held that counsel "took [a] meritorious claim and drowned it in a cacophony of frivolous motions, bumbling lawyering, and refusals to accept this Court's prior decisions," and concluded that "[s]ome cases are born frivolous. Others become frivolous because lawyers make them so. This case is the latter." The Court detailed repeated failures to comply with procedural rules and deadlines, denied nearly all requested costs, and ordered Plaintiff's counsel to show cause why they should not be sanctioned under Federal Rule of Civil Procedure 11 and 28 U.S.C. §1927 for their conduct.

24. But for Defendants' negligence including the failure to timely file a petition for attorney fees within the fourteen (14) day deadline mandated by Federal Rule of Civil Procedure 54(d)(2)(B), Plaintiff would have recovered attorney fees and taxable litigation costs from Markel. Instead, Defendants' untimely filing resulted in waiver of those recoverable

amounts, and Defendants now improperly seek to retain Plaintiff's judgment proceeds to offset losses caused by their own negligence and procedural failures.

25. Defendants' continued withholding of trust funds is ongoing and intentional.

## COUNT I- Legal Malpractice

26. Plaintiff realleges paragraphs 1 through 25 as if fully restated herein but does not reallege any allegations contained within the other Counts.

27. At all times from the date of the initial engagement letter, Defendants were Plaintiff's attorney.

28. Defendants owed Plaintiff a duty to exercise the reasonable skill, care, and diligence of competent Florida attorneys.

29. Defendants breached that duty by, and among other things, failing to timely file a petition for attorney fees, filing legally deficient pleadings, and failing to comply with applicable procedural rules.

30. But for Defendants' negligence, Plaintiff would have recovered attorney fees and costs from Markel.

31. Defendants now claim entitlement to retain the entire $646,000 judgment recovery as payment of their fees. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages equal to the full amount of the judgment proceeds wrongfully withheld, together with the loss of attorney fees and taxable costs that would have been recovered from Markel but for Defendants' malpractice.

32. But for Defendants' negligence, Plaintiff would have prevailed on his petitions for attorney fees and costs and recovered those amounts from Markel.

## COUNT II- Breach of Fiduciary Duty

**(Defendant David Avellar Neblett)**

33. Plaintiff realleges paragraphs 1 through 25 as if fully restated herein but does not reallege any allegations contained within the other Counts.

34. Defendant Mr. Neblett owed Plaintiff fiduciary duties of loyalty, honesty, full disclosure, care, and proper handling of client funds.

35. Defendant breached those duties by:

   a. Withholding client funds held in trust;

   b. Refusing to provide a trust accounting;

   c. Asserting unsupported and excessive fee claims;

   d. Placing his own financial interests above Plaintiff's.

36. Mr. Neblett's breaches were intentional, willful, and in bad faith.

37. Plaintiff is entitled to damages and forfeiture of fees.

## COUNT III – Conversion

### (All Defendants)

38. Plaintiff realleges paragraphs 1 through 25 as if fully restated herein but does not reallege any allegations contained within the other Counts.

39. Plaintiff has an immediate right to possession of the judgment proceeds held in Defendants' trust account.

40. Defendants have wrongfully exercised dominion and control over those funds inconsistent with Plaintiff's ownership rights and improperly held themselves out as the owner of the judgment proceeds.

41. Plaintiff has repeatedly demanded disbursement of the entire judgment proceeds held in Defendants' trust account.

42. Defendants' refusal to deliver trust funds upon demand constitutes conversion under Florida law.

43. Plaintiff has suffered loss of use of his funds and damages as a result of defendants' continued dominion and control over the entire judgment recovery, which constitutes conversion under Florida law.

### COUNT IV- Breach of Contract

### (All Defendants)

44. Plaintiff realleges paragraphs 1 through 25 as if fully restated herein but does not reallege any allegations contained within the other Counts.

45. The written Authority to Represent and Retainer Agreement is a valid and enforceable contract between Plaintiff and Defendants.

46. Defendants are bound by the terms of the Agreement.

47. Defendants materially breached the Agreement by failing to provide invoices, failing to provide the required accounting, exceeding the contractual fee cap, and withholding funds without contractual authority.

48. Defendants' failure to satisfy the accounting requirement, which is an express condition precedent under the Agreement, bars any recovery of hourly fees as a matter of contract law.

49. Plaintiff suffered damages as a result of this breach in an amount equal to the entire $646,000 judgment recovery wrongfully withheld by Defendants.

### COUNT V- Declaratory Judgment

50. Plaintiff realleges paragraphs 1 through 25 as if fully restated herein but does not reallege any allegations contained within the other Counts.

51. An actual controversy exists regarding Defendants' entitlement to fees.

52. Plaintiff seeks a declaration that:

    a. Defendants are not entitled to any hourly fees due to failure to bill or account;

    b. Defendants' maximum fee entitlement is limited to the contingency amount, subject to contractual reductions;

    c. Defendants have no right to retain the entire judgment recovery.

    d. Defendants are required to immediately disburse all judgment proceeds not subject to a good faith dispute and may not withhold client funds pending unilateral fee demands.

## COUNT VI- Accounting, Disgorgement, Fee Forfeiture

53. Plaintiff realleges paragraphs 1 through 25 as if fully restated herein but does not reallege any allegations contained within the other Counts.

54. Defendants hold Plaintiff's funds in a fiduciary capacity.

55. Legal remedies are inadequate because Defendants exclusively control the trust account holding Plaintiff's funds and have refused to provide an accounting or disburse funds absent court intervention.

56. Equity requires a full accounting of all trust funds, receipts, disbursements, and claimed fees.

57. Due to Defendants' misconduct, Plaintiff is entitled to disgorgement and forfeiture of fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that the Court:

A. Enter judgment in favor of Plaintiff on all counts, including, without limitation a monetary judgement of not less than $646,000;

B. Order immediate turnover of the entire judgment recovery wrongfully held in Defendants' trust account;

C. Alternatively, order Defendants to deposit the entire judgment recovery into the registry of the Court pending final adjudication of Defendants' claimed fee defenses;

D. Compel a full trust account accounting and production of billing records;

E. Declare Defendants' fee claims unenforceable beyond the contractual limits;

F. Award compensatory damages, interest, and costs;

G. Award fee forfeiture and disgorgement;

H. Grant such other relief as the Court deems just and proper.

Dated: January 23, 2026

Respectfully Submitted,

*Lee Dougherty*

Lee Dougherty, Counsel for Plaintiffs
Florida Bar Number 0429147
Effectus, PLLC
1928 South Patrick Dr
Indian Harbor Beach, FL 32937
321-286 0656
ldougherty@effectus.legal

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JAMES STOKES,

        *Plaintiff,*

        v.

MARKEL AMERICAN
INSURANCE CO.,

        *Defendant.*

No. 1:19-cv-02014-SB

---

David A. Neblett, James M. Mahaffey, III, John A. Wynn, NEBLETT LAW GROUP, Miami, Florida; Kyle Robert Brady, SALMON RICCHEZZA SINGER & TURCHI LLP, Philadelphia, Pennsylvania.

    *Counsel for Plaintiff.*

Daryll Hawthorne-Bernardo, Timothy S. Martin, WHITE & WILLIAMS, Wilmington, Delaware; Marc L. Penchansky, WHITE & WILLIAMS, Philadelphia, Pennsylvania; Krista Acuña, HAMILTON, MILLER & BIRTHISEL LLP, Miami, Florida.

    *Counsel for Defendant.*

---

### MEMORANDUM OPINION

November 14, 2025

BIBAS, *Circuit Judge,* sitting by designation.

Some cases are born frivolous. Others become frivolous because lawyers make them so. This case is the latter. Plaintiff James Stokes won a verdict of $646,000 after Markel American Insurance Co. refused to cover his sunken boat. D.I. 193. But plaintiff's counsel took that meritorious claim and drowned it in a cacophony of frivolous

motions, bumbling lawyering, and refusals to accept this Court's prior decisions. "Now counsel is at it again," again. *Stokes v. Markel Am. Ins. Co.*, 2025 WL 1328805, at *4 (D. Del. May 7, 2025). They have submitted a hodgepodge of costs that are mostly not recoverable, often not documented, and occasionally downright impudent. The Clerk slogged through those costs and found that virtually none were recoverable. D.I. 204. Counsel moved to reconsider, but the objections were as deficient as their initial filing. *See* D.I. 205. So I denied that motion. D.I. 207, 208. And now I order plaintiff's counsel to show cause why I should not sanction them for these frivolous requests.

## I. A HISTORY OF TRYING CONDUCT

This motion is the latest exasperating chapter in a history of exasperating conduct by plaintiff's counsel:

- They submitted a proposed pretrial order with 23 witnesses for a three-day trial. D.I. 161 at 15–17.

- They did not submit a proper exhibit list. *See* D.I. 168. They later revealed that one of their planned exhibits was "1,025 color photographs." D.I. 176.

- After I had limited the parties to three motions in limine each, plaintiff tried to skirt that rule by cramming three motions into a single heading. D.I. 160 ¶ 14; D.I. 161 at 18–22, 25–26. One repeated an argument that the Court had already rejected. D.I. 161 at 19–20 (arguing that because Stokes's policy did not "feature any 'anti-concurrent cause' language," Markel must "prove precisely the cause of loss and may not rely on a 'partial' cause of loss to foreclose

2

coverage"); D.I. 121 at 27 (rejecting this very argument). Two were *Daubert* motions, raised more than three-and-a-half years after the *Daubert* deadline, both of which repeated motions that the Court had already rejected. D.I. 69, ¶¶3(f)(ii), 11 (*Daubert* motions were due June 30, 2021); D.I. 121 at 15–18 (rejecting *Daubert* motions); D.I. 161 at 21–22 (re-raising exact same *Daubert* arguments in January 2025).

- After the Court granted summary judgment to Markel on one of Stokes's arguments, they insisted that they could still raise it at trial, proclaiming that the order "cannot operate to bar Plaintiff from offering evidence, testimony, and argument in support of" a theory that the Court had already granted judgment on. D.I. 121 at 24–25; D.I. 161 at 43–44.

- Although I had dismissed all Stokes's claims other than breach of contract, they still listed "extracontractual damages" as an unresolved issue to be decided at trial. D.I. 144 at 8; D.I. 161 at 13.

- After two earlier opinions were clear that Florida law did not govern this action, counsel still claimed that Florida law entitled them to attorney's fees. *Stokes*, 2025 WL 1328805, at *4.

- After their most recent vexatious motion, I warned counsel that "[s]uch conduct risks sanctions, including an award of attorney's fees to opposing counsel." *Id.*

3

## II. PLAINTIFF'S COUNSEL FILED FRIVOLOUS REQUESTS FOR COSTS

Then they filed this bill of costs. It demanded almost $200,000, of which only $140 are taxable. D.I. 204 at 1, 7. Counsel's staggering number is the sum of a few whopping line items: $3,000 for printing, $70,000 for witness fees, $100,000 for "[o]ther costs." D.I. 198 at 1. But to figure out where those numbers come from, the clerk and defense counsel had to bushwhack through 155 pages of disorganized and unlabeled receipts, invoices, and spreadsheets. Many demand reimbursements that are simply outrageous.

*First*, plaintiff's counsel just threw together a disorganized stack of receipts. It is unclear what many are for, which categories of costs they belong to, or whether they can be taxed at all. *See, e.g.*, D.I. 198-2 at 110–48, 152–54. That left it to defense counsel to slosh through the debris and try to reconstruct what they even were supposed to be objecting to. Their objections are necessarily speculative, as they admit that they had to excavate the numbers from invoices "hidden within Plaintiff's Supporting Documents," guess how a number was calculated because "Plaintiff d[id] not specifically identify the transcripts for which he is seeking costs," and use a combination of shoe-leather detective work and sheer surmise to deduce what receipts were "presumably" for. D.I. 199 at 4–5, 8, 11–13.

Defense counsel is not Stokes's lawyer or accountant. *Cent. Del. Branch of the NAACP v. City of Dover*, 123 F.R.D. 85, 93 n.13 (D. Del. 1988). I do not look kindly on counsel demanding costs, dumping a pile of receipts on their opponent, and making them retrace their steps.

4

*Second,* the requested costs are often ridiculous. As the clerk explained, only limited categories of costs can be recovered. D. Del. L.R. 54.1(b)(11); D.I. 204 at 2–6. For example, parties may tax a $40 fee for witnesses for each day they attended court, as well as the witness's reasonable travel costs and a modest per diem for subsistence. 28 U.S.C. § 1821(a)–(d). And lawyers and parties must foot their own travel and meals. *McKnatt v. Delaware,* 369 F. Supp. 2d 521, 527 (D. Del. 2004).

Yet here is just a taste of what plaintiff's counsel demands reimbursement for:

- An unexplained receipt for a medium cappuccino with almond milk (50-cent surcharge). D.I. 198-2 at 55.

- $75.95 that Stokes spent in 2019 at a place in Bethany Beach, Delaware, called Freaky Tiki Teez. D.I. 198-2 at 142. What that place is, what Stokes bought there, and why that cost is taxable are unexplained. It seems to sell souvenir t-shirts. https://perma.cc/PVK7-LS4H.

- Two beers from a hotel that Stokes stayed in during trial. D.I. 198-2 at 64.

- $6,926.96 for "Various Meals" in Miami paid for by the client. D.I. 198-3 at 1.

- $2.19 for shaving cream. D.I. 198-2 at 148. No explanation. *Id.*

What categories of taxable costs do these belong to? How do they relate to trial? Who even bought the coffee and shaving cream? Plaintiff's counsel leaves those as life's unanswerable mysteries.

They also leave them as other people's job. Defense counsel had to take—and bill—time to find those plainly frivolous requests and many more like them, track down controlling caselaw, and argue why they need not pay for a slew of receipts that were

thrown together with no explanation of how they were connected to compensable costs or any evidence that they were.

This vexatious bill of costs caps a course of vexatious conduct. I order plaintiff's counsel to show cause why they should not be sanctioned under Federal Rule of Civil Procedure 11(b)(1)–(3) or 28 U.S.C. § 1927 for their costs-related conduct and every other action that I identified in this opinion as part of their course of conduct. I will then decide whether to impose a sanction and, if so, what an appropriate sanction would be.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES STOKES,

   *Plaintiff,*

   v.

MARKEL AMERICAN
INSURANCE CO.,

   *Defendant.*

No. 1:19-cv-02014-SB

### ORDER

1. **I ORDER** plaintiff's counsel to file an explanation within 14 days of this order showing cause why they should not be sanctioned under 28 U.S.C. §1927 or Federal Rule of Civil Procedure 11(b)(1)–(3) for the conduct described in the accompanying opinion.

Dated: November 14, 2025.

_____
UNITED STATES CIRCUIT JUDGE

# Memorandum Opinion

# Honorable Judge Bibas

# Issued 5/15/26

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JAMES STOKES,

    *Plaintiff,*

    v.

                            No. 1:19-cv-02014-SB

MARKEL AMERICAN
INSURANCE CO.,

    *Defendant.*

---

David A. Neblett, James M. Mahaffey, III, John A. Wynn, NEBLETT LAW GROUP, Miami, Florida; Kyle Robert Brady, SALMON RICCHEZZA SINGER & TURCHI LLP, Philadelphia, Pennsylvania.

*Counsel for Plaintiff.*

Daryll Hawthorne-Bernardo, Timothy S. Martin, WHITE & WILLIAMS LLP, Wilmington, Delaware; Marc L. Penchansky, WHITE & WILLIAMS LLP, Philadelphia, Pennsylvania; Krista Acuña, HAMILTON, MILLER & BIRTHISEL LLP, Miami, Florida.

*Counsel for Defendant.*

---

## MEMORANDUM OPINION

May 15, 2026

BIBAS, *Circuit Judge*, sitting by designation.

Loose lips sink ships; sloppy lawyering gums up courts. While litigating this ordinary insurance-coverage case, James Stokes's lawyers committed a series of errors.

So I ordered them to explain why they should not be sanctioned for their taxing conduct. Their response is unmoving. I now sanction some of his lawyers under § 1927 for some of their pretrial conduct, as well as their conduct related to the bill of costs.

## I. COUNSEL'S TRYING CONDUCT

Back in November 2025, I ordered counsel to show cause why they should not be sanctioned for:

(1) Submitting a proposed pretrial order with 23 witnesses for a three-day trial;

(2) Failing to submit a proper exhibit list, and then revealing that one planned exhibit was more than 1,000 photographs;

(3) Violating my limit on motions in limine by cramming three motions into one heading, each raising arguments that the Court had previously rejected;

(4) Trying to pursue a theory on which Markel had won summary judgment;

(5) Listing extracontractual damages as an issue for trial, despite dismissal of all non-contract claims;

(6) Claiming entitlement to attorney's fees under Florida law despite several opinions explaining that Florida law did not apply to this case; and

(7) Submitting a disorganized bill of costs, of which only $140 of the requested $193,491.08 were taxable, then baselessly objecting to the Clerk's taxation.

*Stokes v. Markel Am. Ins. Co.*, 2025 WL 3191143, at *1–2 (D. Del. Nov. 14, 2025). I address these actions in three groups: pretrial conduct (the first five items above); the fee request (the sixth); and conduct related to the bill of costs (the seventh).

## II. SOURCES OF SANCTIONS AUTHORITY

Lawyers must "certif[y]" that papers they present to the court "[are] not being presented for any improper purpose." Fed. R. Civ. P. 11(b)(1). They also certify that their "legal contentions are warranted by existing law or by a nonfrivolous argument" and that their "factual contentions have evidentiary support." *Id.* 11(b)(2)–(3).

2

Courts may sanction lawyers who violate that Rule. *Id.* 11(c)(1). But, when acting on its own, a court's authority to impose monetary sanctions is limited. *Id.* 11(c)(4), (5)(B). Under the Third Circuit's "supervisory rule," courts generally may not, once final judgment is entered, sanction lawyers for conduct that occurred before final judgment. *Prosser v. Prosser*, 186 F.3d 403, 405–06 & n.3 (3d Cir. 1999). That would foreclose Rule 11 sanctions for every instance of misconduct but the sixth or seventh.

But courts may also sanction lawyers who "multipl[y] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Sanctions imposed under § 1927 are limited to the "costs, expenses, and attorneys' fees reasonably incurred" because of misconduct. *Id.* The Third Circuit's "supervisory rule" does not apply to those sanctions. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101–02 (3d Cir. 2008). So under § 1927, I could sanction counsel for any of the conduct I identified.

To do so, I must find that counsel "has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential*, 278 F.3d 175, 188 (3d Cir. 2002). Even if a "single maneuver" by counsel does not amount to bad faith, the "totality of the campaign [counsel] waged" during litigation may rise to that level. *Id.* at 189. And meritless claims, if counsel "knew or should have known" that they were meritless, can show bad faith. *Id.* at 188 (quotation marks omitted). But "misunderstanding, … well-intentioned zeal," or "a mistake in professional judgment in pursuing a client's goals" is not bad faith. *LaSalle Nat'l Bank v. First Conn. Holding Grp.*, 287 F.3d 279, 289 (3d Cir. 2002) (quotation marks omitted).

3

### III. I SANCTION COUNSEL FOR SOME PRETRIAL CONDUCT

I do not sanction counsel again for failing to provide an appropriate witness and exhibit list (items (1) and (2) above). That failure raised distinct issues and created work for opposing counsel and the court, arguably multiplying proceedings and certainly increasing costs. *See* D.I. 161 at 15–17, D.I. 180, D.I. 183 (concerning witness list); D.I. 161 at 14, D.I. 162, D.I. 168, D.I. 170, D.I. 172, D.I. 173, D.I. 176, D.I. 177, D.I. 178 (concerning exhibits). And this conduct was vexatious and unreasonable: Discovery had long since closed, the local rules set forth clear requirements for the proposed pretrial order, and counsel had months to prepare lists. *See* D.I. 154; D.I. 160; D. Del. Local R. 16.3(c), (d).

Plus, I am skeptical of counsel's attempt to justify this conduct. There was no need to list witnesses who would testify about extracontractual damages because counsel had been told, in no uncertain terms, that those damages were off the table. Show Cause Resp., D.I. 211 at 9–10; *Stokes v. Markel Am. Ins. Co.*, 2023 WL 2401706, at *4 (D. Del. Mar. 8, 2023) ("This is a breach-of-contract case."). And given the time they had to prepare, counsel has no excuse for first failing to provide an exhibit list, then failing to provide one that reflected an efficient presentation of then-open questions. Show Cause Resp. at 10–11. The repeated failure to satisfy basic prerequisites of trial preparation indicates bad faith. But I previously ordered counsel to pay sanctions for this type of misconduct, so I do not impose more sanctions now. D.I. 206-4.

4

But I do sanction counsel for their improper motion in limine, insistence on pursuing a barred theory of the case, and attempt to pursue damages for dismissed claims (items (3), (4), and (5) above).

## A. Multiplying proceedings

Counsel's actions before trial generated motions in limine and created unnecessary work for opposing counsel and the Court. *See* D.I. 161 at 13, 17 (extra-contractual damages and objections), 18–22 (three-in-one motion in limine), 25–28 (defendant's response), 35–39, 42–45, 46–48 (defendant's motions in limine on rejected arguments, plaintiff's responses, defendant's replies), D.I. 168 (granting/denying motions). *Cf. In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015) (factor met where filings "created new issues" for bankruptcy trustee and court "to address").

## B. Vexatious and unreasonable

Counsel has no excuse for flouting my directions for motions in limine by raising several unrelated (and foreclosed) issues at once. Counsel says those issues were so "intertwined" that they could be raised together, but does not explain why. Show Cause Resp. at 11. Indeed, the three issues are, on their face, distinct—each was previously argued separately.

More to the point, counsel had lost all three issues years beforehand. So counsel should have known that none was the proper subject of a motion in limine. *Cf. Prosser*, 777 F.3d at 163 ("[F]ailure to engage in ... a reasonable inquiry [into the facts] indicates ... objectively unreasonable conduct.").

5

Nor is there any excuse for raising other long-settled arguments. Counsel tries to cling to issue preservation and reconsideration. Show Cause Resp. at 6, 8. But those excuses sink. To begin, nothing in the papers suggests that reconsideration was counsel's goal at the time. For instance, counsel did not acknowledge that they had already argued and lost most of these questions. *See* D.I. 161 at 19–21, 32, 42. The only time counsel admitted a loss, they bizarrely claimed that the summary-judgment ruling did not preclude re-arguing the issue at trial. *See id.* at 43. So contrary to counsel's revisionist history, these were not requests for reconsideration. Nor does the issue-preservation excuse make sense in its own right. *Cf. Com. of Pa. v. Local Union 542, Int'l Union of Operating Eng'rs*, 552 F.2d 498, 507–08 (3d Cir. 1977) ("The phrase 'preserving the record for appeal' is not a talisman that absolves a lawyer from his usual obligation to comply with … direct orders.").

### C. Increasing costs

Counsel's conduct necessitated objections, responses, a motion in limine, and court orders. *Cf. Prosser*, 777 F.3d at 163 (factor met where filings required the parties and court to "expend[] significant time and resources addressing them rather than the merits").

### D. Bad faith

If counsel had acknowledged prior binding decisions, they would not be in the situation they find themselves in today. Instead, counsel ignored or flatly denied them. And even when opposing counsel pointed out these deficiencies, counsel offered no explanation for their attempted defiance.

6

A meritless claim can indicate bad faith where counsel "knew or should have known" it was meritless. *Prudential*, 278 F.3d at 188. I see no reason not to conclude the same about a meritless argument—especially when counsel's conduct came down to refusing to acknowledge the law of the case.

Counsel's attempt at post-hoc rationalization shows only that they have no excuse. Show Cause Resp. at 6, 9 (claiming "zealous advocacy" and "[mis]understanding"). This conduct cannot be written off as a simple misunderstanding; the relevant prior order is unambiguous. *See Stokes*, 2023 WL 2401706 at *2, *4. And zealous advocacy is not a talisman that excuses repeated unreasonable conduct. *Cf. Local Union 542*, 552 F.2d at 506 ("[V]igor ... has never included the flouting of a judge's rulings. ... [D]efiance is not an element of zealousness."); *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 182 (3d Cir. 2003) ("Zealous advocacy ... does not excuse a belligerent and uncompromising approach to the discovery process."). Counsel consistently failed to respect procedural rules, litigation norms, and prior rulings. This conduct, considered separately and collectively, showed bad faith. *Cf. Prudential*, 278 F.3d at 189 (noting sanctions can be based on a course of conduct even when "each single instance of misbehavior" might not be sanctionable "[w]hen viewed individually").

## IV. I Do Not Sanction Counsel for Fee-Request Conduct

There is nothing inherently improper about requesting costs and attorney's fees. Yet here, counsel—just two months after being reminded to follow the law of the

case—once again ignored my clear and binding ruling that Florida law did not apply. *See Stokes v. Markel Am. Ins. Co.*, 2025 WL 1328805, at *3 (D. Del. May 7, 2025).

This was vexatious, unreasonable, and in bad faith. But I cannot conclude that it multiplied the proceedings or increased costs. Counsel was repeatedly told that Florida law did not apply. *Id.* But that was only one basis for the request. *See id.* Even without it, the question of fees would have been presented. Nor was this a laborious argument for counsel to respond to, or for me to reject. So I will not sanction counsel under § 1927 for this conduct.

Rule 11 may still apply. Nonetheless, given the other sanctions I impose here for similar conduct, no further sanction for this action would promote the purpose of Rule 11. So I will not address it.

## V. I Sanction Counsel for Their Bill-of-Costs Conduct

As I have explained, counsel's "hodgepodge" bill-of-costs submission included "downright impudent" requests and minimal documentation. *Stokes*, 2025 WL 3191143 at *1. For instance, counsel demanded—without explanation—reimbursement for shaving cream, a random cappuccino, and an undescribed purchase from "Freaky Tiki Teez." *Id.* at *2. Their motion for reconsideration was also unfounded. *See Stokes v. Markel Am. Ins. Co.*, 2025 WL 3180268 (D. Del. Nov. 14, 2025).

### A. Multiplying proceedings

Defense counsel, the Clerk, and the court had to wrangle the initial filing into something comprehensible. And counsel's decision to insist on these costs, even after

the Clerk and opposing counsel pointed out their errors, required a second round of work by opposing counsel and the Court.

## B. Vexatious and unreasonable

Counsel could have intelligibly organized its request from the get-go, and a simple inquiry into the civil and local rules would have pruned most of it. Instead, they submitted a mishmash filing with no legal basis for 99.928% of the requested costs, then doubled down.

## C. Increasing costs

Requiring everyone else to impose the factual and legal order that counsel failed to provide increased the cost of proceedings.

## D. Bad Faith

Counsel's disorganization and impudence demonstrated complete disregard for both the rules and the work that they offloaded onto others. Defense counsel's objections and the Clerk's taxation should have served as a wake-up call—nevertheless, counsel persisted.

Counsel now protests that their client pushed them to recover as many costs as possible and argues that he could have gotten these costs under Florida law. Show Cause Resp. 4. But counsel well knew that this case did not proceed under Florida law. *Stokes*, 2025 WL 1328805, at *3 (telling counsel this for the *third time*). Indeed, last time counsel tried to relitigate a resolved issue, I warned them that such misconduct might lead to sanctions. *Id.* at *4. And a bill of costs is not a backdoor to obtaining "incidental damages" incurred throughout litigation. Show Cause Resp. at 6; *Stokes*,

9

2025 WL 3180268, at *1. This raft of errors has traveled well beyond mistaken judgment or well-intentioned zeal.

\* \* \* \* \*

Section 1927 imposes a high bar. But counsel repeatedly displayed "a serious and studied disregard for the orderly process of justice." *LaSalle*, 287 F.3d at 288 (quotation marks omitted). Based on my observations of counsel at the pre-trial conference at trial, and based on the papers, Stokes's Florida-based counsel is to blame for this conduct—not his local Delaware counsel. *See* Show Cause Resp. 3, 4, 8, 9. So I order Stokes's Florida counsel to pay the excess costs, expenses, and fees that Markel American reasonably incurred because of the (3) improper motion in limine, (4) pursuit of a barred theory, (5) pursuit of damages for dismissed claims, and (7) bill-of-costs request. They shall not ask local Delaware counsel or their client to foot the bill for any part of this sanction and shall not seek reimbursement or indemnity from either of them or deduct these amounts from Plaintiff's recovery.

# Markel Proof Of Compliance

## Issued 5/15/26

# HM&B

## HAMILTON, MILLER & BIRTHISEL LLP

### *Attorneys At Law*

WWW.HAMILTONMILLERLAW.COM

150 Southeast Second Avenue, Suite 1200, Miami, Florida 33131
305-379-3686 • Fax 305-379-3690

**REPLY TO: MIAMI OFFICE**

May 15, 2026

**Via Email Only**
Bryan K. Short.
Effectus, PLLC
bryanshort@effectus.legal

> Re:    *Stokes v. Markel American Insurance Company*
> Court:  United States District Court for the District of Delaware
> Case No.:  1:19-CV-02014-LPS
> Our Client:  Markel American Insurance Company
> Your Client:  James Stokes
> Our File No.:  73409-KFA

Dear Mr. Short:

As you know, our firm is co-counsel of record for Markel American Insurance Company ("MAIC") in the above captioned matter. The following provides MAIC's response to your May 11, 2026 correspondence and request for information on payments issued by MAIC to The Neblett Law Group.

MAIC issued the following three (3) payments to The Neblett Law Group, as instructed by Mr. Neblett and consistent with Judge Bibas' May 7, 2025, decision at D.E. 196:

| Type of Payment | Amount | Delivery Date | Related Docket Entry |
|---|---|---|---|
| Judgment | $646,000 | 5.5.25 | D.E. 193 |
| Pre and post-judgment interest payment | $121,802.71** | 10.22.25 | D.E. 196 |
| Taxable Costs | $140.00 | 11.3.25 | D.E. 204 |

As to the pre-judgment interest, this was calculated on the judgment amount of $646,000, at a rate of 2.54% compounded quarterly from October 12, 2018 (the date of

MIAMI • TAMPA • FORT LAUDERDALE • JACKSONVILLE • ORLANDO • NEW YORK • NORFOLK
THE BAHAMAS • JAMAICA • PUERTO RICO • U.S. VIRGIN ISLANDS

51906477v.1

Bryan K. Short, Esq.
May 15, 2026
Page 2

the claim) through February 11, 2025 (the date of judgment), per D.E. 196 (p. 5), totaling **$112,482.28.**

As to post-judgment interest, it began accruing on February 12, 2025, on the judgment amount of $646,000, at a rate of 4.2% (per § 1961(a) as specified in D.E. 196, p. 5). It stopped on May 5, 2025, when the Neblett Law Group received payment from MAIC. This results in 81 days of post-judgment interest, totaling **$6,020.** The post-trial interest on the pre-trial interest was $12.94 per day, at 248 days, totaling an additional **$3,209.12.**

In sum, The Neblett Law Group received a total of **$767,942.71** of payments made by MAIC. These payments fully satisfy all obligations set forth in docket entries 193, 196 and 204, and no further sums are due and owing.

We trust this provides you with all of the information that you require. If there is anything further that we can do to assist, please contact our office.

Very truly yours,

HAMILTON, MILLER & BIRTHISEL, LLP.

*s/ Krista Fowler Acuña*

Krista Fowler Acuña

cc:    Timothy Martin/Marc Penchansky (via email)

51906477v.1

# Florida Bar Complaint

## Sent 05/20/26

# The Florida Bar
## Inquiry/Complaint Form

**STOP - PLEASE DOWNLOAD THIS FORM TO YOUR COMPUTER <u>BEFORE</u> FILLING IT OUT.**

**PART ONE (See Page 1, PART ONE – Complainant Information.):**

Your Name:    James Stokes

Organization:  N/A

Address:    8218 Addy Lane

City, State, Zip Code:  Upperville, Virginia  20184

Phone:  202-439-0599

Email:  Jim@Stoladi.com

ACAP Reference No.:

Does this complaint pertain to a matter currently in litigation?    Yes _____    No  X

**PART TWO (See Page 1, PART TWO – Attorney Information.):**

Attorney's Name:    David Neblett/Neblett Law Group    Florida Bar No. _____

Address:    2550 South Bayshore Drive Suite 211

City, State, Zip Code:  Miami Florida 33133

Phone:  305-456-0445

**PART THREE (See Page 1, PART THREE – Facts/Allegations.): The specific thing or things I am complaining about are: (attach additional sheet).**

**PART FOUR (See Page 1, PART FOUR – Witnesses.): The witnesses in support of my allegations are: (attach additional sheet).**

**PART FIVE (See Page 1, PART FIVE – Acknowledge Oath and Signature.):**

[✓]    <u>YOU MUST PLACE YOUR MARK IN THE BOX ACKNOWLEDGING THE OATH AND YOU MUST SIGN YOUR FULL NAME BELOW.</u>

**Under penalties of perjury, I declare that the foregoing facts are true, correct and complete.**

James Stokes
Print Name

Signature

5/12/26
Date

*Having trouble? Download the form and open the document in Adobe Acrobat™.

# PART THREE

May 19, 2026

The Florida Bar
601 E Jefferson Street
Tallahassee, Florida 32399-2300

VIA Email ACAPIntake@floridabar.org

To whom it may concern:

I am submitting this formal complaint against David Neblett of The Neblett Law Group ("Neblett"). It arises from Case No. 1:19-cv-02014-SB, which was heard in federal court in Delaware before Judge Bibas.

In brief, this is an outline of my experience. Over 33 years in business, I have worked with and hired many lawyers and have never encountered what I believe to be serious abuse of the legal process, client misrepresentation, deception, and mishandling of client funds and thought this board should be made aware. Because I am limited to 25 pages for this complaint (including exhibits), I am submitting only the materials most relevant to my allegations. I can provide additional documents, emails, and correspondence upon request.

**History:**

- My new 2018 Midnight Express boat sank during Hurricane Michael on October 9, 2018, in Bethany Beach, Delaware. The vessel was being kept there during hurricane season, as required by an endorsement from my insurance carrier, Markel Insurance.

- As is often the case with insurance matters, the insurer appeared unwilling to pay what I believed was a legitimate claim. Rather than wait indefinitely, I decided to retain counsel to enforce the insurer's obligations under the policy. Neblett was recommended through internet research and discussions with an acquaintance. In addition, his website represented that he was a board-certified maritime lawyer and reflected positive reviews, so I believed his firm would represent me competently.

- I engaged Neblett on December 1, 2018, on a contingency-fee basis to pursue the claim. A copy of the contract is available upon request.

- Soon afterward, Neblett informed me that I needed to retain expert witnesses as well as consultants who were needed to support and defend the claim against Markel. I agreed. Although the engagement agreement called for Neblett to pay expert expenses, I ended up

paying those fees directly because I did not want to delay the case and understood contractually, I would be reimbursed from any recovery afterwards as a reconciliation. Those costs totaled approximately $40,000, and one consultant still has not been paid in full as I questioned the validity of certain invoices and work this consultant actually performed which Neblett ignored.

- Approximately a year later, after little progress and few updates, Neblett told me the case had been moved to Delaware, where the sinking occurred, and that I needed to retain a Delaware attorney to file pleadings while his firm would perform the substantive work. I reluctantly agreed and was told I needed to hire the Delaware attorney he identified for that purpose. The invoices I paid to that attorney exceeded $60,000.

- When COVID began, the process slowed dramatically and, at times, stopped altogether. Throughout that period, I received little meaningful communication about the status of the case or to the degree legal fees were accumulating, even though little appeared to be happening.

- Neblett eventually secured a mediation session, which I believe took place in 2023, but no settlement was reached.

- Finally, my case was tried in federal court in 2025 before Judge Bibas. After two days of testimony, the jury found in my favor and was awarded $646,000 (the amount of the original claim) plus 2.5% interest. I was informed that attorney's fees were not awarded because the motion was filed late, was not considered by the court, and had already been ruled unrecoverable. I also understood that the court was frustrated by the unnecessary motion practice, which resulted in additional fees being billed to me.

**Main basis for this complaint:**

- After the verdict, Neblett reopened the case to seek costs, a higher interest rate, and attorney's fees, despite the court's prior guidance I had not been made aware of and found on my own through PACER. According to the court's rulings, these efforts were procedurally defective, and Neblett filed the motion for legal fees more than two weeks late. The motion was denied, and Judge Bibas issued two memorandum opinions concerning sanctions (also found on my own through PACER), which are attached.

- More than a year passed while Neblett held the award proceeds in what I understand to be his trust account. During that time, despite repeated verbal and written requests, I did not receive any of the money that the jury awarded. The total recovery included $646,000 plus $121,802.71 in interest. Neblett never disclosed that he had received the interest payment, even when I specifically asked and believed Markel might still be refusing to pay. I later learned that Markel had in fact paid both the principal and the interest, that Neblett

deposited those funds into his account, and that he never provided me with any documentation showing receipt of the funds or an accounting of them.

- Over the years, Neblett repeatedly refused to tell me where matters stood with respect to legal fees, despite my many requests for that information. I wanted to understand how the fee agreement would operate if a settlement or judgment were obtained. Neblett did not provide invoices or meaningful accounting until much later (in March of this year to be exact).

- I ultimately retained Bryan Short of Effectus Law in Washington DC to file suit against Neblett (complaint attached) to recover the amounts I believe I am owed from the award, less any fees properly due under the engagement agreement. That dispute remains in active litigation. As the matter developed, it became clear that there is a serious disagreement over Neblett's claim to retain ALL of my judgement including the interest.

Judge Bibas's memorandum opinions dated November 14, 2025, and May 15, 2026, speak for themselves. In my view, they reflect serious concerns about Neblett's conduct and legal judgment. I respectfully submit that Neblett used the court process to continue increasing fees even after key issues had already been decided. I also believe his conduct damaged my ability to recover what I am owed and forced me into further litigation against my own attorney. In my opinion, the jury verdict was secured because the jurors understood that I had been wronged under both principle and contract, not because I received competent representation. If not for my own efforts in reviewing the case through PACER, I would not have discovered many of the procedural failures and issues that now form the basis of this complaint.

I also believe it may be worth determining whether other clients represented by Neblett have experienced similar issues in receiving their awarded funds.

I am available to speak with anyone reviewing this complaint at 202-439-0599 (cell) or 202-319-1636 (office).

Thank you for your attention to this matter.

Respectfully,

James Stokes

President/Founder
**STOLADI**
1636 Connecticut Avenue
Washington DC  20009